The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

IRONBURG INVENTIONS LTD., a United Kingdom Limited Company,

Plaintiff,

v.

VALVE CORPORATION, a Washington corporation,

Defendant.

Case No. 2:17-cv-01182-TSZ

**DEFENDANT VALVE CORPORATION'S SUPPLEMENTAL CLAIM CONSTRUCTION AND INDEFINITENESS BRIEF**



**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

# TABLE OF CONTENTS


Page

I. PROCEDURAL BACKGROUND ..... 1

II. THE ASSERTED PATENTS ..... 1

III. LEGAL STANDARDS ..... 3

IV. ARGUMENT ..... 5

A. The claim term "elongate member" renders the claims indefinite. ..... 5

B. To the extent "elongate member" can be construed, it means "distinct slender object having a length much greater than a maximum width." ..... 9

C. The seventh and eighth claim terms ("a first/second distance between the top edge and the bottom edge"; and "substantially all" of the first/second distance) render the claims indefinite. ..... 11

1. A POSITA would not be able to locate with reasonable certainty the "top edge" and "bottom edge" of the curved controller surface. ..... 11

2. A POSITA would not know with reasonable certainty where or how to measure the "distance" between the "top edge" and "bottom edge" of the controller. ..... 12

3. A POSITA would not know with reasonable certainty how long a controller component must be in order to extend along "substantially all" of the distance between the top and bottom edges. ..... 13

D. The fourth claim term ("substantially the full distance between the top edge and the bottom edge") renders the claims indefinite. ..... 15

V. CONCLUSION ..... 17




FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)....................4, 10, 11

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
783 F.3d 1374 (Fed. Cir. 2015)....................4, 14

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005)....................4, 5

*Fairfield Indus., Inc. v. Wireless Seismic, Inc.*,
2015 WL 1034275 (S.D. Tex. 2015)....................14, 15

*GE Lighting Solutions, LLC v. Lights of Am., Inc.*,
2016 U.S. App. LEXIS 19362 (Fed. Cir. 2016) (unpublished) ....................8, 9

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)....................5, 6, 7, 14

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) ....................1

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015)....................4, 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S.Ct. 2120 (2014) ....................4, 5, 16, 17

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)....................3, 4, 5

*Zodiac Pool Care, Inc. v. Hoffinger Indus.*,
206 F.3d 1408 (Fed. Cir. 2000)....................4

**Statutes**

Patent Act Section 112 ....................4



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

Both asserted patents—U.S. Patent Nos. 8,641,525 (“the ’525 Patent”) and 9,089,770 (“the ’770 Patent”) (collectively, “the Asserted Patents”)—relate to hand-held controllers for playing video games. Plaintiff Ironburg Inventions Ltd. (“Ironburg”) asserts that the Steam controller manufactured and sold by Defendant Valve Corporation (“Valve”) infringes 39 claims of the Asserted Patents.

## I. PROCEDURAL BACKGROUND

Before this lawsuit was transferred to this District, the parties filed claim construction briefs with the Georgia court. *See* Dkt. ## 68, 69, 76, and 77. The Georgia court held a *Markman* hearing regarding claim construction issues. *See* Transcript of Proceedings Held on 3/2/17 (Dkt. # 93). The Georgia court then transferred the action to this District, without issuing a claim construction ruling. Meanwhile, the Patent Trial and Appeal Board (“PTAB”) issued Final Written Decisions in the *Inter Partes* Review (“IPR”) proceedings involving the Asserted Patents. *See* Final Written Decision in Case IPR 2016-00948 (Dkt. # 142-5); Final Written Decision in Case IPR2016-00949 (Dkt. # 142-6).

After the case was transferred, this Court ordered the parties to file supplemental briefs to address certain issues related to the Final Written Decisions and claim construction. *See* December 6, 2017 Minute Order (Dkt. # 148). The Court then held a scheduling conference, which included a discussion of those issues. Following the scheduling conference, the Court made certain rulings related to claim construction. *See* January 8, 2018 Minute Order (Dkt. # 153). The Court set a deadline for supplemental briefs regarding indefiniteness, as well as claim construction regarding the disputed term “elongate member.” *See id.* Valve files this supplemental brief to address those issues, beginning with a brief introduction to the Asserted Patents to properly frame the issues before the Court.

