**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| IRONBURG INVENTIONS LTD. a United Kingdom Limited Company,<br><br>Plaintiff,<br><br>vs.<br><br>VALVE CORPORATION, a Washington Corporation,<br><br>Defendant. | Civil Action No. 2:17-cv-01182-TSZ |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO COURT'S JANUARY 8, 2018 MINUTE ORDER (DKT. NO. 153)**

## TABLE OF CONTENTS

**Page**

A. Claim disputes resolved by Court's January 8, 2018 Order ................1

1. First, Third and Fourth disputed claim terms ............................1
2. Fifth dispute ........................................................................1
3. Seventh and Eighth disputes ....................................................1

B. Claim disputes not fully resolved by Court's January 8, 2018 order – Indefiniteness of Certain Terms...............................................1

1. Second and Sixth disputes (Elongate member for '525 and '770 patents) .........................................................................4
2. Fourth, Seventh and Eighth indefiniteness disputes ((4) substantially the full distance between the top edge and the bottom edge – '525 patent, (7) a first/second distance between the top edge and the bottom edge – 770 patent, and (8) substantially all of the first/second distance – '770 patent)) ..........................................................................15
3. Ninth Dispute ("the medial portion is closer to the top edge than a distal end of each of the first handle and second handle" '770 Patent) ....................................................20

C. Conclusion ..........................................................................................20

## TABLE OF AUTHORITIES

**Page**

### CASES

*Amhil Enterprises Ltd. v. Wawa, Inc.*,
81 F.3d (Fed. Cir. 1996) ....................9, 19

*Cuozzo Speed Techs., LLC v. Lee*,
136 S. Ct. 2131 (2016)....................11, 15

*Enzo Biochem, Inc. v. Applera Corp.*,
599 F.3d 1325 (Fed. Cir. 2010) ....................3

*Ex parte Lazzara*,
2007 WL 7751836, Appeal No. 2007-0192 (PTAB May 30, 2007),
*rehearing denied*, 2007 WL 5063473 (Nov. 13, 2007)....................10, 19

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S.Ct. 2120, 189 L.Ed.2d 37 (2014)....................2, 16

*NTP Inc., v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ....................18

*Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*,
Civil Action No. 12-1461-LPS-CJB, 2017 U.S. Dist. LEXIS 92894
(D. Del. June 16, 2017)....................4

*SkyHawke Techs., LLC v. Deca Int'l Corp.*,
828 F.3d 1373 (Fed. Cir. 2016) ....................3

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ....................11

*York Products, Inc., v. Central Tractor Farm & Family Center*,
99 F.3d 1568 (Fed. Cir. 1996) ....................9, 19

### STATUTES

35 U.S.C. § 102....................5

35 U.S.C. § 103....................5

### OTHER AUTHORITIES

37 C.F.R. § 42.100(b) ....................11, 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

37 C.F.R. § 42.104(b)(3) .......... passim
77 Fed. Reg. 48764 (Aug. 14, 2012) .......... 9, 11
U.S. Patent No. 8,641,525 .......... passim
www.thefreedictionary.com/elongated .......... 6, 7

Plaintiff Ironburg Inventions Ltd. ("Ironburg") submits the following in response to the Court's January 8, 2018 Minute Order .

**A. Claim disputes resolved by Court's January 8, 2018 Order.**

**1. First, Third and Fourth disputed claim terms**

(1) Counsel having stated no objection, the Court ADOPTS the Patent Trial and Appeal Board's interpretations relating to the first, third, and fourth disputed claim terms identified in the Joint Claim Construction Statement, docket no. 64, namely (1) directional references (top, bottom, front, back, end, side, inner, outer, upper, lower); (3) "inherently resilient and flexible"; and (4) "substantially the full distance between the top edge and the bottom edge." *The Court reserves ruling on whether the fourth claim term is indefinite, as argued by defendant.* 1/8 Order ¶ (1)(emphasis added).

**2. Fifth disputed claim term**

(2) Plaintiff having withdrawn any contention that defendant has infringed or is infringing Claim 13 of U.S. Patent No. 8,641,525, in which the fifth disputed claim term ("the front end") appears, the fifth term is STRICKEN from the Joint Claim Construction Statement and will not be construed by the Court. 1/8 Order ¶ (2).

