UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IRONBURG INVENTIONS LTD., <br><br> Plaintiff, <br><br> v. <br><br> VALVE CORPORATION, <br><br> Defendant. | C17-1182 TSZ <br><br> ORDER |

THIS MATTER comes before the Court to construe certain claim terms in United States Patent Nos. 8,641,525 (the "'525 Patent") and 9,089,770 (the "'770 Patent), pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995), and <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303 (Fed. Cir. 2005). Before this action was transferred from the Northern District of Georgia, the parties submitted a Joint Claim Construction Statement, docket no. 64, attached to which was a list of eighteen disputed claim terms. Ex. 1 (docket no. 64-1). The last nine of those eighteen terms relate to United States Patent Nos. 9,289,688 and 9,352,229, as to which the Court has stayed plaintiff's infringement claims. <u>See</u> Minute Order at ¶ 2(b) (docket no. 148). With regard to the first, third, and fourth disputed claim terms, namely (1) directional references (<u>i.e.</u>, top, bottom, front, back, end, side, inner, outer, upper, lower), (3) "inherently resilient and flexible," and (4) "substantially the full distance between the top edge and the bottom edge," the Court previously adopted the Patent Trial and Appeal

ORDER - 1

Board's interpretations.  Minute Order at ¶ 1 (docket no. 153).  The fifth disputed claim term, *i.e.*, (5) "the front end," was stricken from the parties' joint claim chart and will not be construed by the Court.  See *id.* at ¶ 2.

Defendant Valve Corporation ("Valve") contends that the second, fourth, sixth, seventh, and eighth disputed claim terms are indefinite.  In adopting the Patent Trial and Appeal Board's interpretation of the fourth disputed claim term, the Court reserved ruling on whether the term is indefinite.  See *id.* at ¶ 1.  The second and sixth disputed claim terms are duplicative, both involving (2)/(6) "elongate member," which appears in each patent at issue.  Valve has offered a construction of "elongate member" in the event that the Court does not find the term indefinite.  With regard to the seventh and eighth disputed claim terms, namely (7) "a first/second distance between the top edge and the bottom edge" and (8) "substantially all of the first/second distance," the parties have agreed that, if the Court concludes such claim terms are not indefinite, the Court need not further construe such claim terms.

The Court is asked, however, to construe the ninth disputed claim term, which is (9) "the medial portion is closer to the top edge than a distal end of each of the first handle and the second handle."  See Tr. (Jan. 5, 2018) at 19-22 (docket no. 157).  As a result, the Court will first consider whether disputed claim terms (2)/(6), (4), (7), and (8) are indefinite, and regardless of how it rules on that question, the Court will then address the parties' request that disputed claim term (9) be construed.  The other disputed claim term that might require interpretation is (2)/(6) "elongate member," but only if it is not deemed indefinite.  Having reviewed the parties' supplemental briefs and other relevant filings, the Court now enters the following order.

ORDER - 2

**Background**

Both the '525 Patent and the '770 Patent disclose an "improved controller for a game console that is intended to be held by a user in both hands in the same manner as a conventional controller," but which has "two additional controls located on the back in positions to be operated by the middle fingers of a user." '525 Patent & '770 Patent at Abstract. With one exception, the disputed claim terms involve limitations related to the rear controls, which are described in the specification as "paddles **11**" and in the claims as including an "elongate member." *See id.* at Col. 3, Line 51; '525 Patent at Col. 4, Line 52; '770 Patent at Col. 4, Lines 50-52. The '525 Patent requires that each "elongate member" extend "substantially the full distance between the top edge and the bottom edge" of the outer case of the hand held controller. '525 Patent at Col. 4, Lines 53-54. In contrast, the '770 Patent describes each "elongate member" independently, with the "first elongate member" extending "at least half of a first distance between the top edge and the bottom edge" and the "second elongate member" extending "at least half of a second distance between the top edge and the bottom edge" of the outer case of the video game controller. '770 Patent at Col. 4, Lines 53-59. Both patents contain the following illustration:

'525 Patent & '770 Patent at Fig. 3. In a separate, dependent claim, the '770 Patent states that the first elongate member must extend "along substantially all of the first distance,"

ORDER - 3

1 while the second elongate member must extend "along substantially all of the second

2 distance." '770 Patent at Col. 4, Lines 61-64 (Claim 2). In a different dependent claim,

3 the '770 Patent specifies that the "medial portion" between the first convex portion of the

4 bottom edge of the video game controller, which defines the first handle, and the second

5 convex portion of the bottom edge of the video game controller, which defines the second

6 handle, must be "closer to the top edge than a distal end of each of the first handle and the

7 second handle." <u>Id.</u> at Col. 5, Lines 8-10 (Claim 5); <u>see also</u> Col. 4, Line 65 – Col. 5,

8 Line 3 (Claim 3 on which Claim 5 depends). This limitation concerning the "medial

9 portion" is the only disputed claim term that does not involve the controls (or paddles or

10 elongate members) on the back of the device.

