UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IRONBURG INVENTIONS LTD., a United Kingdom Limited Company,

Plaintiff,

v.

VALVE CORPORATION, a Washington corporation,

Defendant.

Case No. C17-1182-TSZ

ORDER GRANTING VALVE'S MOTION TO COMPEL

## I. INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court upon defendant Valve Corporation ("Valve")'s motion to compel plaintiff Ironburg Inventions Ltd. ("Ironburg") to produce documents and communications related to Ironburg's knowledge and non-disclosure of certain prior art references to the PTO. Dkt. 196; Dkt. 245. Following the parties' oral argument on the motion on August 21, 2018, Dkt. 240, the Court directed Ironburg to produce the documents on its privilege log for an *in camera* review, and further directed both parties to provide the Court with additional briefing stating their perspectives regarding the proper scope of the waiver, if any, of the attorney client privilege resulting from Mr. Terrell's statements during his deposition

ORDER
PAGE - 1

regarding his knowledge and intent in not disclosing certain prior art references. Dkt. 241. Finally, the Court directed Ironburg to advise the Court as to whether any of its patent prosecuting attorneys will be testifying, either live or by deposition, in the upcoming trial and the subject matter of their testimony. Dkt. 241.

The Court, having carefully reviewed the parties' submissions, including the supplemental briefing and the documents submitted by Ironburg for review *in camera*, the governing law, and the balance of the record, hereby GRANTS Valve's motion to compel. Dkt. 196.

## II. DISCUSSION

### A. Valve's Motion to Compel

Valve contends that Ironburg is improperly using privilege as both a sword and a shield in an effort to defeat Valve's inequitable conduct claim asserted in Valve's Second Amended Answer and Counterclaims. Dkt. 49 at ¶¶ 34-68. Specifically, Valve believes that during the prosecution U.S. Patent Nos. 8,641,525 ("the '525 patent) and 9,089,770 ("the '770 patent), Ironburg's agents intentionally withheld two highly material prior art references from the United States Patent and Trademark Office ("PTO"). Valve argues that Ironburg's agents knew of these material references, and their importance to prosecuting the asserted patents, because the material references were used to reject similar claims in U.K. Patent application, which shares a common inventor with the asserted patents, prior to Ironburg filing the asserted patents in the United States. Dkt. 197 at 4. Valve points out that intentionally withholding material prior art is a serious violation of a patent applicant's duty of candor, and could result in patents being held unenforceable. *See Ohio Willow Wood Co. v. Alps. S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013) (noting that a patent is unenforceable due to inequitable conduct

when "the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO.").

Valve contends that Ironburg waived the attorney-client privilege by selectively disclosing information about the knowledge and intent of inventor Simon Burgess, U.S. patent agent Stephen Terrell, and foreign patent counsel Dr. John Rule with respect to the material references. Specifically, Valve alleges these three individuals each had knowledge of two material references, the Mod document[1] and the U.K. Examiner's search report,[2] but did not disclose these documents to the PTO during prosecution of the asserted patents because disclosure would have resulted in the rejection of one or more of the asserted patents, as was the case in the U.K. Valve argues that although Ironburg affirmatively elicited testimony about its Mr. Terrell's good faith in withholding material references and relied on counsel's good faith in an attempt to discharge its duty of disclosure, Ironburg then invoked the attorney-client privilege and work product doctrine to prevent Valve from inquiring further about his self-serving statements.

---

[1] The Mod document was one of four references cited by a U.K. patent examiner in rejecting the patentability of all claims in a U.K. patent application filed by Mr. Burgess and rejected by the U.K. Examiner before the U.S. filing of the asserted patents. The U.K. examiner rejected nearly identical patent claims to those filed in the '525 patent.

