UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IRONBURG INVENTIONS LTD.,

Plaintiff,

v.

VALVE CORPORATION,

Defendant.

C17-1182 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Defendant Valve Corporation's motion to exclude certain expert testimony, docket no. 252, is DENIED. Defendant seeks to exclude (i) the opinion of Kenneth S. Serwin, Ph.D. concerning the reasonable royalties to which plaintiff Ironburg Inventions Ltd. would be entitled if it prevails on its patent infringement claims, and (ii) the portion of the opinion of plaintiff's technical expert Garry Kitchen on which Serwin has relied in calculating the higher of two sets of royalty rates. All approaches to approximating a reasonable royalty involve some degree of uncertainty. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). The admissibility inquiry, pursuant to Federal Rules of Evidence 702 and 703, as well as *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny, focuses simply on whether the methodology used is reliable and whether the data to which the methodology was applied is sufficiently tied to the facts of the case. *Summit 6*, 802 F.3d at 1296.

(a) Contrary to Valve's assertion, Serwin, who holds a Ph.D. in economics, is qualified to testify about a hypothetical license for the patents-in-suit[1] and the reasonable royalties that might be expected in connection with such license. Moreover, Serwin's methodology is generally consistent with *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) (articulating the fifteen considerations now known as the "*Georgia-Pacific* factors"). Serwin has

---

[1] For purposes of the pending motion and this Minute Order, the patents-in-suit include only United States Patent No. 8,641,525 and United States Patent No. 9,089,770.

MINUTE ORDER - 1

based his estimates of royalty rates on real-world data tied to the facts of this case, namely the terms of an actual licensing agreement between Microsoft Corporation ("Microsoft"), on one side, and plaintiff and its related "Scuf Gaming" entities, on the other, concerning intellectual property that includes the patents-in-suit. Serwin's testimony will assist the trier-of-fact in understanding this complex agreement and how to evaluate what portion of the royalties received thereunder are attributable to the patents-in-suit. *See* Fed. R. Evid. 702. To the extent that Serwin (i) has not considered all intellectual property licensed by Microsoft, whether now existing or to be generated in the future, (ii) has not excluded intellectual property licensed by but not used by Microsoft and/or not infringed by defendant, or (iii) has erred mathematically,[2] those matters go to the weight of his testimony, not its admissibility.

(b) Garry Kitchen is qualified to express an opinion that the patents-in-suit constitute the prominent components of the intellectual property licensed by Microsoft. Whether Kitchen has (i) adequately considered the expanse of plaintiff's current and future patent portfolio, (ii) correctly understood the online reviews regarding Microsoft's "Elite" controller, and (iii) assigned a reasonable figure (*i.e.*, 80%) to the significance of the patents-in-suit relative to the suite of licensed materials are matters for cross-examination and/or rebuttal expert testimony, and not reasons to preclude Kitchen from testifying on the subject.

(2) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 7th day of November, 2019.

William M. McCool
Clerk

s/Karen Dews
Deputy Clerk

---

[2] Serwin has relied on an analysis performed in 2016 in connection with the buy-out of plaintiff's co-founder Simon Burgess (the "Scuf Gaming Buyout"), which computed the then-present value of net cash flow from future Microsoft royalties, and allocated those royalties among four of plaintiff's patents, including a European patent. *See* Ex. 4 to Chaney Decl. (docket no. 254-3); *see also* Serwin Report at ¶ 68, Ex. 1 to Chaney Decl. (docket no. 254-1). Serwin disregarded the European patent because defendant's infringing activity occurred in the United States, and he redistributed the royalties among the other three patents. *See* Serwin Report at ¶ 70. Defendant challenges this approach, which appears statistically flawed. In removing the European patent from the equation, Serwin did not concomitantly reduce the contractual royalty rate to reflect that the three remaining United States patents accounted for only 70% of the licensing revenues. This mistake does not, however, warrant exclusion of Serwin's testimony in its entirety.