1

2

3

4          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
5                    AT SEATTLE

6    IRONBURG INVENTIONS LTD.,

7                      Plaintiff,

8          v.                                    C17-1182 TSZ

9    VALVE CORPORATION,                          ORDER

10                     Defendant.

11         THIS MATTER comes before the Court on (i) plaintiff's motion regarding inter

12   partes review estoppel, docket no. 260, and (ii) plaintiff's motion for partial summary

13   judgment concerning inequitable conduct, docket no. 258.  Having reviewed all papers

14   filed in support of, and in opposition to, the motions, the Court enters the following order.

15   **Background**

16         Plaintiff Ironburg Inventions Ltd. ("Ironburg"), a limited company based in the

17   United Kingdom, and defendant Valve Corporation ("Valve"), a Washington corporation,

18   compete in the video-game controller market.  _See_ Order at 1 (docket no. 116).  Ironburg

19   licenses its patents to Scuf Gaming International, LLC and Microsoft Corporation.

20   2d Am. Compl. at ¶ 11 (docket no. 44).  Valve produces a device known as the "Steam

21   Controller."  _Id._ at ¶ 12.  Ironburg alleges that Valve's Steam Controller infringes four

22   patents, namely United States Patent No. 8,641,525 (the "'525 Patent"), United States

23

Patent No. 9,089,770 (the "'770 Patent"), United States Patent No. 9,289,688 (the "'688 Patent"), and United States Patent No. 9,352,229 (the "'229 Patent"). *Id.* at Counts I-IV. In light of related matters pending before the United States Patent and Trademark Office ("PTO") Patent Trial and Appeal Board ("PTAB"), Ironburg's claims concerning the '688 and '229 Patents have been stayed. *See* Minute Order at ¶ 2(b) (docket no. 148). The pending motions and this Order relate to the '525 and '770 Patents (the "patents-in-suit").

This litigation commenced in the Northern District of Georgia in December 2015.[1] *See* Compl. (docket no. 1). Sometime thereafter, Valve requested inter partes review ("IPR") by the PTAB of all twenty claims in the '525 Patent and all twenty claims in the '770 Patent. *See* Exs. C & D to Becker Decl. (docket nos. 262-3 & 262-4). The PTAB instituted inter partes review on most, but not all, of the grounds set forth in Valve's IPR petitions. *See* Exs. E & F to Becker Decl. (docket nos. 262-5 & 262-6). In September 2017, the PTAB issued its final written decisions in the related IPR proceedings. Exs. K & L to Becker Decl. (docket nos. 262-11 & 262-12). In July 2019, the United States Court of Appeals for the Federal Circuit affirmed the PTAB's rulings. Ex. A to Joint Status Report (docket no. 302-1). Ironburg and Valve dispute the extent to which the

---

[1] In June 2017, after the United States Supreme Court held, in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), that a domestic corporation "resides" only in the state of its incorporation for purposes of the patent venue statute, Valve sought to transfer this action to this district. *See* Order (docket no. 116). Valve's motion was granted in August 2017. *Id.*

PTAB's conclusions preclude Valve from challenging the validity of the patent claims remaining in this matter.

A.    **IPR Proceedings**

In September 2016, when the PTAB instituted the IPR proceedings at issue, the United States Supreme Court had not yet decided _SAS Inst. Inc. v. Iancu_, 138 S. Ct. 1348 (2018), which invalidated the PTAB's former practice of instituting inter partes review as to less than all of the claims in the IPR petition.  Consistent with its earlier protocol, the PTAB instituted inter partes review concerning the '525 and '770 Patents with regard to less than all of the claims and less than all of the prior art references cited in Valve's IPR petition.  The following table summarizes the claims and prior art references as to which the related IPR proceedings, IPR2016-00948 and IPR2016-00949, were instituted.

| Table 1:  Grounds Addressed in IPR Proceedings | | |
|---|---|---|
| **Patent** | **Claims** | **Prior Art References** |
| **'525 Patent**<br>IPR2016-00948 | 1, 6, 13, 14, 16, 17, 19, and 20 | Tosaki[2] |
| | 1-11, 13, 16, 17, and 20 | Enright[3] and Tosaki |
| | 18 | Enright, Tosaki, and Oelsch[4] |
| **'770 Patent**<br>IPR2016-00949 | 1, 3-12, 15-17, 19, and 20 | Tosaki |
| | 1-12 and 14-20 | Enright and Tosaki |

_See_ Exs. E & F to Becker Decl. (docket nos. 262-5 & 262-6).

In IPR2016-00948, the PTAB concluded that Claims 1, 6, 13, 14, 16, 17, 19, and 20 of the '525 Patent were anticipated by Tosaki and that Claim 20 of the '525 Patent

---

[2] United States Patent No. 5,989,123 issued to Kenji Tosaki and Masanori Kudou.