## II. THE ASSERTED PATENTS

The Asserted Patents are fairly simple. Their general concept is to include additional controls on the back of a video game controller. Having back controls that are activated by a user’s



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

middle, ring, or little fingers can provide an advantage in games that include numerous different control functions because they allow users to activate additional game functions without having to remove their thumbs or index fingers from the primary control surfaces.

The advantages of back controls have long been known in the gaming community. Commercially-available controllers feature a wide range of control configurations that include back controls. Many users even customize their own controllers by physically adding back controls. The alleged invention of the Asserted Patents relates to specific claimed controller configurations in which additional controls are located on the back of the controller, so that they can be operated by the user's middle, ring, or little fingers. Every claim of the Asserted Patents includes that requirement.

The asserted claims also include a requirement regarding the *shape* of the claimed additional back controls. Specifically, the additional controls must include "an elongate member." This "shape" requirement was first added during prosecution of the '525 Patent application (the earlier of the Asserted Patents) to distinguish the claims over the prior art.

As originally filed, the claims in the '525 Patent application included only the requirement that the additional controls be located on the back of the controller, without any limitations regarding the shape of the back controls. *See* June 17, 2011 Application Serial # 13/162,727 at 7 (Dkt. # 69-1). Those claims were rejected over a prior art patent to Ogata, U.S. Patent No. 6,394,906 (Dkt. # 76-2). *See* June 28, 2012 Office Action at 2 (Dkt. # 69-2). In response to the rejection, Ironburg amended the claims to include the requirement that "the back control is an *elongate member* that extends between the top edge and the bottom edge and is inherently resilient and flexible." *See* Oct. 29, 2012 Response at 2 (Dkt. # 69-3) (emphasis added). The term "elongate member" now appears in every claim of the Asserted Patents. The two paddles shown as items 11 in Figure 2 of the '525 Patent (below) are examples of the claimed "elongate members."



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600




Figure 2

## III. LEGAL STANDARDS

The first step in evaluating patent infringement is to determine the meaning of relevant claim language and establish the scope of the patent's claims. A district court conducts claim construction as a matter of law. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*). Proper claim construction demands interpretation of the entire claim in the context in which the term is used. *Phillips*, 415 F.3d at 1314. "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* This includes the context in which a term is used in the asserted claim, as well as an examination of (i) other claims in the patent and (ii) differences among claims. *Id.* at 1315.

When interpreting the meaning of claim terms, a court should consider the intrinsic evidence, beginning with the patent specification. *Phillips*, 415 F.3d at 1316. The claims must "be read in view of the specification, of which they are a part." *Id.* The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315.

In addition to consulting the specification, the court "should also consider the patent's prosecution history." *Id.* at 1316. "The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* at 1317. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.… Furthermore, like the specification, the prosecution history was created



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

by the patentee in attempting to explain and obtain the patent." *Id*. Intrinsic evidence includes the prior art references cited during prosecution. *Zodiac Pool Care, Inc. v. Hoffinger Indus.*, 206 F.3d 1408, 1414 (Fed. Cir. 2000). The court should also consider statements made by a patent owner to the PTAB in order to "ensure that claims are not argued one way in order to maintain their patentability and in a different way against accused infringers." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017).

Along with intrinsic evidence, a court construing claim language may also consider extrinsic evidence, which is "evidence external to the patent and prosecution history." *Phillips*, 415 F.3d at 1318. This extrinsic evidence can include information such as expert testimony. *See id*. at 1317; *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005).

Because a patent monopoly is a property right, "its boundaries should be clear." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2124 (2014). Section 112 of the Patent Act codifies this need for clear boundaries, by requiring each patent specification to conclude with "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Id*. (*quoting* 35 U.S.C. § 112, ¶ 2 (2006)). A patent whose claims do not meet this standard is invalid for indefiniteness. *See id.*

A patent is invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S.Ct. at 2124. A patent must be precise enough to afford clear notice of what is claimed, thereby "appris[ing] the public of what is still open to them," while recognizing that absolute precision is unobtainable. *Id*. (*quoting Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996)); *see also Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015).