**3. Seventh and Eighth disputed claim term**

(3) With regard to the seventh and eighth disputed claim terms ("a first/second distance between the top edge and the bottom edge" and "substantially all of the first/second distance"), defendant relies on its argument that such claims terms are indefinite and offers no proposed definition. The parties have agreed that, if the Court concludes that such claim terms are not indefinite, the Court need not further construe such claim terms. 1/8 Order ¶ (3).

**B. Claim disputes not fully resolved by Court's January 8, 2018 order – Indefiniteness of Certain Terms.**

The Court's Order did not resolve disputes regarding Valve's contention that certain claim terms in the '525 and '770 patent claims, in addition to "elongate

member," are also indefinite. These terms are not indefinite. Valve has not and cannot show that the claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

In *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 189 L.Ed.2d 37 (2014), the Supreme Court held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." 134 S. Ct. at 2123.

As to each disputed claim that remains to be construed for the '525 and '770 patents, in the prior briefing filed before the Markman hearing in the Georgia District Court, Valve contended that the term was indefinite. These contentions were not well founded, as discussed by Ironburg in the previously filed Markman briefing, and are in stark contrast to Valve's position in the PTAB proceedings in the related IPRs for these patents. As discussed more fully below, by challenging the disputed claim terms in the IPRs, Valve conceded that the terms were not indefinite. As Valve well knows, the PTAB will decline to initiate an IPR as to claims that are indefinite. The PTAB's rationale for this approach stems from the fact that if the PTAB cannot determine the scope and meaning of the claims without speculation, it cannot ascertain the differences between the challenged

claims and the prior art. See e.g., 37 C.F.R. § 42.104(b)(3) (IPR petition must state how the challenged claim is to be construed); and *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) ("If a claim is indefinite, the claim, by definition, cannot be construed.) Thus, Valve's mere inclusion of the disputed claims in its IPR Petitions and the PTAB's initiation of Valve's Petitions alone are compelling evidence (if not dispositive) that none of the disputed claims are indefinite. This conclusion is further reinforced both by Valve's subsequent arguments in the IPRs and the PTAB's Final Decisions on Valve's Petitions. In both, neither Valve nor the PTAB ever made any suggestion that the claims, read in light of the specification delineating the patent, and the prosecution history, failed to inform, with reasonable certainty, those skilled in the art about the scope of the invention. To the contrary, the PTAB's Final Decisions construing the disputed claim terms confirm that the terms do precisely that and are definite.

Based on Valve's arguments and the PTAB's Final Decisions in the prior IPR proceedings, Valve should be precluded from asserting that the disputed claims should not be given their ordinary meaning or specific meaning or are indefinite. A final decision by the PTAB can ground issue preclusion in district court when the ordinary elements of issue preclusion are met. *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016). Here, the PTAB already construed the purportedly indefinite claims according to their ordinary or

specific meaning, so the issue of claim construction was previously adjudicated; the construction of the claims was actually "litigated" under IPR; the construction of the claim was necessary to the IPR decision; and Valve was fully represented in the IPR. See *Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*, Civil Action No. 12-1461-LPS-CJB, 2017 U.S. Dist. LEXIS 92894 (D. Del. June 16, 2017) (PTAB's claim construction ruling had preclusive effect even though issue of indefiniteness is not applicable in PTAB proceeding).

### 1. Second and Sixth disputes (Elongate member for '525 and '770 patents).

Valve asserts here that the term "elongate member" is indefinite and provides no alternative definition. (Defendant Valve Corporation's Opening Claim Construction Brief filed December 22, 2016, pages 9-13). The presence of "elongate member" in the claims does not render the claims indefinite because the claims, read in light of the specification delineating the patent, and the prosecution history, inform, with reasonable certainty, those skilled in the art about the scope of the invention.