11 **Discussion**

12 **A.    Indefiniteness**[1]

13     A patent is presumed valid. 35 U.S.C. § 282(a). Such presumption may be

14 overcome on the ground of indefiniteness only if a patent's "claims, read in light of the

15 specification delineating the patent, and the prosecution history, fail to inform, with

16 reasonable certainty, those skilled in the art about the scope of the invention." <u>Nautilus,</u>

---

[1] The Court is unconvinced by plaintiff's argument that, in pursuing an inter partes review before the Patent Trial and Appeal Board, Valve somehow conceded that the terms of the patents at issue are not indefinite. Valve could not have raised indefiniteness in an inter partes review, <u>see</u> 35 U.S.C. § 311(b), and thus, it cannot be deemed to have forfeited its right to present such defense in this matter. Similarly, collateral estoppel or issue preclusion does not operate to bar Valve from presenting its indefiniteness contentions to this Court. <u>See</u> <u>Granite Rock Co. v. Int'l Bhd. of Teamsters, Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local 287</u>, 649 F.3d 1067, 1070 (9th Cir. 2011) (collateral estoppel requires, at a minimum, that the issue sought to be relitigated be identical to an issue necessarily decided in a previous proceeding). Finally, for the same reason that the positions taken by Valve during inter partes review do not bind it in this litigation with respect to indefiniteness, the contentions made by third party Collective Minds Gaming Co., Ltd. in separate inter partes review proceedings have no persuasive value on the subject.

ORDER - 4

*Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). An invalidity defense must be proven by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). The Court concludes that Valve has not carried its burden of showing that disputed claim terms (2)/(6) "elongate member," (4) "substantially the full distance between the top edge and the bottom edge," (7) "a first/second distance between the top edge and the bottom edge," and (8) "substantially all of the first/second distance" are indefinite. The disputed claim terms contain words of degree ("elongate," "between," and "substantially") that provide a sufficient standard of measurement.

As observed by the Federal Circuit, claim language "employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). The certainty that the law requires in patents is not greater than is reasonable and, in evaluating a claim for indefiniteness, the Court must take into account the inherent limitations of language, as well as the "modicum of uncertainty" that is the "price of ensuring the appropriate incentives for innovation." *See id.* at 1378-79 (quoting *Nautilus*, 134 S. Ct. at 2128). A patent must merely be "precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Id.* at 1378 (quoting *Nautilus*, 134 S. Ct. at 2129 (alteration in original) (quoting *Markman*, 517 U.S. at 373)).

In *Biosig*, on remand from the Supreme Court, the Federal Circuit held that the term "spaced relationship" was not indefinite. The patent at issue was for a heart rate monitor that included (coincidentally) an "elongate member" with a first and second half; each half contained a live electrode and a common electrode in "spaced relationship"

ORDER - 5

with each other. 783 F.3d at 1376. The Federal Circuit reiterated its earlier analysis that an ordinarily skilled artisan would understand the claim language to require "the spaced relationship to be neither infinitesimally small nor greater than the width of a user's hands." *Id.* at 1382. The *Biosig* Court reasoned that the distance between the electrodes could not exceed the width of a user's hands because the patent claim required the electrodes to "independently detect electrical signals at two distinct points of a hand," and that an infinitesimally small distance between the electrodes was infeasible because it would effectively merge the electrodes into one detection point. *See id.* at 1383 (quoting *Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 899 (Fed. Cir. 2013), *vacated*, 134 S. Ct. 2120 (2014)). As a result, the Federal Circuit concluded that a skilled artisan "would understand the inherent parameters of the invention as provided in the intrinsic evidence." *Id.* at 1384.