[2] In the U.K. Examiner's Report, the U.K. Examiner explained why the U.K. claims were not patentable in view of all four cited references, including the Mod reference. Mr. Terrell had in his possession the U.K. Examiner's Combined Report, as well as the 59-page U.K. Prior Art Citation (including the Mod Reference), but did not provide any of these materials to the PTO. The 59-page collection of references includes hard copies of the four references cited by the U.K. examiner to reject the U.K. application, as well as notations identifying various key portions of such references. Instead of submitting all of these materials to the PTO, Mr. Terrell only disclosed a URL and a 3-page hard copy of the Thrustmaster Run 'N Drive reference, which was the second of the four references cited in the U.K. Examiner's Combined Report. Dkt. 245 at 3.

Specifically, Mr. Terrell testified regarding his lack of knowledge of the U.K. application and the U.K. Examiner's report, and that Ironburg's U.K. patent attorney Dr. Rule emailed him the four prior art references (including the Mod document) in late 2012, but Mr. Terrell only submitted one of them to the PTO. He claimed that during the prosecution of the patents he did not know the document contained four separate references, and that he was unaware of the U.K. application until this litigation. Inventor Simon Burgess testified he had never seen the Mod document or the U.K. examiner report prior to the day before his deposition. Dr. Rule testified that he was involved in the prosecution of the asserted patents, and admitted to reviewing the Mod document and U.K. Examiner's report, but evoked privilege and did not answer further questions about whether he sent the document with the four references to Mr. Terrell or told him there were four separate references.

Thus, Valve contends that Ironburg impliedly waived the protection of the attorney-client privilege by voluntarily injecting into suit a question that turns on Mr. Terrell's state of mind, such as claiming "good faith" in defending against a claim of inequitable conduct. *See Medicines Co. v. Mylan Inc.*, 936 F.Supp.2d 894, 905-06 (N.D. Ill. 2013) (holding that a patentee who offered the testimony of its patent counsel regarding the rationale for not disclosing potentially material prior art to show good faith and negative the vital intent element of an inequitable conduct claim voluntarily put at issue "the process by which it came to decide not to disclose [the withheld prior art]" and therefore waived the privilege); *Pall Corp., v. Cuno Inc.*, 268 F.R.D. 167, 169 (E.D.N.Y. 2010) (holding that "asserting privilege cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny the [defendant] access to the [privileged materials]" especially where those materials "are potentially capable of undermining [the patentee's]

assertions of good faith and are therefore relevant to [the defendant's] inequitable conduct counterclaim."). Valve argues that as in *Mylan* and *Pall Corp.*, Ironburg affirmatively offered testimony of its patent agent's mental impressions and conclusions regarding why he did not submit to the PTO all four prior art references he had received from Dr. Rule in an effort to illustrate his good faith and negate the "intent" element vital to Valve's inequitable conduct claim. By doing so, Ironburg placed at issue its decision and intent not to disclose the documents, and withholds as privileged documents relating to such testimony that might undermine Ironburg's assertions of good faith. Valve asks the Court to find that Ironburg has impliedly waived the attorney-client privilege as in *Mylan* and *Pall*.[3]

Ironburg opposes Valve's requested production, arguing that *Therasense* and its progeny have raised the burden of proof required to prevail in inequitable conduct claims by eliminating the former sliding scale approach that meant that a strong showing of materiality would reduce the showing of intent, and vice versa. Dkt. 215 at 5 (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (holding that the intent requirement is only satisfied by clear and convincing evidence that an applicant made a deliberate decision to withhold a material reference, and not simply gross negligence or negligence)). Ironburg asserts that there is no evidence that Mr. Terrell, or anyone else, considered anything to be material or made a deliberate decision to withhold anything from the PTO. Ironburg argues that simply disclosing what Mr. Terrell actually submitted to the PTO

---

[3] Valve argues that Ironburg should be ordered to produce (1) all communications and documents bearing on Mr. Burgess, Dr. Rule or Mr. Terrell's knowledge of the Mod reference and the UK Examiner's combined report, and their intent in disclosing or withholding them from the PTO; and (2) Mr. Terrell to be deposed about his knowledge, intent, and communications surrounding the Mod reference and UK Examiner's Combined Report and to answer questions over which Ironburg previously claimed privilege regarding his mental impressions, knowledge, and intent. Dkt. 245 at 8.