[3] United States Patent Application Publication No. 2010/0073283 A1 filed by Robert Enright.

[4] United States Patent No. 4,032,728 issued to Jurgen Oelsch.

was obvious over Enright and Tosaki. Ex. K to Becker Decl. (docket no. 262-11). In IPR2016-00949, the PTAB determined that Claims 1, 3-12, 15-17, 19, and 20 of the '770 Patent were anticipated by Tosaki and that Claims 1-12, 15-18, and 20 of the '770 Patent were obvious over Enright. Ex. L to Becker Decl. (docket no. 262-12). The PTAB rejected Valve's other invalidity contentions, including its reliance on Oelsch in combination with Enright and Tosaki. _See_ Exs. K & L to Becker Decl. The claims surviving inter partes review and still pending in this matter are Claims 2-5, 7-12, 15, and 18 of the '525 Patent and Claims 13 and 14 of the '770 Patent, all of which are dependent claims.

With regard to these remaining patent claims, Valve had sought inter partes review in reliance on the following prior art references:

| Table 2: Grounds Rejected by PTAB | | |
|---|---|---|
| **Patent** | **Claims** | **Prior Art References** |
| **'525 Patent** | 15 | Enright, Tosaki, and Ono[5] |
| | 2, 4, 5, 7, 8, 12, and 15 | Tosaki and Jimakos[6] |
| **'770 Patent** | 13 | Enright, Tosaki, and Ono |
| | 13 and 14 | Tosaki and Jimakos |

_See_ Exs. C and D to Becker Decl. (docket nos. 262-3 & 262-4). The PTAB concluded, however, that Valve had not demonstrated a "reasonable likelihood" of prevailing on its contentions that the claims listed in Table 2 are unpatentable as obvious over the prior art references identified. _See_ Exs. E and F to Becker Decl. (docket nos. 262-5 & 262-6). In

---

[5] United States Patent Application Publication No. 2001/0025778 A1 filed by Atsushi Ono.

[6] "Rapid Fire Mod for Wireless Xbox 360 Controller, Step by Step Tutorial with Pictures," posts 341-346 by Jimakos Sn (available at http://forums.xbox-scene.com).

defending against the infringement allegations in this litigation, Valve continues to rely on the combinations of (i) Enright, Tosaki, and Ono, and (ii) Tosaki and Jimakos (collectively, the "non-instituted grounds") to challenge the validity of most of the remaining patent claims.

Valve also asserts that the following prior art references, which were not raised in the IPR proceedings (collectively, the "non-petitioned grounds"), render most of the remaining patent claims obvious:

| Table 3:  Grounds Not Raised in IPR Petitions | | |
|---|---|---|
| **Patent** | **Claims** | **Prior Art References** |
| **'525 Patent** | 2-3, 5, 9-11, and 18 | Kotkin[7] |
| | 2, 4, 5, and 7-11 | Willner,[8] Koji,[9] and Raymond[10] |
| **'770 Patent** | 13 and 14 | Willner and Koji |

_See_ Def.'s Resp. at 1 (docket no. 276).[11]  In its motion regarding IPR estoppel, Ironburg contends that Valve should be estopped from pursuing invalidity defenses on the grounds set forth in Tables 2 and 3, the non-instituted grounds and the non-petitioned grounds, respectively.

---

[7] United States Patent Application Publication No. 2010/0298053 A1 filed by David Kotkin.

[8] United States Patent No. 6,760,013 B2 issued to Michael Willner and Scott Arnel.

[9] Japanese Patent Application No. JP-A H10-020951 filed by Tsuchiya Koji.

[10] United States Patent No. 5,773,769 issued to Christopher Raymond.

[11] Valve argues that, in addition to the patent claims enumerated in Table 3, certain patent claims already invalidated by the PTAB are obvious in light of (i) Kotkin or the combinations of either (ii) Willner, Koji, and Raymond, or (iii) Willner and Koji.  The Court need not address this assertion because such invalidated patent claims are longer at issue in this lawsuit.

**B.    Accusation of Inequitable Conduct**

In its separate motion for partial summary judgment, Ironburg seeks to prevent Valve from asserting inequitable conduct as an affirmative defense or counterclaim.  In answering Ironburg's Second Amended Complaint, docket no. 44, Valve alleged that, during the prosecution of the '525 and '770 Patents, Ironburg failed to disclose a prior art reference, namely website posts titled "Rapid Fire Mod for Wireless Xbox 360 Controller, Step by Step Tutorial with Pictures," which Valve has denominated as the "Mod document," but which the PTAB abbreviated as "Jimakos" in connection with Valve's IPR petitions.  *See* Def.'s Answer, Affirmative Defenses & Counterclaims at ¶¶ 59-98 (docket no. 49); *see also* Exs. E (at 17 n.5) & F (at 11 n.3) to Becker Decl. (docket nos. 262-5 & 262-6).