When patent claims include a "word of degree"—such as "elongate," "substantially," or largely"—the patent specification must identify a sufficiently definite standard for measuring the degree. *See Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1389 (Fed. Cir. 2015). The



**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

claims are only valid if the standard provides "objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1373-74 (Fed. Cir. 2014) (emphasis added) (noting that "it is not enough, as some of the language in our prior cases may have suggested, to identify some standard for measuring the scope of the phrase."). A figure illustrating one possible example of an embodiment that meets the claims is not sufficient to provide the requisite "objective boundaries" when a word of degree is used. *See id.*

The determination of whether a patent provides objective boundaries focuses "on the understanding of a skilled artisan at the time of the patent application." *Nautilus*, 134 S.Ct. at 2130. Courts can look to extrinsic evidence, such as expert testimony, to evaluate the understanding of a POSITA at the time of the patent application. *Philips*, 415 F.3d at 1314, 1317; *Datamize,* 417 F.3d at 1348 (holding that a court may rely on extrinsic evidence, such as expert testimony, to determine whether the claims are indefinite).

## IV. ARGUMENT

In light of the Court's January 8, 2018 Minute Order, the following issues remain regarding the meaning of the disputed claim terms in this case: (1) whether the claim term "elongate member" is indefinite; (2) if the Court determines the term "elongate member" is amenable to construction, how should it be construed; and (3) whether the fourth, seventh, and eighth disputed claim terms ("substantially the full distance between the top edge and the bottom edge," "a first/second distance between the top edge and the bottom edge," and "substantially all of the first/second distance") are indefinite. These issues are addressed below, beginning with the issues related to the term "elongate member."

### A. The claim term "elongate member" renders the claims indefinite.

Every independent claim of the Asserted Patents recites "elongate member" as part of the description of the additional control(s) located on the back of the controller. Despite its pervasive use in the claims, "elongate member" is not a term that would ordinarily be used by a POSITA in the game controller industry. *See* Declaration of Robert Dezmelyk at ¶ 24, attached as Exhibit 1



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

to the Declaration of Tanya Chaney. Therefore, in attempting to interpret this term, a POSITA would look to the patent specifications. *See id*. at ¶ 25.

Here, the patent specifications do not provide sufficient guidance to allow a POSITA to understand what the term "elongate member" covers. *See id*. at ¶ 29. Each of the Asserted Patents includes a "Summary" section that merely parrots the language of each patent claim. The term "elongate member" appears in these "Summary" sections, but without any elaboration as to what is meant by this term. "Elongate member" is not used anywhere else in the specifications. The nearest explanation of this term in the specifications is a disclosure of paddles that are "elongate in shape." *See* '525 Patent at 3:51-53; '770 Patent at 3:51-53.

Both Asserted Patents include figures showing that the "paddles" are long, slender objects much longer than they are wide. *See* '525 Patent at Fig. 2; '770 Patent at Fig. 2. A POSITA would recognize that the adjective "elongate" would include such an object, but would not know how long and slender an object had to be in order to be considered "elongate." *See* Dezmelyk Dec. at ¶¶ 27-29. Therefore, a POSITA would not be able to determine whether a given control design met this claim limitation. Providing a figure illustrating one possible example of an "elongate member" is not enough to provide sufficient definiteness as to the boundaries of this term. *See Interval Licensing*, 766 F.3d at 1373-74 (finding claims indefinite despite an example in the specification, because a POSITA was "still left to wonder" what other possible embodiments would meet the claim limitation).

A POSITA would not know the scope of "elongate member" in part because of the wide variety of input devices used as game controls. *See* Dezmelyk Dec. at ¶¶ 32-33. Before the priority date of the Asserted Patents, there were many examples of controllers having buttons with complex shapes. *See id*. A POSITA would not know whether such buttons would be considered "elongate members" for the purposes of the Asserted Patents. *See id*.