As previously discussed, the members are simply elongated to the extent specifically mentioned in the claims (e.g., "substantially the full distance between the top edge and the bottom edge" as set forth in claims 1 and 20 of the '525 patent"). As such, the claims themselves clearly inform, with reasonable certainty,

those skilled in the art about the scope of the inventions as required by *Nautilus*. The patent specification, including the claims and figures, likewise informs about the scope of the inventions. (Plaintiff Ironburg Inventions LTD's Responsive Claim Construction Brief at pages 7-8.)

The definiteness of the claims is further confirmed by the now concluded IPR proceedings that Valve initiated concerning the '525 and '770 patents.[1] When Valve initially petitioned the USPTO for *inter partes* review of the claims of the '525 and '770 patents, it predictably did not assert that any of the claims were indefinite as the PTAB does not have the power to institute a review of the claims on that specific basis. However, Valve also did not have any issue with whether the claims, read in light of the specification delineating the patent, and the prosecution history, failed to inform, with reasonable certainty, those skilled in the art about the scope of the invention. On the contrary, Valve specifically identified how the claim terms, including elongate members, should be interpreted.

More specifically, for the '525 and '770 patents, Valve challenged the validity of each claim at issue in this action under 35 U.S.C. Sections 102 and/or 103, asserted that the terms should be given their ordinary and customary meaning (unless otherwise stated), and attempted to show the presence of corresponding elongate members in the prior art. The PTAB likewise treated the term "elongate

[1] See Declaration of Robert D. Becker In Support of Plaintiff's Opposition to Motion to Stay Pending Inter Partes Review ("Becker Decl.") filed October 17, 2017, Exhibits A – G.

members" as if it was readily understood by one of ordinary skill in the art and issued corresponding institution and final written decisions regarding the claims with these terms. At no point in the proceedings was there any indication that the claims, read in light of the specification delineating the patent, and the prosecution history, failed to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

For the '525 patent terms, Valve argued:

> B. Identification of How the Challenged Claims Are to Be Construed Under 37 C.F.R. § 42.104(b)(3)
>
> Petitioner's construction of claim terms herein is not binding upon Petitioner in any other proceeding, such as any district court litigation related to the '525 Patent.
>
> ...
>
> 5. "elongate member"
>
> The word "elongate" is used as an adjective in the claim term "elongate member" of the '525 Patent. The ordinary meaning of such adjective is simply: "Having more length than width; slender." See, e.g., www.thefreedictionary.com/elongated .
>
> Additionally, all disclosed embodiments in the '525 Patent exhibit a particular direction for such elongation, as described at col. 3, lines 51-53: "The paddles 11 are elongate in shape and substantially extend in a direction from the top edge to a bottom edge of the controller 10." (referring to Figures 2 and 3). Moreover, the specification of the '525 Patent assigns special importance to that direction of elongation of the paddle members, because such elongation direction allegedly allows a user an improved variety of finger choice to engage the paddle members. See col. 3, lines 51-61. (Becker Decl., Exhibit A at pages 7, 13.)
>
> …
>
> 10. Other claim terms in the '525 Patent.

> Petitioner submits, for the purposes of this *inter partes* petition only, that *the other claim terms of the '525 Patent take on the customary and ordinary meaning that such terms would have to one of ordinary skill in the art in view of the specification and prosecution history of the '525 Patent*. However, Petitioner expressly reserves the right to propose a different interpretation later in this proceeding should the Patent Trial and Appeal Board request the Petitioner to provide a more definite interpretation of one or more of such claim terms. (Becker Decl., Exhibit A at page 17). (emphasis added)

For the '770 patent terms, Valve made a similar argument:

> B. Identification of How the Challenged Claims Are to Be Construed Under 37 C.F.R. § 42.104(b)(3)
>
> …
>
> 5. "elongate member"
>
> The word "elongate" is used as an adjective in the claim term "elongate member" of the '770 Patent. The ordinary meaning of such adjective is simply: "Having more length than width; slender." *See, e.g.,*www.thefreedictionary.com/elongated .
>
> However, in the context of claim 1 of the '770 Patent, the term "elongate member" means: a member that is longer *along a longitudinal axis* than it is wide (the width being measured in a direction that is transverse to the longitudinal axis). *See* the Rempel '770 Decl., Exhibit 1012, at ¶13, p. 3, lines 3-7. That construction is supported by the language of claim 1 itself, which specifies that "the first elongate member extends along at least half of a first distance between the top edge and the bottom edge, the first distance being measured along a longitudinal axis of the first elongate member …" (emphasis added). See also the '770 Patent at col. 3, lines 51-53: "The paddles 11 are elongate in shape and substantially extend in a direction from the top edge to a bottom edge of the controller 10." (referring to Figures 2 and 3, i.e. all disclosed embodiments).
>
> The specification of the '770 Patent assigns special importance to the longitudinal nature of the elongation of the paddle members,