### 1. **Elongate Member**

*Biosig* undermines Valve's contention that disputed claim term (2)/(6) "elongate member" is indefinite. *Biosig* is not the only decision of the Federal Circuit involving claim language that included the phrase "elongate member"[2] or the term "elongate" to

---

[2] *See Red Dog Mobile Shelters, LLC v. Kat Indus., Inc.*, 664 Fed. App'x 905 (Fed. Cir. 2016) ("elongate member" in patent for re-deployable mobile above-ground shelter); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329 (Fed. Cir. 2011) ("elongate member" in patent for a surgical apparatus to provide balloon brachytherapy, a form of radiation treatment); *Cordis Corp. v. Boston Scientific Corp.*, 99 Fed. App'x 928 (Fed. Cir. 2004) ("elongate member" in patent for a balloon-expandable coronary stent); *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572 (Fed. Cir. 1983) ("elongate member" in patent for an electrical connecting device); *see also Voda v. Cordis Corp.*, 536 F.3d 1311 (Fed. Cir. 2008) ("elongate tubular member" in patent for assembly guiding the path of a therapeutic catheter); *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567 (Fed. Cir. 1984) ("elongate flexible binding member" in patent for packaging process).

ORDER - 6

modify another noun, for example, guard panel, stem, tube, or base portion.³ Despite the prevalence of the word "elongate" in patents spanning a variety of industries, Valve has cited no case in which the Federal Circuit has found the term "elongate," when used as an adjective, to be indefinite. Rather, in at least one (albeit unpublished) decision, the Federal Circuit has construed "elongate" consistently with its dictionary meaning as referring to "a structure 'having a form notably long in comparison to its width.'" *See Dana Innovations v. Speakercraft, Inc.*, 1996 WL 748250 at *2 (Fed. Cir. Dec. 2, 1996) (citing Webster's Third New Int'l Dictionary 737 (1986)).

Valve's reliance on another unpublished decision, *GE Lighting Solutions, LLC v. Lights of Am., Inc.*, 663 Fed. App'x 938 (Fed. Cir. 2016), is misplaced. The patent in that case used the verb form "elongated," which connotes an "extending in length." *See id.* at 940. The patent claims disclosed a "thermally conductive core" and required that such core be "elongated." *Id.* Acknowledging that "elongated" is "undoubtedly a term of degree," the *GE Lighting* Court concluded that the verb tense was indefinite because it set no bounds for the dimensions of the core, the specification offered no explanation, the drawings provided no assistance, and the prosecution history merely informed a skilled artisan that the core could not be "disk or plate shaped" or "generally planar." *Id.* at 940-41. In contrast, in this matter, the patents use the word "elongate" in its usual sense, as a

---

³ *L.B. Plastics, Inc. v. Amerimax Home Prods., Inc.*, 499 F.3d 1303 (Fed. Cir. 2007) ("elongate polymer guard panel" in patent for composite gutter guard); *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367 (Fed. Cir. 2005) ("elongate stem" in patent for an intramedullary prosthesis (hip joint replacement)); *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252 (Fed. Cir. 2000) ("elongate tube" in patent for surgical irrigation system); *In re Fritch*, 972 F.2d 1260 (Fed. Cir. 1992) ("continuous elongate, thin gauge, flexible base portion" in patent for landscape edging device).

ORDER - 7

modifier indicating that an element is "notably long in comparison to its width," and the specification and drawings reflect such interpretation. <u>See</u> '525 Patent & '770 Patent at Col. 3, Lines 51-53 ("The paddles **11** are elongate in shape and substantially extend in a direction from the top edge to bottom edge of the controller."); <u>see also</u> <u>id.</u> at Figs. 2 & 3. Contrary to Valve's suggestion, disputed claim term (2)/(6) "elongate member" is not indefinite.

### 2. **Substantially**

The requirement that the elongate members extend "substantially the full distance between the top edge and the bottom edge" of the outer case of the hand held controller, as set forth in disputed claim term (4), is likewise not indefinite. The Patent Trial and Appeal Board has construed this phrase as meaning that the elongate members extend "largely but not necessarily the entire distance between the top and the bottom edges." Ex. C to Becker Decl. (docket no. 142-3 at 14). Valve challenges the substitution of the word "largely" for "substantially," arguing that both expressions are vague and fail to advise a person of ordinary skill in the art how long the elongate members must be.

The Court disagrees. The adverb "substantially" is a term of approximation generally understood to indicate "largely but not wholly that which is specified." <u>See</u> <u>LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.</u>, 275 F.3d 1347, 1354 (Fed. Cir. 2001) (quoting Webster's Ninth New Collegiate Dictionary 1176 (9th ed. 1983)). With respect to the rear controls, the word "substantially" is reasonably precise, given that the purpose of the elongate shape is to allow "a user to engage the paddles with any of the middle, ring, or little finger." <u>See</u> '525 Patent at Col. 3, Lines 56-58. As in <u>Biosig</u>, in which the term "spaced relationship" correlated with the width of a user's hand, in this

ORDER - 8

matter, the elongate members, which extend "substantially the full distance" between the top and bottom edges of the controller case, can be calibrated by a skilled artisan to suit the average span of a human hand.[4]  *See Biosig*, 783 F.3d at 1383; *see also Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821-22 (Fed. Cir. 1988) (reversing the district court's conclusion that the phrases "substantially equal" and "closely approximate" were indefinite).  Thus, disputed claim term (4) does not support Valve's invalidity contention, and it will be construed in the manner articulated by the Patent Trial and Appeal Board.