does not waive the privilege, and Valve cannot prove that Ironburg knew or engaged in intentional, material omissions or misrepresentations during the application process for the patents-in-suit. Ironburg asserts that Mr. Terrell's mental impressions are not at issue, because he never made a conscious decision to withhold any documents from the PTO. As Ironburg has not placed Mr. Terrell's mental state at issue, it has not opened the door to privileged discovery regarding Ironburg and its counsel's privileged communications pertaining to the submission of the patent application to the PTO. *Id*. at 13.

Ironburg further argues that it has not asserted the "advice of counsel" defense to Valve's claim of inequitable conduct, and therefore cannot be found to have waived the attorney-client privilege on this basis. Ironburg observes that courts around the country have disagreed about what a patentee must do to invoke this defense. Although Valve cites to *Brigham and Women's Hosp. Inc. v. Teva Pharm. USA, Inc.,* 707 F. Supp. 2d 463, 471 (D. Del. 2010), to support its argument that a patentee waives the attorney-client privilege simply by testifying that the patentee forwarded all information to counsel and relied on counsel to make a final determination regarding what to disclose to the PTO, Ironburg asserts that the more appropriate standard is that "a patentee should not be found to have waived privilege…unless it has represented that it would have disclosed material references but for the counsel's advice to do otherwise." *Berry Plastics Corp. v. Intertape Polymer Corp.*, Case No. 3:10-cv-76-RLY-WGH, 2014 U.S. Dist. LEXIS 187296, at *7 (S.D. Ind. July 18, 2014). Ironburg contends that Mr. Terrell did not testify that he communicated any privileged opinions to Ironburg regarding whether certain prior art references should be provided to the PTO, or that Ironburg relied on his advice to provide or withhold certain prior art references. Dkt. 215 at 15. In sum, Ironburg asserts that Mr. Terrell testified that he simply did not know certain facts regarding the content

of the patent application at the time the materials were submitted to the PTO, which is not, as Valve asserts, the same situation as if Mr. Terrell had testified as to "the reason Mr. Terrell did not submit all four prior art references." Dkt. 215 at 16.

The Court finds that Ironburg's arguments largely amount to verbal gymnastics attempting to differentiate between "withholding" and "failing to submit" material references, and are not persuasive. Either way, Mr. Terrell did, in fact, testify as to a reason he only submitted a subset of the documents he had received from Dr. Rule to the PTO, which did not include the Mod document and UK Examiner's report. Specifically, Mr. Terrell testified that he believed that the document received from Dr. Rule, which contained all four of the prior art references used to reject the UK application, only included one reference. As in *Mylan* and *Pall Corp.*, Mr. Terrell's testimony reflects a patent agent's mental impressions and conclusions regarding why he did not submit prior art references in an effort to negate the "intent" element vital to Valve's inequitable conduct claim. Although the mere denial of an inequitable conduct claim does not waive the privilege, Mr. Terrell's affirmative testimony placed his mental impressions and intent at issue, and impliedly waived the attorney-client privilege. *See Aventa Learning, Inc. v. K12, Inc*., 430 F. Supp. 2d 1083, 1106 (W.D. Wash. 2011) ("In Washington, the party asserting the attorney-client privilege has the burden of proving all the elements of privilege, including the absence of waiver."). As federal courts have acknowledged, "the heightened standards of *Therasense* make inquiry into counsel's and client's patent prosecution decisions—and the knowledge base underlying them—a natural avenue of discovery." *In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litigation,* Master Case Nos. 1:10–ML–02181–LJM, 1:13–mc–00058–LJM–DML, 2013 WL 3820593, at *8 (S. D. Ind. July 23, 2013). The Court agrees with Valve that,

in light of Mr. Terrell's statements, further inquiry into Ironburg's knowledge and intent is called for in this case.