Valve's fifth affirmative defense and ninth (declaratory judgment) counterclaim rely solely on Jimakos (or the Mod document) as a basis to deem the '525 and '770 Patents unenforceable as a result of inequitable conduct committed before the PTO during the patent application process.[12]  In moving to strike the affirmative defense and dismiss the counterclaim, Ironburg contends that Jimakos does not have the requisite "materiality" to support a finding of inequitable conduct, citing the PTAB's refusal to institute inter partes review as to the combination of Tosaki and Jimakos.  Ironburg also asserts that Jimakos was, in fact, disclosed to the patent examiner.

---

[12] Before this case was transferred from the Northern District of Georgia, the Honorable Thomas W. Thrash, Jr. denied, without explanation, Ironburg's motion to strike both Valve's affirmative defense and its counterclaim premised on inequitable conduct.  Order (docket no. 67).  Valve makes no argument that this earlier ruling bars the current motion for partial summary judgment.

**Discussion**

**A.**     **Inter Partes Review Estoppel**

The Supreme Court's decision in <u>SAS</u> significantly altered the jurisprudential

landscape with regard to IPR estoppel.  Prior to <u>SAS</u>, in interpreting the relevant provision

of the Leahy-Smith America Invents Act,[13] the Federal Circuit held that, when the PTAB

instituted IPR proceedings on some, but not all, grounds set forth in an IPR petition,

estoppel did not attach to the grounds on which the PTAB declined to institute inter

partes review.  <u>See</u> <u>Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.</u>, 817 F.3d 1293,

1300 (Fed. Cir. 2016).  Since <u>SAS</u> was issued, other district courts have addressed the

continued viability of <u>Shaw</u> in two contexts, namely with respect to (i) "non-instituted"

grounds, <u>i.e.</u>, grounds contained in the IPR petition that did not survive the PTAB's

former triage process, and (ii) "non-petitioned" grounds, <u>i.e.</u>, grounds not raised in the

IPR petition.  <u>See</u> <u>Trustees of Columbia Univ. v. Symantec Corp.</u>, 390 F. Supp. 3d 665

(E.D. Va. 2019) (involving only non-petitioned grounds); <u>Palomar Techs., Inc. v. MRSI</u>

<u>Sys., LLC</u>, 373 F. Supp. 3d 322 (D. Mass. 2019) (involving non-petitioned grounds);

<u>Am. Tech. Ceramics Corp. v. Presidio Components, Inc.</u>, 2019 WL 365709 (E.D.N.Y.

---

[13] The statute at issue reads:

> The petitioner in an inter partes review of a claim in a patent under this chapter
> that results in a final written decision under section 318(a), or the real party in
> interest or privy of the petitioner, may not assert either in a civil action arising in
> whole or in part under section 1338 of title 28 or in a proceeding before the
> International Trade Commission under section 337 of the Tariff Act of 1930 that
> the claim is invalid on any ground that the petitioner raised or reasonably could
> have raised during that inter partes review.

35 U.S.C. § 315(e)(2).

Jan. 30, 2019) (involving non-petitioned grounds); *Cal. Inst. of Tech. v. Broadcom Ltd.*, 2018 WL 7456042 (C.D. Cal. Dec. 28, 2018) (involving both non-instituted and non-petitioned grounds); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574 (D. Mass. 2018) (involving both non-instituted and non-petitioned grounds).

In this matter, Valve asserts that the remaining claims of the patents-in-suit are invalid on the basis of non-instituted and/or non-petitioned grounds. With regard to the non-instituted grounds, Ironburg seeks to preclude Valve from relitigating the PTAB's decision that such invalidity defenses lack merit. As to the non-petitioned grounds, Ironburg argues that Valve should be estopped from raising such challenges in this litigation because it could have but failed to do so in the prior IPR proceedings. The Court agrees with Ironburg with respect to both categories of invalidity contentions.

### 1. Non-Instituted Grounds

To rule on Ironburg's motion for IPR estoppel with respect to non-instituted grounds, the Court must analyze the legal effect of the PTAB's pre-*SAS* institution of IPR proceedings on some, but not all, grounds stated in the IPR petition. In *SiOnyx*, a case with a procedural posture similar to the one here, the district court concluded that § 315(e)(2) estoppel applied to the non-instituted grounds. *See* 330 F. Supp. 3d at 601. Like Valve in this case, the IPR petitioner in *SiOnyx*, Hamamatsu Corporation, had the opportunity to but did not request any *SAS*-based relief. *See id.* at 601 & n.18; *see also Google LLC v. Lee*, 759 Fed. App'x 998 (Fed. Cir. 2019) (remanding to the PTAB to address non-instituted grounds). The *SiOnyx* Court ruled that, because Hamamatsu Corporation "reasonably could have raised" the non-instituted grounds by seeking a

post-*SAS* remand to the PTAB, but failed to do so, it was estopped from further pursuing

those contentions. 330 F. Supp. 3d at 601.

The Court is persuaded that *SiOnyx* reached the correct result. *See also* *Cal. Inst.*
*of Tech.*, 2018 WL 7456042 at *8. The Court is aware that two previous district court

cases determined, in light of *Shaw*, that § 315(e)(2) estoppel did not attach to non-

instituted grounds, but both of those opinions were issued before *SAS*. *See* *Milwaukee*

*Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990 (E.D. Wis. 2017); *Oil-Dri Corp.*

*of Am. v. Nestlé Purina Petcare Co.*, 2017 WL 3278915 (N.D. Ill. Aug. 2, 2017). *SAS*

rendered unnecessary the adherence to *Shaw* that formed the basis of the decisions in

*Milwaukee Electric* and *Oil-Dri*. *See* *Cal. Inst. of Tech.*, 2018 WL 7456042 at *7

(observing that "the factual circumstances encountered by *Shaw* . . . are unlikely to arise

again").

The Court concludes that § 315(e)(2) bars Valve from relitigating "any ground . . .

raised" during inter partes review, including grounds that the PTAB declined to include

in the IPR proceeding and as to which Valve did not seek a remand pursuant to *SAS*.

This ruling is consistent with the Federal Circuit's view that a partial IPR institution error

on the part of the PTAB is waivable. *See* *PGS Geophysical AS v. Iancu*, 891 F.3d 1354,

1362 (Fed. Cir. 2018). In *PGS Geophysical*, the Federal Circuit made clear that it will

not *sua sponte* take notice of such "ultra vires" acts by the PTAB or remand to the PTAB

in the absence of an explicit *SAS* challenge, citing the private and public interests in

securing a decision on the patentability issues presented on appeal to the Federal Circuit,

as well as the principles of finality and judicial expediency. *Id.* at 1362-63. Because

Valve had the opportunity to, but did not, seek a remand to the PTAB for it to further consider the non-instituted grounds at issue, which are enumerated in Table 2, Ironburg's motion for IPR estoppel is GRANTED with respect to such grounds.

### 2. <u>Non-Petitioned Grounds</u>

As to the invalidity contentions that Valve raises in this litigation, but never presented to the PTAB, *i.e.*, the non-petitioned grounds listed in Table 3, the parties do not quarrel over the applicable standard for IPR estoppel, but they disagree concerning whether the test has been met. Section 315(e)(2) precludes, in a subsequent civil action, an invalidity contention premised on any ground that the petitioner "reasonably could have raised" during inter partes review. 35 U.S.C. § 315(e)(2). The statutory language has been interpreted to include any patent or printed publication about which a petitioner actually knew or that "a skilled searcher conducting a diligent search reasonably could have been expected to discover." *SiOnyx*, 330 F. Supp. 3d at 602 (quoting 157 CONG. REC. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl)); *see also* *Cal. Inst. of Tech.*, 2018 WL 7456042 at *8; *Milwaukee Elec.*, 271 F. Supp. 3d at 1029-30. The question before the Court is whether a "skilled searcher" could have been reasonably expected to find the prior art references identified in Table 3, namely Willner, Kotkin, Koji, and Raymond.

None of the references at issue are of recent vintage. Willner was available in 2004, Kotkin was published in 1999, and Koji and Raymond were both accessible by 1998. *See* *Collective Minds Gaming Co. v. Ironburg Inventions Ltd.*, 2018 WL 2938858 at *2 nn.1-4 (PTAB June 7, 2018) (regarding '525 Patent); *Collective Minds Gaming Co.*

*v. Ironburg Inventions Ltd.*, 2018 WL 2939036 at *2 nn.1-3 (PTAB June 7, 2018) (regarding '770 Patent).

Sometime prior to June 2018, another IPR petitioner, namely Collective Minds Gaming Co. Ltd. ("Collective Minds"), cited each of these references to the PTAB as a ground, either alone or in combination, for declaring unpatentable the exact same patent claims identified in Table 3. *Id.* The PTAB instituted the inter partes review requested by Collective Minds[14] while the appeal concerning the inter partes review initiated by Valve was still pending in the Federal Circuit. Ironburg contends that the IPR petitions filed by Collective Minds demonstrate that, not only could a skilled searcher be reasonably expected to discover the documents at issue, but in fact, a diligent search revealed them during roughly the same timeframe.

In response, Valve makes no attempt to argue that the reference denominated as Willner was not actually known, or was undiscoverable via a diligent search, at the time Valve filed its IPR petitions. Indeed, any such assertion would lack credibility because Willner was cited by the patent examiner on the face sheets of both patents-in-suit. *See* '525 Patent at 2 (docket no. 44-1); '770 Patent at 2 (docket no. 44-2). Two of the three non-petitioned grounds that Valve seeks to pursue in this matter rely on Willner in combination with other references, and Valve offers no argument that, in the absence of Willner, the other prior art renders the claims at issue unpatentable.

---

[14] Collective Minds and Ironburg eventually settled, and their IPR proceedings were terminated. *Collective Minds Gaming Co. v. Ironburg Inventions, Ltd.*, 2018 WL 6624854 (PTAB Dec. 14, 2018).

Valve contends merely that whether Kotkin, Koji, and Raymond could have been found by a skilled searcher constitutes a question of fact, citing _SiOnyx_. _SiOnyx_, however, is distinguishable. In _SiOnyx_, the patent owner, which bore the burden of showing that IPR estoppel applied, had presented no factual evidence indicating that a diligent search would have revealed the prior art reference at issue. 330 F. Supp. 3d at 602-03. The _SiOnyx_ Court wanted to see the "search string and search source that would identify" the reference and "evidence, likely expert testimony, why such a criterion would be part of a skilled searcher's diligent search." _Id._ at 603 (quoting _Clearlamp, LLC v. LKQ Corp._, 2016 WL 4734389 at *9 (N.D. Ill. Mar. 18, 2016)). As made clear by the _SiOnyx_ and _Clearlamp_ Courts, this type of evidence is just one method of establishing what a diligent search would have revealed. In this matter, Ironburg has taken a different approach and provided virtually contemporaneous IPR petitions citing the exact prior art references on which Valve now seeks to rely.

In an effort to create a factual dispute, one of Valve's attorneys, Reynaldo C. Barceló, has stated under oath that, "[d]espite its reasonably diligent search efforts, Valve did not discover" Kotkin, Koji, or Raymond before filing its IPR petitions concerning the '525 and '770 Patents, and that "Valve is not aware of how or when Collective Minds . . . located Kotkin, Koji, or Raymond." Barceló Decl. at ¶¶ 8-9 (docket no. 277). Neither Valve's own failure to discover the references nor its lack of information concerning how Collective Minds did so raise any dispute of "material" fact. _See Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986) ("the substantive law will identify which facts are material"). What Barceló and Valve have not said is that a "skilled searcher" could not

have been "reasonably expected" to find Kotkin, Koji, or Raymond. Having apparently simply copied the analysis put forward by Collective Minds and not engaged in its own queries, Valve has offered no evidence concerning the degree of difficulty involved in locating the prior art references at issue. *See id.* at 255 & 257 (to survive a dispositive motion, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn).

Based on this record, the Court concludes, as a matter of law, that (i) Willner was actually known and/or easily found before Valve petitioned for inter partes review, and (ii) Kotkin, Koji, and Raymond were, in fact, discovered by another interested party during the same period when Valve was motivated to learn of such references. The Court further rules, as a matter of law, that a skilled searcher could have been reasonably expected to find all of these references, and Valve's argument that a triable issue exists on this subject lacks merit. Ironburg's motion for IPR estoppel is GRANTED with respect to the non-petitioned grounds set forth in Table 3.

**B.      Inequitable Conduct**

Having determined that Valve's non-instituted and non-petitioned invalidity contentions are precluded under § 315(e)(2), the Court turns to Valve's affirmative defense and counterclaim asserting that Ironburg cannot enforce any of the remaining patent claims because it engaged in inequitable conduct in prosecuting the '525 and '770 Patents by withholding from the PTO the prior art known as Jimakos (the Mod document). *See supra* note 6 & § B of the Background. Inequitable conduct constitutes an equitable defense to patent infringement. *See Therasense, Inc. v. Becton, Dickinson*

*& Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).  The Federal Circuit has described the remedy for inequitable conduct, which renders the entire patent unenforceable, as the "atomic bomb" of patent law.  *Id.* at 1288.  The taint of a finding of inequitable conduct as to one patent can spread to other related patents and applications, thereby endangering a company's patent portfolio, and it cannot be cured by reissuance or reexamination.  *Id.* at 1288-89.  It can also spawn antitrust and unfair competition claims, provide a basis for deeming the case "exceptional" and awarding attorney's fees, and permit a piercing of the attorney-client privilege on the ground of fraud.  *Id.* at 1289.  Given the dire consequences of a finding of inequitable conduct and prior abuses of the doctrine, the Federal Circuit in *Therasense* tightened the standards for proving the defense.  *See id.* at 1290.

To establish inequitable conduct, an accused infringer must show by clear and convincing evidence that the patentee misrepresented or omitted "material" information with the specific "intent to deceive" the PTO.  *Id.* at 1287.  If the accused infringer meets its burden, then the Court must weigh the equities to determine whether the applicant's conduct before the PTO warrants rendering the entire patent unenforceable.  *Id.*  Valve's accusation of inequitable conduct against Ironburg does not meet these standards.

### 1.  __Not Material__

In response to Ironburg's motion for summary judgment, Valve, which bears the burden of proving inequitable conduct on the part of Ironburg, has not raised a triable issue concerning whether the prior art alleged to have been withheld from the PTO, *i.e.*, Jimakos (the Mod document), is "material."  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986) (summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").  With regard to the withholding of prior art, the materiality required to prevail on an inequitable conduct accusation is measured under a "but for" standard.  *Therasense*, 649 F.3d at 1291.

A reference is "but for" material if the PTO would not have allowed the patent claim had it been aware of the undisclosed prior art.  *Id.*  In making this determination, the Court must apply the preponderance of the evidence standard and give the patent claims their broadest reasonable construction.  *Id.* at 1291-92.  The "but for" test of materiality is more narrow than the definition set forth in PTO Rule 56,[15] and in considering whether inequitable conduct has occurred, the Court must evaluate whether the patentee's behavior "resulted in the unfair benefit of receiving an unwarranted claim." *Id.* at 1292, 1293-94.  If the patent would have issued anyway, the applicant has obtained no advantage from omitting the prior art (which would be, by definition, immaterial), and enforcement of an otherwise valid patent does not injure the public.  *Id.* at 1292.

In refusing to institute IPR proceedings on Valve's claim of obviousness in light of Jimakos in combination with Tosaki,[16] the PTAB explained that "[t]he improvement

---

[15] PTO Rule 56 defines "material" information as follows:  "(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."  37 C.F.R. § 1.56(b).

[16] In this action, Valve tries to rely on Jimakos without Tosaki, observing that the PTAB did not consider whether Jimakos alone rendered any of the patent claims invalid.  Valve's attempt to cite Jimakos as a solo reference is barred by IPR estoppel.  Valve knew of and cited Jimakos at

disclosed by Jimakos is to add a rapid fire feature." *See* Ex. P to Becker Decl. (docket

no. 259-16 at 28-29); Ex. Q to Becker Decl. (docket no. 259-17 at 16-17). Valve's

reliance on Jimakos, however, had "nothing to do with [this] rapid fire capability," and

the PTAB concluded Valve had not demonstrated a reasonable likelihood of prevailing

on its assertion that certain patent claims were obvious over Tosaki and Jimakos.[17] *Id.*

      Valve persists in its failure to explain how Jimakos's rapid fire feature is linked to

any patentability challenge. In his report, Valve's expert, Robert Dezmelyk, opines that

Jimakos is "material" with regard to "at least" Claim 20 of the '525 Patent and Claim 1 of

the '770 Patent.[18] *See* Ex. K to Schafer Decl. (docket no. 279-11 at 18). In expressing

this opinion, Dezmelyk does not even once mention the rapid fire improvement that is the

core of the invention disclosed by Jimakos. *See id.* (docket no. 279-11 at 18-35). Instead

of addressing the analytic weakness that was identified by the PTAB, Valve argues that

the PTAB's ruling is somehow not relevant or not binding because inequitable conduct

and invalidity are "distinct considerations" and, in inter partes review, the PTAB cannot

decide charges of inequitable conduct, citing 35 U.S.C. § 311. *See* Def.'s Resp. at 11 &

14 (docket no. 278). Valve's contention ignores the substance of the PTAB's decision,

---

the time it petitioned for inter partes review, and it may not now argue that the patent claims are obvious over Jimakos independently, even in the context of an inequitable conduct accusation as opposed to an invalidity contention, because Valve failed to raise such challenge before the PTAB. *See* 35 U.S.C. § 315(e)(2).

[17] In not seeking a remand from the Federal Circuit to the PTAB when it had the opportunity to do so, Valve waived any argument that the PTAB erred in declining to institute inter partes review as to the combination of Tosaki and Jimakos. *See PGS Geophysical*, 891 F.3d at 1362.

[18] These claims have already been declared unpatentable by the PTAB on other grounds and are no longer at issue in this lawsuit.

which, on the merits, rejected Jimakos (in combination with Tosaki) as a basis for invalidating various patent claims because Valve had failed to establish the reference's materiality. Valve has fared no better in response to Ironburg's motion for partial summary judgment, and the Court concludes, as a matter of law, that Valve cannot carry its burden at trial of proving that the PTO would not have allowed the patent claims at issue if Jimakos had been disclosed by Ironburg in the manner that Valve contends was required.

### 2. No Intent to Deceive

Moreover, Valve has not shown the requisite intent to deceive. Conduct that is merely negligent or grossly negligent, satisfying only a "should have known" standard, does not suffice to prove the requisite intent; rather, clear and convincing evidence must demonstrate that the patentee "*made a deliberate decision* to withhold a *known* material reference." *Therasense*, 649 F.3d at 1290 (emphasis in original). Intent may not be inferred solely from the materiality of the reference, and intent is not proven by simply the absence of a good faith explanation for withholding the prior art. *Id.* at 1290 & 1291. The Court may, however, infer intent from indirect and circumstantial evidence, so long as the required specific intent to deceive the PTO is "the single most reasonable inference able to be drawn from the evidence." *Id.* at 1290. If the evidence supports one or more other reasonable inferences, then an intent to deceive cannot be found. *Id.* at 1290-91.

The record in this matter establishes two key facts relevant to Ironburg's intent. First, Jimakos (the Mod document) was not identified in either (i) the patent applications, or (ii) the Information Disclosure Statement filed with the PTO on October 29, 2012, by

Stephen Terrell, one of Ironburg's attorneys.  *See* Exs. E & H to Becker Decl. (docket nos. 259-5 & 259-8); Ex. C to Schafer Decl. (docket no. 279-3); *see also* Counterclaims at ¶ 91 (docket no. 49); Answer to Counterclaims at ¶ 91 (docket no. 180).  Second, on August 5, 2013, Terrell filed another Information Disclosure Statement, attached to which were (i) a copy of Ironburg's application for a patent in the United Kingdom ("UK"), *see* Ex. L to Becker Decl. (docket no. 259-12 at 6-13), and (ii) a copy of the search report generated by the UK patent examiner, *id.* (docket no. 259-12 at 14-15).[19] Both the face sheet of the UK patent application and the UK patent examiner's search report list Jimakos (the Mod document) as prior art.  *See id.* (docket no. 259-12 at 6 & 14).

In his deposition, Terrell testified that, sometime before he filed the first Information Disclosure Statement in October 2012, he had received from John Rule, one of Ironburg's attorneys in the UK, a portable document format ("PDF") file containing four references, including Jimakos.  *See* Terrell Dep. at 43:7-60:24, Ex. I to Becker Decl. (docket no. 259-9).  Rule had instructed Terrell to disclose the prior art to the PTO.  *Id.* At the time, Terrell did not understand that the PDF included more than one reference, and in the Information Disclosure Statement filed in October 2012, he cited only the first of the four documents.  *See id.*  Terrell has explained that, rather than attaching to the Information Disclosure Statement a printout of the 59-page PDF, which was difficult to

---

[19] After the UK patent examiner issued written objections to Ironburg's patent application, *see* Ex. D to Becker Decl. (docket no. 259-4), the application was abandoned.  *See* Pla.'s Mot. at 3 (docket no. 258).

read, he provided the Uniform Resource Locator ("URL") or web address for the first

(and, he thought, only) reference forwarded by Rule. *See id.* Terrell did not learn of his

error until this litigation. *See id.* at 60:18-24.

Although both the UK patent application and the UK examiner's search report

appended to the Information Disclosure Statement submitted in August 2013 listed all

four references assembled in the PDF sent by Rule to Terrell sometime before the end of

October 2012, Valve contends that the prior art was never disclosed to the PTO.

According to Valve, a reference other than a patent must be separately listed on an

information disclosure statement ("IDS"), and a copy of the document must be attached

to the IDS, before the prior art will be considered by the PTO. Valve cites 37 C.F.R.

§ 1.98(a)(2)(ii)[20] and the Manual of Patent Examining Procedure at § 609.05(a) ¶ 6.49.06

for this proposition, but neither regulation limits the scope of what a patent examiner may

view as prior art.

---

[20] The regulation on which Valve relies requires that an information disclosure statement include a "legible copy" of "[e]ach publication or that portion which caused it to be listed [in the IDS], other than U.S. patents and U.S. patent application publications unless required by the Office." 37 C.F.R. § 1.98(a)(2)(ii). Another regulation, which was not mentioned by Valve, indicates that, if an information disclosure statement does not comply with 37 C.F.R. §§ 1.97 and 1.98 (because it is untimely or deficient), "it will be placed in the file but will not be considered by the Office." 37 C.F.R. § 1.97(i). Valve makes no argument that Ironburg's August 2013 IDS was ignored by the PTO pursuant to § 1.97(i), and the record reflects that the patent examiner did, in fact, review the August 2013 IDS, albeit with regard to a subject different from the effect of the Jimakos reference, namely whether a device described in an online article titled "Review: Scuf Xbox 360 Controller" by Dave Burns constituted prior art. *See* Ex. M to Becker Decl. (docket no. 259-13); *see also* Ex. E to Becker Decl. (docket no. 259-5 at 20 & 37) (reflecting that, based on a declaration by Simon Burgess, a co-inventor who assigned the '525 and '770 Patents to Ironburg, the patent examiner concluded that the device in the Burns article was a derivation of Burgess's invention and, therefore, not disqualifying prior art).

1    Moreover, even if imbedding Jimakos in another document attached to an IDS was

2    insufficient to disclose Jimakos as a reference, the August 2013 filing nevertheless

3    contradicts Valve's assertion that Ironburg operated with an intent to deceive the PTO.

4    Rule's intent was clearly otherwise; he wanted and requested Terrell to provide Jimakos

5    (and three other references) to the PTO.  *See* Terrell Dep. at 52:22-53:2 & 62:1-13, Ex. I

6    to Becker Decl. (docket no. 259-9).  Terrell was, at most, negligent when he submitted

7    the Information Disclosure Statement in October 2012 and did not list each reference

8    contained in, or attach, the PDF forwarded by Rule.  The August 2013 Information

9    Disclosure Statement corroborates Terrell's testimony about his inadvertent error; if

10   Terrell had known about Jimakos and intentionally omitted the reference from the

11   October 2012 IDS, he would not have included it in the August 2013 IDS.  *See id.* at

12   122:4-10.  Based on this record, the requisite specific intent to deceive is not "the single

13   most reasonable inference able to be drawn from the evidence," *see Therasense*, 649 F.3d

14   at 1290, and the Court concludes, as a matter of law, that Valve cannot meet its burden to

15   prove Ironburg withheld Jimakos (the Mod document) with the intent to deceive the PTO.

16       **3.    Weight of Equities**

17       Even if the Court were required to weigh the equities in this matter, it would not,

18   in exercising its discretion, conclude that the supposed misconduct before the PTO

19   warrants rendering the '525 and '770 Patents entirely unenforceable.  The harsh remedy

20   sought by Valve is simply not commensurate with the behavior attributed to Ironburg.  In

21   drawing this conclusion, the Court takes particular note of the following undisputed facts:

22   (i) the PTAB refused to institute IPR proceedings with respect to the same reference that

23

Valve asserts Ironburg deceptively withheld from the PTO, and (ii) Jimakos (the Mod document) was actually identified in the materials submitted to the PTO in August 2013.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)     Plaintiff's motion regarding inter partes review estoppel, docket no. 260, is GRANTED, and defendant is precluded from raising at trial invalidity contentions based on the non-instituted and non-petitioned grounds described in Tables 2 and 3;

(2)     Plaintiff's motion for partial summary judgment concerning inequitable conduct, docket no. 258, is GRANTED, defendant's fifth affirmative defense relating to inequitable conduct is STRICKEN, and defendant's ninth counterclaim for declaratory judgment on the issue of inequitable conduct is DISMISSED with prejudice;

(3)     In light of the Court's ruling on plaintiff's motion for partial summary judgment regarding inequitable conduct, plaintiff's contingent motion, docket no. 294, for the alternative remedy of bifurcating trial, with inequitable conduct being tried separately to the bench after a jury trial on infringement, is STRICKEN as moot;

(4)     Based on the record to date, the patent claims remaining in this matter are Claims 2-5, 7-12, 15, and 18 of the '525 Patent and Claims 13 and 14 of the '770 Patent, and the issues left for trial are as follows:  (i) plaintiff's first and second claims of infringement, relating to the '525 and '770 Patents, respectively; (ii) plaintiff's request for enhanced damages pursuant to 35 U.S.C. § 284; and (iii) defendant's first, second, third, and fourth counterclaims for declaratory judgment of either invalidity or non-infringement relating to the '525 and '770 Patents;

1      (5)    The parties are DIRECTED to meet and confer and to provide a Joint

2  Status Report within twenty-one (21) days of the date of this Order addressing the

3  following subjects:

4              (a)    whether, in light of the Court's rulings, defendant's first and third

5      counterclaims seeking declaratory judgments of invalidity as to the '525 and '770

6      Patents, respectively, should be dismissed with prejudice, and whether defendant's

7      first affirmative defense asserting invalidity should be stricken in part as to the

8      '525 and '770 Patents;

9              (b)    which of the patent claims remaining in the matter are alleged to be

10     infringed by defendant's accused device;

11             (c)    when will the parties be prepared for trial;

12             (d)    how long do the parties anticipate trial will last; and

13             (e)    what scheduling conflicts, if any, do the witnesses and counsel have

14     during the three-month period surrounding the proposed trial date;

15     (6)    The Clerk is directed to send a copy of this Order to all counsel of record.

16     IT IS SO ORDERED.

17     Dated this 8th day of November, 2019.

18

19     _____

20     Thomas S. Zilly
       United States District Judge

21

22

23

ORDER - 22