The Thrustmaster Rage 3D was one such prior art controller. *See* Dezmelyk Dec. at ¶¶ 32-33. As shown below, this controller featured two generally triangular buttons on the back of the



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

controller. A POSITA would not be able to determine whether these buttons would be considered "elongate members." *See id*.




The Hori Ace Combat Six controller had a complex, curved button on the back of the controller as shown below. *See id*. Once more, a POSITA would not know whether this button would be considered an "elongate member." *See id*.






As these examples illustrate, a POSITA creating or modifying a video game controller would not know whether a given button or other type of control was an "elongate member." This uncertainty makes it impossible to know whether a new or newly-modified controller would infringe the Asserted Patents. Because a POSITA cannot determine with reasonable certainty the boundaries of the term "elongate member," and therefore cannot know the scope of the asserted claims, the Court should find that this term renders the respective claims indefinite. *See Media*



**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

*Rights*, 800 F.3d at 1371 (holding that "[a] claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions'").

Under similar circumstances, the Federal Circuit has affirmed a district court's finding of indefiniteness because a POSITA "could not be reasonably certain of the claim scope in light of the term 'elongated.'" *See GE Lighting Solutions, LLC v. Lights of Am., Inc.*, 2016 U.S. App. LEXIS 19362 at *4-6 (Fed. Cir. 2016) (unpublished). In *GE Lighting*, the district court found the asserted claims indefinite despite having construed "elongated" to mean "extending in length." *Id.* at *4. The court observed that GE had distinguished two prior art references during prosecution, arguing that they did not include an "elongated" element. *See id*. at *5. The Federal Circuit noted that both prior art references included elements which extended in length, creating an "unresolved ambiguity as to how the prior art elements are not considered to be 'elongated.'" *Id.* Consequently, a POSITA had "no objective means to determine which cores are 'elongated' and which are not." *Id*.

Here, Ironburg added "elongate member" to every pending claim during prosecution of the '525 Patent to help distinguish over a prior art control disclosed in the Ogata patent, stating that "rotation actuator 16 is not … 'an elongate member.'" *See* Dezmelyk Dec. at ¶¶ 30-31; Oct. 29, 2012 Response (Dkt. # 69-3) at 2. Figures 19 and 20 of the Ogata patent depict the "rotation actuator 16."



**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600




Fig. 19




Fig. 20

Ironburg's bare statement that the Ogata "rotation actuator 16" is not an elongate member still does not enable a POSITA to understand the metes and bounds of this claim term, other than implying that Ogata's rotation actuator is not the same as the "elongate in shape" paddles described and depicted in the Asserted Patents. *See* Dezmelyk Dec. at ¶¶ 30-31. As in *GE Lighting*, it instead creates an unresolved ambiguity as to how the mushroom-shaped prior art Ogata control, which includes a shank portion **86a** and is mounted on the actuating shaft **57**, is *not* considered to "include" an "elongate member." *Id.* Therefore, a POSITA has no objective means to determine which controls include an "elongate member" and which controls do not. *Id.* The Court should find that the term "elongate member" renders the patent claims indefinite.

**B. To the extent "elongate member" can be construed, it means "distinct slender object having a length much greater than a maximum width."**

If the Court finds that the term "elongate member" is amenable to construction, Valve proposes that the phrase should be construed to mean "distinct slender object having a length much greater than a maximum width." Valve's proposed construction is identical to the construction in Valve's Supplemental Brief (Dkt. # 149), and is consistent with the construction that Valve proposed during the claim construction process in Georgia, in the event the Georgia court was inclined to construe this claim term. *See* Valve's Response to Ironburg's Claim Construction Brief at 10 (Dkt. # 76). Such a construction would also be consistent with the patent specifications,



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

because it accurately describes the paddles shown in the patent figures. Valve's proposed construction is supported by the intrinsic record and is consistent with how a POSITA would understand that phrase. *See* Dezmelyk Dec. at ¶ 27; *see also* Dezmelyk Depo. Tr. at 44:15-46:13; 52:10-20, attached as Exhibit 2 to the Declaration of Tanya Chaney.

Ironburg has never proposed a construction for this term during this litigation; however, public statements Ironburg has made in the ongoing PTAB proceeding for the '688 Patent support Valve's proposed construction. Valve recognizes that the Court has stayed Ironburg's infringement claims arising from the '688 Patent. However, statements made by a patent owner to the PTAB can be relied on by a district court during claim construction in order to "ensure that claims are not argued one way in order to maintain their patentability and in a different way against accused infringers." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017). Ironburg's arguments in the IPR for the '688 Patent are relevant even though that proceeding relates to a different patent, because the parties here have consistently argued that the term "elongate member" should have the same meaning in all four asserted patents and have not distinguished between the patents in claim construction briefing for this term. *See, e.g.*, Dkt. # 68 at 6; Dkt. # 69 at 9. Therefore, Ironburg's arguments to the PTAB in the proceeding for the '688 Patent are relevant to construing the term "elongate member" in the '525 and '770 Patents.

In the ongoing IPR proceeding for the '688 Patent, Ironburg publicly argued before the U.S. Patent & Trademark Office that "[a]s shown and described in the specification, elongate members are long, thin members with substantially flat opposing surfaces." *See* Patent Owner Response in Case IPR2017-00858 at 2 (Nov. 29, 2017), attached as Exhibit 3 to the Declaration of Tanya Chaney. Ironburg argued that the cited prior art did not anticipate the patent claims because their back controls "are not long and thin, nor do they have substantially flat opposing surfaces." *Id.* at 31. This representation to the PTAB, made to preserve the validity of Ironburg's patent claims, serves as public notice regarding Ironburg's understanding of the scope of the claim term "elongate member." It would be unjust and improper for Ironburg to now allege infringement



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

by a controller whose purported "elongate member" was not a "long thin member." *See Aylus Networks*, 856 F.3d at 1360.

Valve's proposed construction of "distinct slender object having a length much greater than a maximum width" is consistent with the "long thin" language in Ironburg's proposed construction in the IPR for the '688 Patent. The PTAB has never interpreted "elongate member" in any proceeding regarding Ironburg's patents. Ironburg has not previously proposed a construction for this term. If the Court construes "elongate member," it should adopt Valve's proposed construction.

**C. The seventh and eighth claim terms ("a first/second distance between the top edge and the bottom edge"; and "substantially all" of the first/second distance) render the claims indefinite.**

The seventh and eighth disputed claim terms are closely related and will be discussed together. Claim 2 of the '770 Patent includes the requirement that the elongate members extend along "substantially all of the first distance" and "substantially all of the second distance." The antecedent bases for the phrases "the first/second distance" in Claim 2 of the '770 Patent are found in Claim 1, which recites "a first/second distance between the top edge and the bottom edge." Thus, these two phrases in Claim 2 of the '770 Patent mean "substantially all of the [first or second] distance between the top edge and the bottom edge." These phrases render the claims of the '770 Patent indefinite because a POSITA would not know with reasonable certainty where the "top edge" and "bottom edge" were located, where and how to measure the "distance" between those edges, or how much of that distance a controller component must cover in order to satisfy the claim.

**1. A POSITA would not be able to locate with reasonable certainty the "top edge" and "bottom edge" of the curved controller surface.**

Both the seventh and eighth claim terms include language regarding a distance between the "top edge" and the "bottom edge" of the controller. A POSITA would not be able to locate these edges with reasonable certainty because of the geometry of the controller. The three-dimensional,



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

curved surface of the controller body lacks a distinct "top edge" or "bottom edge." *See* Dezmelyk Dec. at ¶ 42; '525 Patent at Figs. 1-3. A POSITA would not know where a "top edge" or "bottom edge" would be located on the curved controller surfaces. *See* Dezmelyk Dec. at ¶¶ 45-48. This lack of an objective boundary creates considerable uncertainty which renders the claims indefinite.

**2. A POSITA would not know with reasonable certainty where or how to measure the "distance" between the "top edge" and "bottom edge" of the controller.**

Compounding the uncertainty surrounding these phrases is the fact that even if a POSITA could identify a "top edge" and "bottom edge" of a controller, the specification provides no guidance regarding where along those edges the "distance" measurement should be made. *See* Dezmelyk Dec. at ¶¶ 45-48. For example, Figure 2 shows a controller whose "top edge" is the curved surface generally extending between trigger buttons 6 and 7, and whose "bottom edge" includes two generally convex handle portions with the "paddles" 11 located between them.



Figure 2

Even if it was possible to know with reasonable certainty where the "top edge" and "bottom edge" were located, a POSITA would still not know where to measure the "distance" between them. *See id.* This introduces another, significant source of uncertainty. For example, the distance varies considerably depending on where the measurement is taken. The distance from the trigger on the "top edge" to the tip of the handle on the "bottom edge" is much greater than if the

measurement is taken near the paddles, which in turn is greater than a measurement taken near the center of the controller. This additional source of uncertainty provides a second independent basis to find all asserted claims of the '770 Patent indefinite.

**3. A POSITA would not know with reasonable certainty how long a controller component must be in order to extend along "substantially all" of the distance between the top and bottom edges.**

The eighth claim term also includes the requirement that the elongate member must extend along "substantially all" of the distance between the top and bottom edges. Even assuming that a POSITA could determine the reference "distance" with reasonable certainty, the language "substantially all" introduces yet another source of uncertainty, providing a third independent basis to find the claims indefinite. A POSITA would not know how far a controller component must extend in order to cover "substantially all" of the pertinent distance. *See* Dezmelyk Dec. at ¶¶ 44, 48.

The patents offer no guidance except the illustrations in the figures. Figure 2 of both the '525 and '770 Patents shows paddles 11, which are described as "elongate in shape," and which "substantially extend in a direction from the top edge to bottom edge of the controller." '525 Patent at 3:51-53. A POSITA might look to the example of Figure 2 to try and determine what was meant by "substantially all" of the distance between the top edge and the bottom edge. *See* Dezmelyk Dec. at ¶ 45. One way to do this might be to compare the paddle length with "all of the distance" between an assumed top edge and bottom edge of the controller shown in the figure. *See id*. The resulting ratio would vary greatly depending on where and how the measurement was made. *See id*. Although Figure 2 does not depict any edges, and may not even be to scale, the figure appears to depict a paddle that extends vastly different percentages of the distance between a "top edge" and a "bottom edge" of the controller, depending on where the measurements are taken. *See id*. Such divergent measurements do not provide meaningful guidance to allow a POSITA to understand the scope of this phrase with reasonable certainty. *See id.*



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

The word "substantially" is a word of degree, reflecting the extent to which the elongate member extends along the back of the controller. Although terms of degree do not automatically render a claim indefinite, the Federal Circuit has consistently held that in order for such a claim to be valid, the patent specification must provide a standard for measuring the degree. *See Biosig*, 783 F.3d at 1389. This requirement is necessary in order for a person of skill in the art to have reasonable certainty regarding the scope of the claim. *See Interval Licensing*, 766 F.3d at 1373-74. Indeed, the Federal Circuit has clarified that "it is not enough, as some of the language in our prior cases may have suggested, to identify some standard for measuring the scope of the phrase." *Id*. at 1370-71. To be valid, the claims when read in light of the specification must provide "objective boundaries for those of skill in the art." *Id*. at 1371.

At least one district court has found the word "substantially" to be indefinite under the correct legal standard. *See Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, 2015 WL 1034275, at *16 (S.D. Tex. 2015). Construing the phrase "substantially prevent communication interference between the first and second pairs," the *Fairfield* court noted that other courts had found that the word was not indefinite when it was used to account for natural limitations. *See id*. at *15, citing *Ruckus Wireless, Inc. v. Netgear, Inc.*, 2013 WL 6627737, *4 (N.D. Cal. 2013) (holding that the term "substantially omnidirectional" was not indefinite because "real antennas are never perfectly omnidirectional, as the physical structure of the antenna itself creates some minor interference that prevents a perfectly circular radiation pattern.")

The *Fairfield* court distinguished such cases, explaining that in Fairfield's patent, the term was not being used as a way of acknowledging a physical impossibility or imprecision. *See Fairfield* at *16. Instead, it was used to inject a question of degree into the claim. *See id*. Because that question "finds no answer in the intrinsic evidence," the court found that the phrase failed "to inform with reasonable certainty those skilled in the art about the degree of interference to be prevented." *Id*. Therefore, the court found all claims having that phrase to be invalid for indefiniteness. *See id.*



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

As in the *Fairfield* case, the word "substantially" is used in Ironburg's patents not as a way of acknowledging a physical impossibility or imprecision, but to inject a question of degree into the claims. That question is: over how much of the referenced distance does the elongate member extend? As in *Fairfield*, that question finds no answer in the intrinsic evidence. The specification fails to provide an objective boundary so that a POSITA can know with reasonable certainty how much of the distance the elongate member must cover in order to fall within the scope of the patent claim. This uncertainty provides an additional, independent basis for finding the claims indefinite, apart from and in addition to the multiple layers of uncertainty arising from the "distance between the top edge and bottom edge" language. Just like the *Fairfield* court, this Court should find that the term "substantially" renders the claims invalid for indefiniteness.

To sum up, the seventh claim term renders all asserted claims of the '770 patent indefinite because a POSITA would not know with reasonable certainty where the "top edge" and "bottom edge" are, and would not know with reasonable certainty how or where to measure the "distance" between those edges. The eighth claim term provides an additional reason why Claim 2 of the '770 patent is indefinite, because a POSITA would not know with reasonable certainty how long a controller component would have to be in order to cover "substantially all" of that distance. For these reasons, the Court should find that all asserted claims of the '770 patent are invalid for indefiniteness.

**D. The fourth claim term ("substantially the full distance between the top edge and the bottom edge") renders the claims indefinite.**

The phrase "substantially the full distance between the top edge and the bottom edge" appears in claims 1 and 20 of the '525 Patent. During the IPR for the '525 Patent, the PTAB interpreted this phrase to mean "largely but not necessarily the entire distance between the top and bottom edges." *See* '525 Final Written Decision (Dkt. # 142-5) at 13. The Court has adopted the PTAB's interpretation. *See* January 8, 2018 Minute Order (Dkt. # 153).



FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

As a threshold matter, the fact that the Court has adopted the PTAB's interpretation of this claim term does not prevent the Court from finding the claims indefinite. The Supreme Court has confirmed that an ambiguous claim term can still render a claim indefinite even if that term is amenable to construction by a court. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2130 (2014) (observing that "[i]t cannot be sufficient that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*.").

The PTAB's interpretation replaces the language "*substantially* the full distance" with "*largely but not necessarily* the entire distance." The word "largely" has no specialized meaning in the game controller industry. *See* Dezmelyk Dec. at ¶ 37. Therefore, a POSITA would understand the word in its ordinary sense, as referring to a large portion of the entire distance. Used in this ordinary sense, "largely" is a vague term, because it is unclear how large a portion must be in order to qualify as "largely." *See id*. "Largely" may refer to an amount greater than fifty percent. *See id*. However, in some contexts, "largely" could refer to an amount which was itself considered a large amount, even if it was less than half. *Id.*

Because "largely" is itself a vague word, the PTAB's interpretation does not resolve the uncertainty associated with the actual claim language "substantially the full distance." As explained in connection with claim term eight, the word "substantially" creates considerable uncertainty, leading at least one district court to find claims indefinite based on that terminology. *See supra*, § IV(C)(3). The reasons why the phrase "*substantially all*" of the first/second distance renders Claim 2 of the '770 Patent invalid also apply to the phrase "*largely but not necessarily the entire distance*." A POSITA would still not be able to determine with reasonable certainty whether or not a game controller satisfied the PTAB's interpretation of this claim requirement. *See* Dezmelyk Dec. at ¶ 37.

In particular, a POSITA would not be able to determine the lower boundary of this claim term. *See id*. at ¶ 38. Presumably, a controller component that extended the full distance between



**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

the top and bottom edges would satisfy this claim term. *See id.* But what would be the minimum distance the component must extend? What if the component only extended 75% of the distance? Would a component satisfy this claim term if it only extended 51% of the distance? A POSITA would not be able to answer this question with reasonable certainty, and therefore, would not know whether a particular structure met this claim limitation. *See id*. This uncertainty alone provides a sufficient independent basis for finding all asserted claims of the '525 Patent indefinite.

The second portion of this phrase refers to "the distance between the top and bottom edge." As explained above in connection with claim terms seven and eight, this language creates further ambiguity because a POSITA would not be able to determine or measure that distance with reasonable certainty. The PTAB's interpretation does not change this language, or clarify this ambiguity in any way. Therefore, this language provides a second, independent reason to find that this phrase renders all asserted claims of the '525 Patent indefinite.

## V. <u>CONCLUSION</u>

The Asserted Patents use claim language that fails to provide a POSITA with reasonable certainty as to the scope of the claims. Valve has explained why certain claim terms and phrases render the asserted claims indefinite, and has provided the testimony of an expert in the field of game controllers to offer further insight into the understanding of a person of ordinary skill in the art. If the Court does not find that the phrase "elongate member" renders the claims indefinite, Valve respectfully requests the Court to adopt Valve's proposed construction, which is consistent with the intrinsic evidence, with Ironburg's statements to the PTAB, and with Mr. Dezmelyk's expert testimony.



**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

Dated this 1st day of February, 2018

By: */s/ Patrick A. Lujin*
B. Trent Webb (pro hac vice)
Patrick A. Lujin (pro hac vice)
Mark D. Schafer (pro hac vice)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
E-mail: bwebb@shb.com
plujin@shb.com
mschafer@shb.com

By: */s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766
Shata L. Stucky, WSBA #39963
FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
Telephone: 206.624.3600
Facsimile: 206.389.1708
Email: gskok@foxrothschild.com
sstucky@foxrothschild.com

Tanya L. Chaney (pro hac vice)
SHOOK, HARDY & BACON L.L.P.
600 Travis Street, Suite 3400
Houston, Texas 77002
Telephone: 713.227.8008
Facsimile: 713.227.9508
E-mail: tchaney@shb.com

Reynaldo C. Barcelo
Joshua C. Harrison
BARCELO HARRISON & WALKER LLP
2901 West Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: 949.340.9736
Facsimile: 949.258.5752
Email: rey@bhiplaw.com
josh@bhiplaw.com

Attorneys for Defendant
VALVE CORPORATION

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle, Washington. I am a U.S. citizen over the age of eighteen years and not a party to the within cause. On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

| **Service List** | |
|---|---|
| **Robert D. Becker**<br>Manatt, Phelps & Phillips LLP-CA<br>1841 Page Mill Road<br>Palo Alto, CA 94304<br>Ph: 650-812-1300<br>Email: rbecker@manatt.com<br><br>**Christopher L. Wanger**<br>MANATT, PHELPS & PHILLIPS, LLP<br>One Embarcadero Center, 30th Floor<br>San Francisco, CA 94111<br>Ph: 415-291-7410<br>Email: cwanger@manatt.com<br><br>**Stephen C Willey**<br>SAVITT BRUCE & WILLEY LLP<br>1425 Fourth Ave, Ste 800<br>Seattle, WA 98101-2272<br>206-749-0500<br>Fax: 206-749-0600<br>Email: swilley@sbwllp.com<br><br>*Attorneys for Plaintiff* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |
| **B. Trent Webb**<br>**Patrick A. Lujin**<br>**Mark D. Schafer**<br>Shook Hardy & Bacon, LLP - MO<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>Ph: 816-474-6550<br>Email: bwebb@shb.com; plujin@shb.com; mschafer@shb.com | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

**Tanya L. Chaney**
Shook Hardy & Bacon-TX
600 Travis Street – Suite 3400
Houston, TX 77002
Ph: 713-227-8008
Email: tchaney@shb.com

**Joshua C Harrison**
**Reynaldo C. Barcelo**
BARCELO HARRISON & WALKER LLP
2901 West Coast Highway, Suite 200
Newport Beach, CA 92663
Ph: 949-340-9736
Email: josh@bhiplaw.com; rey@bhiplaw.com

*Attorneys for Defendant*

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

EXECUTED this 1st day of February, 2018, in Seattle, Washington.

Courtney R. Tracy