> because such longitudinal elongation allegedly allows a user an improved variety of finger choice to engage the paddle members. See col. 3, lines 51-61. (Becker Decl., Exhibit B pages 12 - 13).
>
> …
>
> 10. Other claim terms in the '770 Patent.
>
> Petitioner submits, for the purposes of this *inter partes* petition only, that *the other claim terms of the '770 Patent take on the customary and ordinary meaning that such terms would have to one of ordinary skill in the art in view of the specification and prosecution history of the '770 Patent*. However, Petitioner expressly reserves the right to propose a different interpretation later in this proceeding should the Patent Trial and Appeal Board request the Petitioner to provide a more definite interpretation of one or more of such claim terms, or if it is determined that one or more claims of the '770 Patent are not entitled to the benefit of the earlier effective filing date of the '525 patent. (Becker Decl., Exhibit B at page 17). (emphasis added)

Valve also applied the term "elongate member" to prior art in each petition as can be seen for example in the first row of the table on page 22 of the corrected petition for the '770 patent. (Becker Decl., Exhibit B at page 22).

The PTAB instituted the '948 and '949 IPRs for the '525 and '770 patents, respectively, and made the following findings with respect to claim construction in general and also specifically for elongate members and related terms (e.g., "substantially"). In the institution decision for the '948 IPR for the '525 patent, the PTAB found:

> II. PRELIMINARY MATTERS
>
> A. PETITIONER'S CLAIM INTERPRETATIONS

Patent Owner asks that we dismiss the Petition because Petitioner's claim interpretations are the "bald conclusions of its expert," made without utilizing the intrinsic record as required. Prelim. Resp. 9–10, 16.

Pursuant to 37 C.F.R. § 42.104(b)(3), the Petition is to include a statement of how each challenged claim is to be construed. The Office Patent Trial Practice Guide ("Practice Guide") states that, "it may be sufficient for a party to provide a simple statement that the claim terms are to be given their broadest reasonable interpretation, as understood by one of ordinary skill in the art and consistent with the disclosure." 77 Fed. Reg. 48764 (Aug. 14, 2012). *Here, Petitioner explicitly construes some terms and asserts that the remaining terms carry their ordinary and customary meaning. Pet. 11–17*. Such an assertion is consistent with an assertion that the claims should be given their broadest reasonable interpretation. Consequently, we do not dismiss the Petition on this basis. (Becker Decl., Exhibit C at page 3). (emphasis added)

…

The Specification echoes the claim language, describing that elongate members in the form of paddles 11 "substantially extend in a direction from the top edge to the bottom edge of controller 10." Ex. 1001, 3:51–53. Paddles 11 are depicted extending largely, but not wholly the entire distance from the top to the bottom edge of the controller. Fig. 2.

3. Extension of the Elongate Members (all claims)

Independent claims 1 and 20 recite that each elongate member on the back of the controller "extends substantially the full distance between the top edge and the bottom edge" of the controller. Claims 2–19 include this limitation by virtue of dependence from claim 1. The use of the term "substantially" in claims 2, 17, and 20 does not shed additional light on the meaning of the term. ….

"Substantially" is often used to mean, "largely but not wholly what is specified." *See, e.g., York Products, Inc., v. Central Tractor Farm & Family Center,* 99 F.3d 1568, 1572–73 (Fed. Cir. 1996); *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d, 1554, 1562, (Fed. Cir. 1996)). We do not apply this interpretation as a *per se* rule. *We are*

> *mindful that the claim term "substantially" can render a claim indefinite. See generally Ex parte Lazzara*, 2007 WL 7751836, Appeal No. 2007-0192 (PTAB May 30, 2007) (informative), *rehearing denied*, 2007 WL 5063473 (Nov. 13, 2007) (providing an overview of use of the claim term "substantially"). *Here, the Specification does not provide a special meaning for the term, nor have the parties identified any relevant portion of the prosecution history. The use of the term to modify "the full distance" does not render the phrase so unclear that there is no means to ascertain the scope. Interpreting "substantially" to mean, "largely but not wholly what is specified" is consistent with the Specification as discussed above.*
>
> We preliminarily construe the claims to require that the elongate members extend largely but not necessarily the entire distance between the top and the bottom edges. (Becker Decl., Exhibit C at pages 11-13). (emphasis added)

The PTAB also discussed Valve's contention that the prior art included "elongate members" that extended substantially the full distance between the top edge and the bottom edge of the controller.

> *Petitioner contends that each back control (shift levers 125, 126) includes an elongate member that extends substantially the full distance between the top and the bottom edge of the controller*. Pet 21–22 (Ex. 1002, 13:24; Figs. 2, 3, 23). In support, Petitioner compares the length of Tosaki's elongate members to the distance between the "top edge segments" and "bottom edge segments." Id. (providing an annotated version of Figure 23). (Becker Decl., Exhibit C at pages 19-20). (emphasis added)

Similarly, in the '949 IPR for the '770 patent, the PTAB found:

> II. PRELIMINARY MATTERS
> A. PETITIONER'S CLAIM INTERPRETATIONS
>
> Patent Owner asks that we dismiss the Petition because Petitioner's claim interpretations are the "bald conclusions of its

expert," made without utilizing the intrinsic record as required. Prelim. Resp. 7–8.

Pursuant to 37 C.F.R. § 42.104(b)(3), the Petition is to include a statement of how each challenged claim is to be construed. The Office Patent Trial Practice Guide ("Practice Guide") states that "it may be sufficient for a party to provide a simple statement that the claim terms are to be given their broadest reasonable interpretation, as understood by one of ordinary skill in the art and consistent with the disclosure." 77 Fed. Reg. 48764 (Aug. 14, 2012). Here, *Petitioner explicitly construes some terms and asserts that the remaining terms carry their ordinary and customary meaning. Pet. 10–17. Such an assertion is consistent with an assertion that the claims should be given their broadest reasonable interpretation. Consequently, we do not dismiss the Petition on this basis*. (Becker Decl., Exhibit D at page 3). (emphasis added)

…

C. CLAIM INTERPRETATION

In an *inter partes* review, the Board interprets claim terms in an unexpired patent according to the broadest reasonable interpretation in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the broadest reasonable interpretation approach).

For the purposes of this decision, and on this record, we determine that only the following claim terms need express interpretation. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (only those terms which are in controversy need to be construed, and only to the extent necessary to resolve the controversy).

We emphasize that these claim interpretations are preliminary. During the remainder of this proceeding, the parties are permitted to develop argument and evidence regarding claim interpretation as appropriate. (Becker Decl., Exhibit D at pages 7-8). (emphasis added)

…

3. Elongate Member as a Paddle Lever (claim 19)

> Claim 19 depends from claim 16, which depends in turn from claim 1, and claim 19 recites, "wherein each of the first elongate member and the second elongate member is a paddle lever."
>
> Petitioner contends that "prior art button, triggers, and other control members [] qualify as a "paddle lever'" when the term is viewed in the context of the '770 patent. Pet. 16–17.
>
> Patent Owner contends that the ordinary meaning of "paddle lever" should be used, and that one of ordinary skill in the art would know that ordinary meaning. Prelim. Resp. 13. Patent Owner, thus, contends that "no further elaboration, expansion or restriction" is required. *Id.*
>
> Claim 1 requires a first and second back control that each include an elongate member, and claim 19 depends from claim 1 and limits the first and second elongate members to take the form of a paddle lever. *Given this, to the extent that Petitioner argues that an "elongate member" as recited in claim 1 may take various forms, such as a button or trigger, we agree.*
>
> However, we do not agree that any button, trigger, or control member qualifies as a "paddle lever" as recited in claim 19. (Becker Decl., Exhibit D at pages 10-11). (emphasis added)

The PTAB also discussed Valve's contention that the prior art included "elongate members" that *extends along at least half of a first distance between the top edge and the bottom edge of the outer case of the controller* (see discussion of this disputed element below):

> *Petitioner contends that each of Tosaki's back controls (shift levers 125, 126) include an elongate member that extends along at least half of a first distance between the top edge and the bottom edge of the outer case of the controller*. Pet. 21. (Becker Decl., Exhibit D at page 14). (emphasis added)

In the Final Written Decision for the '525 patent, the PTAB made the following rulings regarding claim construction in general and also specifically for elongate members and related terms (e.g., "substantially").

> C. CLAIM INTERPRETATION
>
> …
>
> 3. Extension of Elongate Members
>
> Independent claims 1 and 20 recite that each elongate member on the back of the controller "extends substantially the full distance between the top edge and the bottom edge" of the outer case of the controller. Claims 2–19 include this limitation by virtue of dependence from claim 1.
>
> In the Institution Decision, *we determined that the claims require that the elongate members extend largely but not necessarily the entire distance between the top and the bottom edges*. Dec. 11–13. The parties do not challenge this interpretation, and we adopt it here. (Becker Decl., Exhibit E at pages 12-13 ). (emphasis added).

The PTAB issued a final written decision for the '949 IPR for the '770 patent in September 2017 at the same time as the decision for the '948 IPR. These decisions both addressed claim construction, and did not find any ambiguities with respect to claim scope.

After the Final Written Decisions were issued in September of 2017, Valve moved for rehearing as to claims the PTAB found patentable. In its decision rejecting Valve's contentions in the '948 IPR for the '525 patent, the PTAB made the following rulings regarding claim construction in general and also specifically

for elongate members and related terms (e.g., regarding the inherent flexibility of the elongate members).

## II. ANALYSIS

### A. OVERVIEW

> Claim 1 recites that each elongate member is "inherently resilient and flexible." Claims 2–19 include this limitation by virtue of dependence from Claim 1.
>
> …
>
> *A person of ordinary skill would understand that an elongate member is the portion of the control that is engaged by a user's fingers, and the elongate member then engages a switch mechanism. The elongate member is a thin, flexible material that returns to the unbiased position when not under load.*
>
> *Consequently, a switch mechanism and an elongate member are distinct elements, and claim 1 requires that each elongate member is inherently resilient and flexible.* (Becker Decl., Exhibit E at page 7). (emphasis added)

Valve's Petitions, the institution decisions, the final written decisions and the decisions denying rehearing all confirm that the claims, read in light of the specification delineating the patent, and the prosecution history, inform, with reasonable certainty, those skilled in the art about the scope of the invention.

Similarly, as discussed at the hearing on January 5, 2018, Defendant Collective Minds recently filed IPR petitions for the '525 and '770 patents. In those petitions, at pages 7 and 5, respectively, Collective Minds asserted that the terms of the claims should be given their "ordinary and customary meaning."

For the '525 patent terms, Collective Minds argued:

> D. Claim construction under 37 C.F.R. § 42.104(b)(3)
> In this proceeding, claim terms of an unexpired patent should be given their "broadest reasonable construction in light of the specification." 37 C.F.R. §42.100(b); Cuozzo Speed Techs., LLC v. Lee, 136 S. Ct. 2131, 2144-46 (2016). With the single exception discussed below [for "converging paddles"], Petitioner proposes as the broadest reasonable construction, for purposes of IPR only, that the claim terms of the '525 Patent be given their ordinary and customary meaning that the term would have to one of ordinary skill in the art. (Petition for Inter Partes Review of US Patent 8,641,525, IPR2018-00354 at page 7).

For the '770 patent terms, Collective Minds argued:

> D. Claim construction under 37 C.F.R. § 42.104(b)(3)
> In this proceeding, claim terms of an unexpired patent should be given their "broadest reasonable construction in light of the specification." 37 C.F.R. §42.100(b); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144-46 (2016). Petitioner proposes as the broadest reasonable construction, for purposes of IPR only, that the claim terms of the '770 Patent be given their ordinary and customary meaning that the term would have to one of ordinary skill in the art. (Petition for Inter Partes Review of US Patent 9,089,770, IPR2018-00356 at page 5)

**2. Fourth, Seventh and eighth indefiniteness disputes ((4) substantially the full distance between the top edge and the bottom edge – '525 patent, (7) a first/second distance between the top edge and the bottom edge – 770 patent, and (8) substantially all of the first/second distance – '770 patent))**

Valve has not proposed a definition in this litigation for these terms, but has asserted that they are indefinite. As discussed above, the elongate members are simply elongated to the extent specifically mentioned in the '525 and '770 claims (e.g., "substantially the full distance between the top edge and the bottom edge" as

set forth in claims 1 and 20 of the '525 patent"). The disputed terms in the claims do not render the claims indefinite because the claims, read in light of the specification delineating the patent, and the prosecution history, inform, with reasonable certainty, those skilled in the art about the scope of the invention. As such, the claims themselves clearly inform, with reasonable certainty, those skilled in the art about the scope of the inventions as required by *Nautilus*. The patent specification, including the claims and figures, likewise informs about the scope of the inventions.

The definiteness of the claims is further confirmed by the now concluded IPR proceedings that Valve initiated concerning the '525 and '770 patents. As discussed above, Valve made no contention that the claims, read in light of the specification delineating the patent, and the prosecution history, failed to inform, with reasonable certainty, those skilled in the art about the scope of the invention. On the contrary, Valve expressly argued that all terms not specifically construed by Valve in the petitions should be given their "ordinary meaning" (including for example "substantially" and the other terms at issue here). See **(**Becker Decl., Exhibits A and B at page 17 and quotations above in Section B.1.).

Further, Valve specifically explained how the claims were met by the prior art and did not object to the PTAB's constructions of the claims even when the PTAB had no trouble determining their scope.

In the corrected petition for the ‘948 IPR for the ‘525 patent, where claims 1 and 20 include “substantially the full distance between the top edge and the bottom edge” (dispute 4), Valve argued with the assistance of annotations:

> Each of the elongate members (shift levers 126,125) of Tosaki extends substantially the full distance between a top edge and a bottom edge (see, e.g. distance comparison annotations to Fig. 23 of Tosaki, below). See also, the Rempel ‘525Decl., Exhibit 1008, at ¶16, p. 3, lines 11-14.




> (Becker Decl., Exhibits A and B at page 22).

Similarly, in the corrected petition for the ‘949 IPR for the ‘770 patent, where claims 1 and 2 include a first/second distance between the top edge and the bottom edge, and substantially all of the first/second distance (disputes 7 and 8), Valve argued with the assistance of annotations:

> The first elongate member (shift lever 126) of Tosaki extends along a longitudinal axis for at least half of a first distance between a top edge and a bottom edge (see distance comparison annotations to Fig. 23 of Tosaki, below). (Becker Decl., Exhibits A and B at page 22).

…

The first elongate member (first mode switch 32) of Enright extends along a longitudinal axis for a substantial portion of a first distance between the top edge and the bottom edge (see distance comparison annotations to Fig. 5 of Enright, below).




Although such substantial portion appears to be less than half of the first distance, it would have been an obvious variation - in a predictable art - to make the first mode switch 32 of Enright longer, to reach half or all of the first distance, for example based on the teaching of Tosaki. … (Becker Decl, Exhibits A and B page 37).

In the institution decision for the 948 IPR for the ‘525 patent, the PTAB found:

II. PRELIMINARY MATTERS

A. PETITIONER’S CLAIM INTERPRETATIONS

…

3. Extension of the Elongate Members (all claims)

Independent claims 1 and 20 recite that each elongate member on the back of the controller “extends substantially the full distance between the top edge and the bottom edge” of the controller. Claims 2–19 include this limitation by virtue of dependence from claim 1. The use of the term “substantially” in claims 2, 17, and 20 does not shed additional light on the meaning of the term. The ’525 patent is the parent of the ’770 patent, and consequently we seek to construe claim terms consistently across the patents. *See NTP Inc., v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) (When construing claims in patents that derive from the same parent application and share common terms, “we must interpret the claims consistently across all asserted patents.”). Claim 1 of the ’770 patent requires that the elongate member extends at least half of a first distance between the top and bottom edge of the outer case along the

> longitudinal axis of the elongate member. Dependent claim 2 adds that the elongate member extends along "substantially" all of the first distance. Claim 2 further limits claim 1, and supports the interpretation that "substantially" all the first distance is more than at least half that distance.
>
> "Substantially" is often used to mean, "largely but not wholly what is specified." *See, e.g., York Products, Inc., v. Central Tractor Farm & Family Center,* 99 F.3d 1568, 1572–73 (Fed. Cir. 1996); *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d, 1554, 1562, (Fed. Cir. 1996)). We do not apply this interpretation as a *per se* rule. *We are mindful that the claim term "substantially" can render a claim indefinite*. *See generally Ex parte Lazzara*, 2007 WL 7751836, Appeal No. 2007-0192 (PTAB May 30, 2007) (informative), *rehearing denied*, 2007 WL 5063473 (Nov. 13, 2007) (providing an overview of use of the claim term "substantially"). *Here, the Specification does not provide a special meaning for the term, nor have the parties identified any relevant portion of the prosecution history. The use of the term to modify "the full distance" does not render the phrase so unclear that there is no means to ascertain the scope. Interpreting "substantially" to mean, "largely but not wholly what is specified" is consistent with the Specification as discussed above.*
>
> *We preliminarily construe the claims to require that the elongate members extend largely but not necessarily the entire distance between the top and the bottom edges*. (Becker Decl., Exhibit C at pages 11-13). (emphasis added)

The PTAB also discussed Valve's contention that the prior art included "elongate members" that extended substantially the full distance between the top edge and the bottom edge of the controller.

> *Petitioner contends that each back control (shift levers 125, 126) includes an elongate member that extends substantially the full distance between the top and the bottom edge of the controller*. Pet 21–22 (Ex. 1002, 13:24; Figs. 2, 3, 23). In support, Petitioner compares the length of Tosaki's elongate members to the distance between the "top edge segments" and "bottom edge segments." Id.

> (providing an annotated version of Figure 23). (Becker Decl., Exhibit C at pages 19-20). (emphasis added)

Valve did not contest these claim interpretations. In the Final Written Decision for the 948 IPR for the '525 patent, the PTAB ruled as follows:

> <u>3. Extension of Elongate Members</u>
>
> Independent claims 1 and 20 recite that each elongate member on the back of the controller "extends substantially the full distance between the top edge and the bottom edge" of the outer case of the controller. Claims 2–19 include this limitation by virtue of dependence from claim 1.
>
> In the Institution Decision, we determined that the claims require that the elongate members extend largely but not necessarily the entire distance between the top and the bottom edges. Dec. 11–13. The parties do not challenge this interpretation, and we adopt it here. (Becker Decl., Exhibit E at page 13).

**3. Ninth Dispute ("the medial portion is closer to the top edge than a distal end of each of the first handle and second handle" '770 Patent).**

The language of the claim is clear and Valve's proposed constructions fail to clarify the claim. (Plaintiff Ironburg Inventions LTD's Opening Claim Construction Brief at pages 16-18).

**C. Conclusion.**

Valve's IPR Petitions and the PTAB's Decisions are compelling evidence, if not dispositive, that the disputed claims are not indefinite.

Dated: February 1, 2018

By: */s/ Robert D. Becker*
Robert D. Becker
MANATT, PHELPS & PHILLIPS LLP-CA
1841 Page Mill Rd., Suite 200
Palo Alto, CA 94304
Telephone: (650) 812-1300
Facsimile: (650) 213-0260
rbecker@manatt.com

*/s/ Stephen C. Willey*
Stephen C. Willey (WA 24499)
SAVITT BRUCE & WILLEY LLP
1425 Fourth Ave., Suite 800
Seattle, WA 98101
Telephone: (206) 749-0500
Facsimile: (206) 749-0600
swilley@sbwllp.com

*Attorneys for Plaintiff*
*IRONBURG INVENTIONS LTD.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2018, I served the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

*/s/ Robert D. Becker*
Robert D. Becker

319809203.2