### 3. First/Second Distance

As identified by the parties, disputed claim terms (7) "a first/second distance between the top edge and the bottom edge" and (8) "substantially all of the first/second distance" are too truncated for an appropriate indefiniteness analysis.  These phrases must be understood in the context in which they appear in the claims at issue.  Claim 1 of the '770 Patent discloses a video game controller with (i) an outer case having a top edge and a bottom edge, (ii) a "first back control," and (iii) a "second back control."  '770 Patent at Col. 4, Lines 39-47.  The first back control includes a "first elongate member" and the second back control includes a "second elongate member."  *Id.* at Col. 4, Lines 49-52.  The first elongate member "extends along at least half of a first distance between the top edge and the bottom edge," while the second elongate member "extends along at least half of a second distance between the top edge and the bottom edge."  *Id.* at Col. 4, Lines

---

[4] For this reason, Valve's reliance on *Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, 2015 WL 1034275 (S.D. Tex. Mar. 10, 2015), is misplaced.  *See Legacy Separators LLC v. Halliburton Energy Servs. Inc.*, 2016 WL 3017140 at *8-*9 (S.D. Tex. May 26, 2016) (distinguishing *Fairfield* and concluding that the term "substantially" is not indefinite when "used to account for natural limitations").

53-59. Each distance is measured along "the longitudinal axis" of the elongate member. *Id.* at Col. 4, Lines 55-56 & 59-60. Claim 2 of the '770 Patent, which depends on Claim 1, indicates that the first elongate member "extends along substantially all of the first distance," while the second elongate member "extends along substantially all of the second distance." *Id.* at Col. 4, Lines 61-64. Separately defining the two elongate members permits them to be of different lengths; however, the first and second distances could also be equivalent.

The Court is satisfied that the claim language is not indefinite. Both the first and second distance must be within the dimensions of the outer case, *i.e.*, between the top and bottom edges of the case. This limitation establishes a maximum span with reasonable certainty. Given the purpose of the elongate members, which is to allow a user to engage the back controls with the middle, ring, or little fingers, *see* '770 Patent at Col. 3, Lines 56-58, the first and second distances cannot be "infinitesimally small," *see Biosig*, 783 F.3d at 1383. Rather, the minimum first and second distances must be in a range that would reach the area of the designated fingers, taking into account that the length of each elongate member must be at least half of the respective distance for purposes of Claim 1, and substantially all of the respective distance for purposes of Claim 2. For the reasons previously discussed, use of the term "substantially" does not render Claim 2 indefinite. Because a skilled artisan would understand the parameters outlined in the claim language with reference to the average size of a human hand, the Court concludes that disputed claim terms (7) and (8) are not indefinite. *See Andrew Corp.*, 847 F.2d at 821-22 (observing that this type of imprecision in a claim limitation "does not impart invalidity,"

but is instead "to be considered in determination of infringement"). The Court concludes that Valve's indefiniteness challenges to the '525 and '770 Patents lack merit.[5]

**B.** **Claim Construction**

The Court has both the authority and the obligation to construe as a matter of law the meaning of language used in a patent claim. *Markman*, 52 F.3d at 979. In doing so, the Court must consider the intrinsic evidence in the record, meaning the claims, the specification, and the prosecution history.[6] *Id.* The words of a patent claim are generally assigned their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312.[7] When, as is the situation here, the claim terms are clear enough to permit the trier of fact to perform its work, the Court need not engage in further analysis or attempt to rewrite or otherwise alter the language that has received the United States Patent and Trademark Office's

---

[5] Before this matter was transferred from the Northern District of Georgia, plaintiff moved to strike and exclude the opinions of Valve's expert Robert Dezmelyk. After the case was transferred, the Clerk of the Court advised counsel that all undecided motions must be noted in accordance with Local Civil Rule 7(d). *See* Letter (docket no. 118). Plaintiff did not note the motion or otherwise bring it to the Court's attention until it filed its supplemental response brief in connection with claim construction. *See* Pla.'s Supp. Resp. Br. at 3 (docket no. 169 at 6). In light of the rulings herein regarding Valve's assertions of indefiniteness, plaintiff's motion to strike, docket no. 70, is STRICKEN as moot.

[6] The specification is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. If the specification reveals a definition given to a claim term that differs from the meaning it would otherwise possess, the inventor's lexicography trumps the ordinary and customary, or dictionary, construction. *Id.* at 1316. Similarly, the prosecution history evidences how the inventor understood the terms used in the patent. *Id.* at 1317. Because the prosecution history, however, represents the "ongoing negotiation" between the United States Patent and Trademark Office and the applicant, it might suffer from a lack of clarity and is often less useful for claim construction purposes than the specification. *Id.* In addition, although the prosecution history "can and should be used to understand the language used in the claims," it may not itself "enlarge, diminish, or vary" the limitations in the claims. *Markman*, 52 F.3d at 980.

[7] The ordinary and customary meaning of a claim term is the definition ascribed to it by "a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The context in which a claim term is used might also be instructive. *Id.* at 1314. In addition, the other claims of a patent might illuminate the meaning of a term, through consistent usage of the same term, or inclusion in a dependent claim of an additional term not present in the related independent claim. *Id.* at 1314-15.

imprimatur. *See Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("*Markman* does not require a district court to follow any particular procedure in conducting claim construction. It merely holds that claim construction is the province of the court, not a jury. . . . As long as the trial court construes the claims *to the extent necessary* to determine whether the accused device infringes, the court may approach the task in any way that it deems best." (emphasis added)); *see also Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 502 F. Supp. 2d 568, 575-76 (E.D. Ky. 2007).[8]

### 1. **Elongate Member**

Valve proposes to interpret "elongate member" to mean "distinct slender object having a length much greater than a maximum width." Valve's construction improperly imports limitations (distinct, slender, much greater than a maximum) into the claims at issue, and the Court declines to adopt it. The term "elongate member" means what it says, and the Court is satisfied that no further interpretation is necessary.

### 2. **Medial Portion**

With respect to dependent Claim 5 of the '770 Patent, Valve wishes to rewrite the claim language to read: "the medial portion is closer to the top edge **of the controller**

---

[8] In *Static Control*, the district court criticized one side's "exhortation to attach a synonym to self-defined and simple words" because it invited "a meaningless result that mocks the notion of construction." 502 F. Supp. 2d at 576. The district court used as an example the term "dog," which a party might argue, in light of intrinsic evidence, must be construed as weighing less than 50 pounds, and as a result, such party's accused dog is non-infringing because it is too heavy. *Id.* at 575. Determining whether a "dog" has a maximum weight would be an exercise in claim construction, but deciding whether "dog" means "canine" is a pointless endeavor, prompting the query of how an accused "dog" would infringe but an accused "canine" would not. *Id.*

ORDER - 12

than **the medial portion is to** a distal end of each of the first handle and the second handle." Ex. 1 to Joint Claim Constr. Stmt. (docket no. 64-1 at 8) (additional text in bold and underlined). These modifications are unnecessary and the Court declines to adopt them. The phrase "of the controller" is duplicative and technically incorrect. The term "top edge" is understood from the context of Claim 5, which depends on Claim 3, which in turn depends on Claim 1, in which "top edge" is defined as an element of the "outer case" of the video game controller. The verbiage "the medial portion is to" adds nothing, and it might create a limitation that is not in the language of Claim 5. The Court is persuaded that disputed claim term (9) need not be construed under *Markman*.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)  Disputed claim terms (2)/(6), (4), (7), and (8) are not indefinite;

(2)  Valve's proposed interpretations of disputed claim terms (2)/(6) and (9) are rejected;

(3)  The parties' stipulated motion, docket no. 188, to continue the trial date and extend related deadlines is GRANTED in part and DENIED in part, as follows:

  (a)  The deadline for disclosure of expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2) is EXTENDED to July 6, 2018; rebuttal experts shall be disclosed in accordance with Federal Rule of Civil Procedure 26(a)(2)(D)(ii);

  (b)  The deadline for filing discovery motions is EXTENDED to July 19, 2018;

  (c)  The deadline for completing discovery is EXTENDED to August 15, 2018;

  (d)  The deadline for filing dispositive motions is EXTENDED to August 23, 2018;

       (e)       The deadline for mediation is EXTENDED to September 14, 2018; and

       (f)       All other dates and deadlines set forth in the Minute Order entered January 8, 2018, docket no. 153, shall remain in full force and effect.

(4)       The Clerk is directed to send a copy of this Order to all counsel of record and to Magistrate Judge Donohue.

IT IS SO ORDERED.

Dated this 7th day of June, 2018.

*[signature]*

Thomas S. Zilly
United States District Judge

ORDER - 14