Ironburg's unwillingness to take a position as to whether it will rely on the testimony of its patent agents at trial further amplifies this conclusion. Ironburg represents that it presently has no intention of calling either Mr. Terrell or Dr. Rule to testify in person or by deposition at trial, because Ironburg does not believe Valve can make the threshold showing, by clear and convincing evidence, that Mr. Terrell intentionally withheld material art with the intent to deceive the PTO that would require Ironburg to put forward any evidence of the good faith of its patent counsel. However, if Valve does make this threshold showing, "Ironburg reserves the right to call Mr. Terrell to testify at trial" regarding the disclosures he made to the PTO concerning the Mod document and the UK Patent Application. Dkt. 246 at 2-3.[4] Ironburg assumes that Valve's inequitable conduct claim will be tried by the Court rather than a jury, as "Ironburg intends to move to bifurcate Valve's inequitable conduct claim." Dkt. 246 at 2.

Ironburg's assumption is misplaced. To date, Ironburg has filed no such motion to bifurcate. Moreover, even if such a motion were filed, it is not a foregone conclusion that such a motion would be granted. The Court has completed an *in camera* review of the documents from Ironburg's privilege log, and although the *in camera* review was of very limited utility without further context, it was certainly not the case that these documents clearly exonerated Ironburg from any possible allegations of knowingly or intentionally withholding material prior art. While the Court is not making any findings as to the merits of Valve's inequitable conduct claim, it would be unfair to assume, at this juncture, that Valve will not be able to

---

[4] Ironburg "affirms that it will not offer as a defense to any claim of Valve at trial any legal advice that Mr. Terrell or Dr. Rule provided to Ironburg." *Id.*

make a threshold showing of intent, prompting Ironburg to Mr. Terrell to testify as to his own good faith. But it would not be fair to Valve to allow Ironburg to use its attorney-client privilege as both a sword and a shield, preventing Valve from inquiring into Mr. Terrell's state of mind while also reserving the right to call him to testify at trial on this same issue. *See Brigham*, 707 F. Supp. 2d at 471 (holding that plaintiffs waived the attorney client privilege following plaintiffs' counsel's confirmation to the Court that plaintiffs intended to defend against the claim of inequitable conduct by calling the inventors and prosecuting attorneys to testify at trial that they believed in good faith that they disclosed to the PTO all material informant of which they were aware).

Thus, the Court finds that an implied waiver of the Ironburg's attorney-client privilege is justified in this case, just as other courts around the country have found in similar circumstances. *See Mylan*, 936 F. Supp. 2d at 903 (holding that plaintiff placed its intent in not disclosing potential prior art reference at issue by offering patent counsel's testimony to defeat an issue at the center of defendant's inequitable conduct claim, and therefore waiver extended to all documents and communications relating to the undisclosed prior art); *Pall Corp.*, 268 F.R.D. at 170 (holding that where plaintiff offered statements to support its position, but denied defendant access to privileged material potentially capable of rebutting the assertion, plaintiff implied waived attorney-client privilege and work product doctrine with respect to all documents withheld on the basis of privilege that pertain to the proceedings before the PTO and the issue of good faith); *Barry,* 2016 WL 3583620, at \*11-12 (finding waiver and granting defendant second deposition to obtain answers to questions for which privilege was previously asserted). Ironburg shall produce, by no later than **September 21, 2018**, the following: (1) all communications and documents bearing on Mr. Burgess, Dr. Rule, or Mr. Terrell's knowledge

of the Mod reference and the UK Examiner's combined report, and their intent in failing to disclose or withholding these documents from the PTO; and (2) Mr. Terrell to be deposed about his knowledge, intent, and communications surrounding the Mod reference and UK Examiner's Combined Report and to answer questions over which Ironburg previously claimed privilege regarding his mental impressions, knowledge, and intent.

III. CONCLUSION

Accordingly, Valve's motion to compel, Dkt. 196, is GRANTED. The Clerk is directed to send a copy of this Order to counsel for both parties.

DATED this 7th day of September, 2018.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge