1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10

IRONBURG INVENTIONS LTD., a
United Kingdom Limited Company,

Case No. 2:17-cv-01182-TSZ

11
12

Plaintiff,

**DEFENDANT VALVE CORPORATION'S
TRIAL BRIEF**

13

v.

14

VALVE CORPORATION, a Washington
corporation,

15
16

Defendant.

17
18
19
20
21
22
23
24
25

IDEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ)

26

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1
2
3

**<u>TABLE OF CONTENTS</u>**

4
5

I.     STATEMENT OF FACTS ................................................................1

II.    LEGAL ISSUES ..........................................................................5

    A.    THE STEAM CONTROLLER DOES NOT MEET ALL THE CLAIM LIMITATIONS ..................................................................6

        1.    There Is No Literal Infringement .................................6

            a.    The Steam Controller Does Not Satisfy the Preamble .....6

        2.    Ironburg Is Precluded from Relying on Equivalents ...................9

            a.    Prosecution History Estoppel.........................................11

            b.    Ensnarement....................................................13

    B.    IRONBURG CANNOT SHOW INDUCED INFRINGEMENT OF CLAIMS 3 & 4 ..............................................................14

    C.    THE FACTS CANNOT SUPPORT A FINDING OF WILLFULNESS OR ENHANCED DAMAGES...........................................15

    D.    IRONBURG BASES DAMAGES ON UNRELIABLE EVIDENCE AND IGNORES KEY FACTS.........................................17

        1.    Comparison to Other Licenses (Factor 1)...................18

        2.    Incremental Benefits Over Old Solutions (Factor 9).................20

        3.    Valve's Development & Marketing (Factors 8, 10 & 13) ..........21

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - ii

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

227942\90003\108217757.v1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
    808 F.3d 1313 (Fed. Cir. 2015)...................................................................11

*AquaTex Indus. v. Techniche Sols.*,
    479 F.3d 1320 (Fed. Cir. 2007)...................................................................10

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2018)..............................................................17, 21

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017).....................................................................7

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015)....................................................................................20

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
    707 F.3d 1342 (Fed. Cir. 2013).....................................................................9

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002).......................................................................6

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009)..............................................................11, 13

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)...................................................................15

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
    946 F.3d 1367 (Fed. Cir. 2020)...................................................................15

*Ericsson, Inc. v. D-Link Sys.*,
    773 F.3d 1201 (Fed. Cir. 2014)..................................................17, 18, 19, 21

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Gp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018)...................................................................16

*Felix v. Am. Honda Motor Co.*,
    562 F.3d 1167 (Fed. Cir. 2009)...................................................................12

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - iii

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)..................................................................................11

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)..................................................18, 20, 21

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016)...........................................................................15

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
    450 F.3d 1350 (Fed. Cir. 2006)................................................................6

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
    589 F.3d 1179 (Fed. Cir. 2009)................................................................6

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001)..............................................................13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)..................................................................20

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..............................................................18

*McCoy v. Foss Maritime Co.*,
    442 F. Supp. 2d 1103 (W.D. Wash. 2006)..............................................20

*MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*,
    No. C 01-4925......................................................................................10

*Pioneer Magnetics, Inc. v. Micro Linear Corp.*,
    330 F.3d 1352 (Fed. Cir. 2003)..............................................................11

*Pozen Inc. v. Par Pharm., Inc.*,
    696 F.3d 1151 (Fed. Cir. 2012)................................................................9

*Sanofi v. Watson Labs. Inc.*,
    875 F.3d 636 (Fed. Cir. 2017)................................................................15

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011)................................................................6

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019)..............................................................15

*Valve Corp. v. Ironburg Inventions Ltd.*,
    IPR2016-00948, 2018 WL 575333 (PTAB Jan. 26, 2018)........................8

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - iv

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)............................................................................................9

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016).......................................................................15

**Statutes**

35 U.S.C. § 284.........................................................................................................17

35 U.S.C. § 298.........................................................................................................16

**Rules**

LPR 120(e), 124........................................................................................................13

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - v

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

227942\90003\108217757.v1

1 **I.** **STATEMENT OF FACTS**

2 Valve is a Washington corporation founded in 1996 as an entertainment software and

3 technology company. Valve released its first PC game in 1998 and launched its Steam gaming

4 platform software in 2003. Steam acts as a PC gaming and social media platform by distributing

5 and managing various Valve and third-party games, as well as enabling users to buy, play, share,

6 modify, and build communities around these products throughout the world. In addition, Valve

7 offers software products for Steam related to animation and modeling, audio production, design

8 and illustration, education, game development, photo editing, utilities, video production, and web

9 publishing software solutions.

10 Steam users typically play Steam games on their personal computers, usually at a desk or

11 table, using the computer's keyboard and mouse to control gameplay. Sometime during 2012 or

12 2013, Valve became interested in the idea of enabling Steam users to play games while seated

13 comfortably in their living rooms, instead of being stuck behind a desk. A team of Valve engineers

14 and designers began working to create a handheld controller that could replicate the functionality

15 of a keyboard and mouse. The team leader, Jeff Bellinghausen, will testify at trial regarding the

16 team's work developing the Steam controller, although he is no longer a Valve employee. Other

17 team members may also be called as witnesses by Ironburg or Valve, including Eric Hope, Greg

18 Coomer, Scott Dalton, Jeff Keyzer, Jason Beach, and Greg Matelich.

19 The team created many different prototype controllers while developing the Steam

20 controller. These prototypes included a wide range of different controls, such as buttons, track

21 balls, keyboard keys, thumb sticks, and track pads, among others. The photo below shows many

22 of those prototype controllers.

23

24

25 DEFENDANT VALVE'S TRIAL BRIEF –
26 (2:17-CV-01182-TSZ) - 1

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600



By late 2013, the team had developed a prototype controller that was ready for limited distribution to users for play testing. This prototype controller was referred to within Valve as the "Chell" controller. The Chell controller had two back paddle controls, as seen below.

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 2

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

1
2
3
4
5
6
7
8
9



10    Valve exhibited the Chell controller at the January 2014 Consumer Electronics Show

11  ("CES").  One of the people who saw the Chell controller at CES was Duncan Ironmonger.  Mr.

12  Ironmonger was, and still is, the CEO and co-founder of Plaintiff Ironburg Inventions Ltd.

13  ("Ironburg") and its sister company, Scuf Gaming ("Scuf"), and is also a co-inventor of the '525

14  patent.  At the time, the '525 patent application was still being examined in the United States Patent

15  and Trademark Office ("USPTO") and had not yet issued as a patent.  Valve did not know about

16  the '525 patent application.

17    The following month, February 2014, the '525 patent application issued as a patent.

18  Shortly thereafter, Ironburg's attorney Cynthia Parks sent Valve a cease and desist letter on behalf

19  of Scuf and Ironburg, asserting that the Chell prototype controller infringed claims 1 and 20 of the

20  '525 patent.  By that time, however, the Chell prototype controller had already become obsolete.

21  The Valve team had already moved on to another prototype controller known internally as "Dog."

22  By the time it received the cease and desist letter, Valve had already publicly exhibited the Dog

23  prototype controller at the Steam Dev Days event in Seattle in January 2014 and at the Game

24  Developers Conference ("GDC") in San Francisco in March 2014.

25
26

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

The back controls of the Dog prototype controller were constructed differently from those of the Chell.  The Dog back controls were not discrete back paddles, but were part of the battery cover.  The accused Steam Controller also has back controls that are part of the battery cover, as shown below.  Unlike later prototype controllers and the Steam Controller, the Chell prototype did



not have a back battery cover because it did not use batteries for power.  Instead, the Chell was connected to the user's computer by a cord, and drew power through the cord.

Valve's General Counsel, Karl Quackenbush, received Ironburg's cease and desist letter. Mr. Quackenbush will appear at trial and testify about Valve's response to the letter.  Notably, Mr. Quackenbush will not testify about communications Valve had at the time with its counsel about the letter and about the '525 patent because Valve has not waived the attorney-client privilege regarding the substance of those communications. He will testify about a series of three discussions in which Valve engaged with Scuf and Ironburg's representatives.  Mr. Quackenbush represented Valve in all three discussions, which took place over a period of about one month. Ironburg was represented in the discussions by its attorney Ms. Parks (who drafted the letter), Mr. Ironmonger, or both. During these discussions, Mr. Quackenbush explained that Valve was not going to market with the Chell prototype and that it had already moved on to a different prototype controller design.

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 4

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

After those discussions, Ironburg did not contact Valve again until it served the Original Complaint, approximately 20 months later.  In that timeframe, Valve continued to publicly exhibit prototype controllers and, eventually, the Steam Controller.  Videos of these exhibitions were and still are freely available to the public on the Internet, and may be used as exhibits during trial.  In all that time, Ironburg never did anything to give Valve a reason to think that the Steam Controller, or any prototype controller other than Chell, infringed the '525 patent.  Ironburg has admitted that the Chell prototype is not accused of infringement in this case.  Furthermore, claims 1 and 20 of the '525 patent—the only two claims of the '525 patent mentioned in Ms. Parks' letter—have been cancelled and are not asserted in this case.

Ultimately, the Steam Controller was the only controller Valve released commercially. Demand for the Steam Controller was not what Valve had hoped, causing Valve to cease production and eventually end all sales by December 2019.  Valve does not currently offer a video game controller product, and has no plans to develop one or to resume manufacturing and selling the Steam Controller.

## II.   LEGAL ISSUES

The jury in this case will be asked to decide whether Valve's manufacture and sale of its Steam Controller infringed certain claims of the '525 patent, all of which depend from now-cancelled claim 1. Valve contends that Ironburg cannot meet its burden to prove infringement for several reasons. The Steam Controller does not meet several of the limitations of claim 1, which are required elements of every asserted claim. Moreover, Ironburg is precluded from arguing that these missing elements are present by the doctrine of equivalents under one or more of the doctrines of prosecution history estoppel, ensnarement, and vitiation, and also because any such argument is untimely. To the extent Ironburg relies on a theory of induced infringement, as it appears to do for claims 3 and 4, it has not pled a claim for induced infringement and cannot present any evidence of directly infringing uses by any third party, which is a necessary prerequisite for inducement.

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 5

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

If the jury finds that Ironburg proved infringement, the jury would also make findings about willfulness and damages.

### A.  The Steam Controller Does Not Meet All the Claim Limitations

To show infringement, Ironburg must show by a preponderance of the evidence that "every element and limitation of the claim must be present in the [Steam Controller], literally or by an equivalent." *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357-58 (Fed. Cir. 2006); *see Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011). Ironburg cannot succeed in doing so.

#### 1.  There Is No Literal Infringement

For literal infringement, Ironburg must prove that the accused product—Valve's Steam Controller—meets each and every limitation of at least one asserted claim. *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1187 (Fed. Cir. 2009). Every asserted claim depends from and incorporates the limitations of now-cancelled claim 1. The Steam Controller does not satisfy several limitations of claim 1. First, it is not a "hand held controller for a game console," as recited in the preamble of claim 1. Second, the rear grip controls do not meet the limitations recited for the claimed back controls: (1) they are not "elongate members;" (2) they do not extend "substantially the full distance between the top edge and the bottom edge;" and (3) they are not "inherently resilient and flexible."

##### a.  The Steam Controller Does Not Satisfy the Preamble

The preamble of a patent claim is limiting in certain situations such as those present here. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." (internal quotation marks omitted)). For example, "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Id.* In defending the surviving claims of the

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 6

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

'525 patent before the PTAB and the Federal Circuit, Ironburg distinguished the prior art by affirmatively stating that the preamble of claim 1 is limiting. Ironburg went so far as to style a paper filed with the PTAB "Patent Owner's Submission Re: Preamble Is Limiting," stating "This submission is made in support of Patent Owner's position that the preamble of the challenged claims is limiting." (IPR2016-00948, Patent Owner's Submission Re: Preamble Is Limiting [Dkt. No. 331-4] at 1.) Again on appeal, Ironburg told the Federal Circuit that the preamble of claim 1— "A hand held controller for a game console"—"is limiting because, among other things, it provides antecedent basis, essential structure, and breathes life and meaning into the claim." (Appellant's Opening Brief – Corrected [Dkt. No. 331-5] at 31; *see id.* (citing *Catalina Marketing*).)

When the validity of its claims was challenged, Ironburg insisted the preamble was limiting in its efforts to preserve the validity of its claims. "[T]he doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain allowance [or preserve their validity] and in a different way against accused infringer.'" *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017); *see id.* at 1364 (construing claims consistent with patentee's narrowing arguments before the PTAB and affirming summary judgment of non-infringement). This Court should therefore construe the preamble of claim 1 to be limiting. Valve's Steam Controller is adapted for use with PCs, not with game consoles, as recited in the preamble of claim 1 and incorporated into every asserted claim. Thus, when the claims are interpreted consistently with Ironburg's own assertions about their scope, the Steam Controller does not infringe at least because it does not meet the limitation of the preamble.

Furthermore, the rear grip controls on the Steam Controller do not meet the claim limitations associated with the back controls. The rear grip controls do not include "elongate members" because the regions of the battery cover identified by Ironburg as the "elongate members" are not separate "members." The battery cover, including both alleged "elongate members," is a single, monolithic piece of plastic. The regions identified as "elongate members" by Ironburg's expert, Mr. Kitchen, are not even elongate. The width and length of each of these

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 7

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

regions are roughly equal. Even under Mr. Dezmelyk's most generous measurements, the region of the battery door designed to receive a user's finger is 1.66 times longer than it is wide. This is not what a person of ordinary skill in the art would consider to be "elongate." By comparison, the back controls depicted in Figure 2 of the '525 patent are approximately 5 times longer than they are wide. Thus, this first limitation is not met.

The alleged "elongate members" of the rear grip controls also do not "extend[] substantially the full distance between the top edge and the bottom edge [of the outer case of the controller]." This Court adopted the PTAB's interpretation that this phrase means "largely but not necessarily the entire distance between the top and bottom edges" of the controller. (*See* Dkt. # 153 at 1; Dkt. # 189 at 8-9.) Mr. Dezmelyk measured how far the rear grip controls "extend" along an axis through the mid-point of the control. He also measured the "full distance between the top edge and the bottom edge" of the outer case of the Steam Controller along the same axis. The rear grip controls extend only 55% of "the full distance between the top edge and the bottom edge." This is barely more than half; a person of ordinary skill in the art would not consider that to be "largely but not necessarily the entire distance between the top and bottom edges" of the controller.

Furthermore, the alleged "elongate members" are not "inherently resilient and flexible." This Court adopted the PTAB's construction of this phrase, interpreting it to mean that each elongate member "may be bent or flexed by a load, such as that from a user's finger, and will then return to the unloaded position." (*See* Dkt. # 153 at 1.) As the PTAB explained, the elongate member itself, and not some other component, must be able to be bent or flexed. *See Valve Corp. v. Ironburg Inventions Ltd.*, IPR2016-00948, 2018 WL 575333, at *2 (PTAB Jan. 26, 2018) (explaining that "'flexible' . . . is a characteristic of the elongate member"). Ironburg's expert defines each alleged "elongate member" to include a very thin area which he claims meets this requirement. But the reality is that the battery door only flexes or bends in the central region surrounding the attachment points where it connects to the back of the controller. This is the result of a deliberate design choice by the Valve team. The rear grip controls of the Steam Controller,

which Ironburg has identified as the alleged "elongate members," have ribs on the underside to ensure that they do NOT bend or flex.  Accordingly, the Steam Controller does not satisfy this limitation and, for at least that reason also, it does not infringe.

### 2.  Ironburg Is Precluded from Relying on Equivalents

To show infringement under the doctrine of equivalents, Ironburg must show that each claim element not literally present in the Steam Controller is present by way of an equivalent structure. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("[T]he doctrine of equivalents must be applied to individual elements of the claim."); *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012) ("The essential inquiry is whether 'the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention.'" (citing *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)). To show that a structure in the accused product is equivalent to a missing claim element, Ironburg must show either that there are no substantial differences between the accused structure and the claim element or that the accused structure and claim element perform substantially the same function in substantially the same way with substantially the same result. *See, e.g., Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) ("To succeed on a doctrine of equivalents theory, the patentee must demonstrate equivalence under one of these two tests."). This analysis is conducted from the perspective of a person of ordinary skill in the art at the time of the infringement. *See Warner-Jenkinson*, 520 U.S. at 37.

The Local Patent Rules required Ironburg to disclose whether it would rely on the doctrine of equivalents in contentions that were due "[w]ithin 15 days of the Scheduling Conference" and to show good cause for any later amendment. Local Rules W.D. Wash. LPR 120(e), 124. Ironburg's infringement contentions did not include any assertion that Valve infringed under the doctrine of equivalents. Despite failing to timely assert a DOE contention, Ironburg's expert, Mr. Kitchen, disclosed a cursory and conclusory opinion that he "did not find any differences, substantial or otherwise, between the claim elements [of every asserted claim] and the

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

corresponding features of the Steam Controller." (Kitchen Expert Report [Dkt. # 256-1] ¶ 30.) He also opined, again in conclusory fashion, that the fact "the Valve members are joined by additional plastic" did not avoid infringement under the doctrine of equivalents. (*Id.* ¶ 103.) Mr. Kitchen's cursory and general statements are untimely, and Ironburg's failure to disclose its reliance on the doctrine of equivalents in its contentions bars it from raising such a theory at trial. *See MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, No. C 01-4925 SBA, 2004 WL 5363616, at *5-6 (N.D. Cal. Mar. 2, 2004) (precluding patentee from relying on the doctrine of equivalents where the theory was omitted from infringement contentions but disclosed in an expert report), *aff'd*, 420 F.3d 1369 (Fed. Cir. 2005).

Even if this expert disclosure could cure Ironburg's failure to timely assert a DOE infringement contention, Mr. Kitchen's conclusory opinions do not create a triable issue of fact for the jury. As a matter of law, Ironburg cannot prove infringement by equivalents without "provid[ing] particularized testimony and linking argument on a limitation-by-limitation basis" from a "qualified expert" or other "person of ordinary skill in the art." *AquaTex Indus. v. Techniche Sols.*, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007). Rather than offering "particularized testimony" about the differences between the claims and the accused structure, Mr. Kitchen refused even to acknowledge that differences existed. (*See* Kitchen Expert Report [Dkt. # 256-1] ¶ 30.)

With respect to his conclusory assertion in paragraph 103, Mr. Kitchen's purported *function-way-result* analysis consists of a single sentence, which has nothing to do with the fact that "the Valve members are joined by additional plastic." (*Id.* ¶ 30.) Mr. Kitchen claims that, in Valve's controller, "[t]he middle finger of the user is positioned to flex and activate the back controls in the same manner as described in the patent, and the controls return to the unloaded position as described above." (*Id.*) This single sentence is not linked to any particular missing limitation of the claimed "back controls," and even if it was, it could not support a jury finding of infringement.

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 10

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

Mr. Kitchen "cannot merely point to other claim limitations to satisfy the doctrine of equivalents," *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015), yet this is what he does. Positioning the control to be activated by the user's middle finger is claimed in Claim 6, which recites "wherein each of the back controls is positioned to be operated by a middle finger of a user." ('525 patent [Dkt. # 44-1] at 5:1-3.) And the characteristic of "the controls return[ing] to the unloaded position" refers to the "inherently resilient" limitation of the claim. (*See, e.g., id.* at 3:34-35 (defining "inherently resilient" to mean "return[ing] to an unbiased position when not under load").) Asserting that *other* claim limitations are present cannot meet Ironburg's burden of proving equivalence between the missing limitations and something in the accused product because doing so effectively reads the missing limitations out of the claims. *See Advanced Steel Recovery*, 808 F.3d at 1320.

Furthermore, application of the doctrine of equivalents is barred in this case by at least two legal doctrines, prosecution history estoppel and ensnarement. *See, e.g., Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003) ("Prosecution history estoppel serves to limit the doctrine of equivalents."); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009) ("[E]nsnarement, like prosecution history estoppel, is a legal limitation on the doctrine of equivalents."). Each of these doctrines precludes Ironburg from relying on the doctrine of equivalents to show that missing claim limitations are present by equivalents.

### a.     <u>Prosecution History Estoppel</u>

"Prosecution history estoppel serves to limit the doctrine of equivalents by denying equivalents to a claim limitation whose scope was narrowed during prosecution for reasons related to patentability." *Pioneer Magnetics*, 330 F.3d at 1356; *see Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 738 (2002) ("By amending the application, the inventor is deemed to concede that the patent does not extend as far as the original claim."). "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 11

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

between the original claim and the amended claim." *Festo*, 535 U.S. at 740. Ironburg has the burden of rebutting this presumption by showing either that the amendment was not related to patentability or that the particular structure alleged to be equivalent should be excluded from the scope of the estoppel. *See Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1182-85 (Fed. Cir. 2009) (holding the patentee did not rebut the "presumption of surrender," generally, or the presumption as it applied to the particular equivalent). "[T]he presumption of prosecution history estoppel attaches when a patentee cancels an independent claim and rewrites a dependent claim in independent form for reasons related to patentability, even if the amendment alone does not succeed in placing the claim in condition for allowance." *Id.* at 1183.

While the application that led to the '525 patent was pending and in response to the examiner's rejection of all pending claims, the applicant amended then-pending claim 1, adding, in part, the limitation "wherein the back control is an elongate member that extends between the top edge and the bottom edge and is inherently resilient and flexible." (Decl. of Mark Schafer, Ex. 1, Oct. 29, 2012 Response to Office Action, at 2.) The applicant distinguished the prior art based on this limitation, which was taken from pre-amendment claim 5. (*See id.* at 8 ("Ogata does not disclose that the thrusting actuators (19a, 19b, 20a, 20b) are 'inherently resilient and flexible.'").) The examiner again rejected the claims, and the applicant further amended claim 1 to recite two back controls, "<u>each back control including</u> an elongate member that extends <u>substantially the full distance</u> between the top edge and the bottom edge and is inherently resilient and flexible." (Decl. of Mark Schafer, Ex. 2, August 5, 2013 Response to Office Action, at VALVEIB_PA_0007610.) The applicant argued that this amendment rendered "the rejections . . . moot." (*Id.* at VALVEIB_PA_0007610, -7614.)

Each of these amendments was made to overcome a prior art rejection, so Ironburg cannot rebut the presumption of surrender. The fact that the first amendment incorporated a dependent claim limitation into an independent claim also does not rebut the presumption. *See Felix*, 562 F.3d at 1183. Similarly, the fact that the "inherently resilient and flexible" limitation came from a

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

dependent claim that was, itself, rejected does not rebut the presumption that the amendment was for reasons related to patentability. It is the applicant's response, not the examiner's rejection, that matters, *see id.*, at 1182-83, and the applicant was clear in its assertion that the "inherently resilient and flexible" limitation was missing from the cited prior art. (*See* Decl. of Mark Schafer, Ex. 1, Oct. 29, 2012 Response to Office Action, at 8.) Accordingly, Ironburg cannot assert the doctrine of equivalents for the requirements that the back controls include "an elongate member," that the elongate member "extends substantially the full distance between the top edge and the bottom edge," or that it be "inherently resilient and flexible."

b.   **Ensnarement**

"Ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009). To test whether a claim ensnares the prior art, "[a] hypothetical claim may be constructed to literally cover the accused device." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *see Depuy Spine*, 567 F.3d at 1324 (calling the "hypothetical claim" approach a "helpful first step in an ensnarement analysis"). If the hypothetical claim would be anticipated by or obvious over the prior art, "then the patentee has overreached, and the accused device is noninfringing as a matter of law." *Interactive Pictures*, 274 F.3d at 1380.

Valve has identified prior art that would be ensnared if Ironburg asserted the doctrine of equivalence. Since Valve has met this initial threshold, "the burden of proving patentability of the hypothetical claim [now] rests with [Ironburg]." *Id.* As discussed above, Valve's Steam Controller does not have back controls that include "an elongate member that extends substantially the full distance between the top edge and the bottom edge and is inherently resilient and flexible," as recited in claim 1 and required by every asserted claim. This missing limitation could not be replaced with a hypothetical one covering the back grip controls of Valve's Steam Controller that does not also ensnare the prior art. As explained by Valve's expert, Mr. Robert Dezmelyk, "Ironburg could not construct a hypothetical claim limitation that is supported by the specification

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 13

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

1   and literally meets the shape requirements of the back grip controls of the Steam Controller."

2   (Dezmelyk Non-infringement Expert Report [Dkt. # 256-7] ¶ 145.) Mr. Dezmelyk considered a

3   range of prior art, including all the art cited in his invalidity report, but he also specifically

4   identified "U.S. Patent No. 5,989,123 ('Tosaki'), the Sega Arcade Racer controller, and/or

5   Jimakos." (*See id.*) Valve has therefore met its burden of coming forward with prior art that would

6   be ensnared by a hypothetical claim that literally reads on the accused device. Ironburg has never

7   confronted this evidence and cannot overcome the ensnarement hurdle to its assertion of the

8   doctrine of equivalents.

9         **B.**    <u>**Ironburg Cannot Show Induced Infringement of Claims 3 & 4**</u>

10         Ironburg's Complaint does not assert a claim for indirect infringement, whether by

11   inducement or contributory infringement. Despite never pleading such a claim, Ironburg appears

12   to contend that Valve induced its customers to infringe claims 3 and 4 by instructing those

13   customers how to customize the retail Steam Controller, programming the function that would be

14   performed by the back controls. Claim 3 recites "wherein at least one of the back controls replicates

15   the function of one or more of the top edge control and the front control," and claim 4 recites

16   "wherein at least one of the back controls has functions in addition to the top edge control and the

17   front control." Even if Ironburg had timely alleged indirect infringement of these claims, there is

18   no evidence that Valve induced any third party to directly infringe them, which is a necessary

19   element of any indirect infringement claim.

20         In its Complaint, Ironburg alleged that "[g]aming controller products made, used and sold

21   <u>by the defendant</u>, including Defendant's Steam Controller, infringe the '525 patent." (2nd Am.

22   Complaint [Dkt. # 44] ¶ 21 (underline added).) Ironburg did not allege that Valve's providing

23   instructions to its customers indirectly infringed or that the customers' use infringed. Ironburg

24   never alleged that Valve indirectly infringed, at all. Moreover, the Complaint is devoid of any

25   factual allegations to support a claim for indirect infringement. Ironburg chose not to put

26   inducement at issue in this case, and it cannot change course on the eve of trial.

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 14

Even if Ironburg had asserted a claim for induced infringement, proving inducement requires showing that Valve took affirmative steps to encourage direct infringement by third parties; that Valve, knowing of the '525 patent, intended to cause that infringement; and that Valve's conduct actually resulted in direct infringement. *See Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 643-44 (Fed. Cir. 2017) (describing the requirements of "affirmative steps" and intent as "purposeful-causation"); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement."). There is no evidence that Valve intended its customers to infringe claims 3 and 4 of the '525 patent, nor is there any evidence that any Valve customers programmed the back controls on their Steam Controllers in a way that would have infringed claims 3 and 4.

## C.   The Facts Cannot Support a Finding of Willfulness or Enhanced Damages

Section 284 grants courts discretion to enhance damages in cases of "willful or bad-faith infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1930 (2016). Ironburg has the burden to prove willfulness if it wishes to seek enhanced damages, *see id.* at 1934, but enhanced damages do not necessarily follow a willfulness finding. *Id.* at 1933. Even if a jury found willfulness, Ironburg would still need to convince this Court that Valve's conduct had been particularly egregious or worthy of punishment. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020).

As a matter of law, the facts in this case are insufficient to support a finding of willfulness. Mere pre-suit knowledge of the '525 patent, without more, is not enough for willfulness. *See Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309-10 (Fed. Cir. 2019) (holding JMOL of no willfulness was required for conduct occurring before defendant knew of the patent and could even be justified for later conduct). Instead, Ironburg needs to prove "that [Valve] acted despite a risk of infringement that was either known or so obvious that it should have been known to [Valve]." *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (internal quotation marks omitted) (citing *Halo*, 136 S. Ct.

at 1930), cited material reinstated on remand, 913 F.3d 1067, 1075 (Fed. Cir. 2019). Whether Valve knew about a risk of infringement must be determined based on Valve's subjective state of mind at the time of the accused conduct. *See Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Gp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018). An accused infringer's reliance on advice of counsel can be evidence of a subjective belief that a patent is not infringed or is invalid, but "[t]he failure . . . to obtain the advice of counsel . . ., or the failure . . . to present such advice to the court or jury, <u>may not be used to prove</u> that the accused infringer willfully infringed the patent." 35 U.S.C. § 298 (underline added).

At most, Ironburg's evidence shows that Valve knew, after the fact, that the abandoned Chell prototype controller allegedly infringed claims 1 and 20, but Chell is not accused of infringement and claims 1 and 20 have since been cancelled. There is no evidence to suggest that Valve knew the Steam Controller, with substantially different back controls than Chell, posed any risk of infringing the claims actually asserted in this case. To the contrary, the evidence shows that Valve reasonably believed the risk of infringement was limited to the already obsolete Chell prototype.

First, there is no evidence that Valve copied the '525 patent. It had already designed numerous prototype controllers before learning of the '525 patent and filed several applications for design and utility patents. Moreover, the Steam Controller team at Valve did not know about the '525 patent, even after Ironburg's letter raised Ironburg's concerns with the Chell prototype.

Second, despite having already abandoned the prototype that was the subject of Ironburg's cease and desist letter, Valve took the letter seriously. Valve's counsel, Mr. Quackenbush, engaged with Ironburg—through its attorney and Mr. Ironmonger—on multiple occasions, assuring Ironburg that Valve was not going to market with the prototype controller Mr. Ironmonger had seen. Mr. Quackenbush also made it clear that Valve was open to further discussions about the '525 patent, if Ironburg thought they were warranted. Ironburg did not make any attempt to resume discussions until 20 months later, after starting this litigation.

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 16

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

1   Third, the evolution of other Valve prototype controllers after Chell played out publicly.

2 By the time it received Ironburg's letter, Valve had already exhibited the Dog prototype controller

3 at least twice. Within the following year, Valve continue to publicize prototype controllers and

4 then announced pre-sales of the Steam Controller. The pre-sale was advertised for months before

5 Valve's customers were allowed to place orders. All of this was done publicly and transparently.

6 Valve could reasonably conclude that Ironburg would send another letter if it had any concerns

7 about the later prototype controllers or the Steam Controller as they were publicized.

8   Ironburg's cease and desist letter demonstrates that it was actively policing its patent rights

9 and that it knew Valve was developing the Steam Controller. And Valve did not make any secret

10 of the ongoing design process. Indeed, such a public display of developmental prototypes is

11 anomalous in the industry. Thus, Ironburg had the ability and demonstrated its willingness to

12 determine whether Valve's controller designs risked infringing on the '525 patent claims.

13 Moreover, Valve left the door open for Ironburg to bring its concerns to Valve. Ironburg's silence

14 for nearly two years indicates it did not see a problem with Valve's prototype controllers at the

15 time, and Valve had no reason to think there was a risk of infringement if Ironburg did not think

16 there was.

17  **D.**  **Ironburg Bases Damages on Unreliable Evidence and Ignores Key Facts**

18   Ironburg relies on the "reasonable royalty" measure of damages provided for under 35

19 U.S.C. § 284 (*see* Serwin Expert Report [Dkt. # 254-1] ¶ 10), but Ironburg's theory rests on

20 unreliable evidence and ignores important factual considerations that undermine its case. A

21 reasonable royalty is one that compensates the patentee only for the value of the "incremental

22 benefit derived" from using the claimed invention. *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201,

23 1233 (Fed. Cir. 2014). Thus, "[w]hen a patent covers the infringing product as a whole, and the

24 claims recite both conventional elements and unconventional elements, the court must determine

25 how to account for the relative value of the patentee's invention in comparison to the value of the

26

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 17

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

conventional elements recited in the claim, standing alone." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2018).

One recognized approach for determining a reasonable royalty is the "hypothetical negotiation" method, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully and reasonably negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). When using this approach, "district courts regularly turn to" the fifteen factors listed in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), but when doing so, "courts must consider the facts of record when instructing the jury and should avoid rote reference to any particular damages formula." *Ericsson*, 773 F.3d at 1230, 1231. Instead, the jury should hear instructions listing only the relevant factors, and those factors may need to be adjusted based on the evidence presented at trial. *See id.* at 1230-31 (district court erred by instructing jury as to all 15 *Georgia-Pacific* factors without regard to their relevance or the evidence presented).

In this case, the relevant *Georgia-Pacific* factors will include royalties Ironburg has previously received (factor 1), the profitability and popularity of the product allegedly made under the patent (factor 8), the advantages—if any—to using the claimed invention (including in any commercial devices) over other alternatives that achieve "similar results" (factors 9 and 10), and the relative value contributed by other factors, including Valve's investment in marketing, manufacturing, and the design and development of features and improvements to the Steam Controller (factor 13). *See* 318 F. Supp. at 1120.

### 1.   Comparison to Other Licenses (Factor 1)

Ironburg principally relies on its October 2015 patent license agreement with Microsoft to establish a royalty for the '525 patent, but the Microsoft license is a portfolio license. Under the terms of that agreement, Ironburg licensed Microsoft to Ironburg's entire portfolio of "intellectual property, patents and innovations," not just the '525 patent. (*See* Decl. of Mark Schafer, Ex. 3, Press Release: Scuf Gaming Licenses Its Technology to Microsoft.) Ironburg's damages expert,

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 18

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

Dr. Serwin, must account for this fact because the "allegedly comparable [Microsoft] license[]. . . cover[s] more patents than are at issue in the action," as well as a license to other intellectual property owned by Ironburg and its sister company, Scuf. *Ericsson*, 773 F.3d at 1227. For this, Dr. Serwin relies on a litigation-inspired, internal buyout analysis from 2016 that was created at least eight months after the actual buyout agreement between Ironburg and one of its co-founders and lead inventor on the '525 patent, Simon Burgess.

Dr. Serwin is wrong to rely on the 2016 Burgess buyout analysis to show the value of the '525 patent relative to Ironburg's entire patent portfolio and other intellectual property assets licensed to Microsoft. First, Ironburg and Mr. Burgess entered into a buyout agreement in June 2015, but the internal buyout analysis was created several months *after* Ironburg filed the present lawsuit in December 2015. Ironburg therefore had a powerful motivation to allocate a disproportionate share of the buyout value to the '525 patent asserted in its pending lawsuit.

Dr. Serwin then compounds this error by assigning zero value to one category of patents for which Microsoft paid royalties and to the two other patents asserted against Valve in this case. As previously addressed in Valve's Motion to Exclude (Dkt. # 252), Dr. Serwin used the questionable Burgess buyout analysis to identify "technology buckets." Then, without any technical analysis to confirm that his "buckets" accounted for all the assets licensed to Microsoft, Dr. Serwin somehow assigned each patent in Ironburg's entire portfolio to one of these "technology buckets." He improperly allocated all the value of the licensed assets to just three of the buckets (*see* Dkt. # 252 at 5-6), and allocated all of the value for the largest technology bucket to the '525 patent, even though the other asserted patents in this case are in the same bucket. In other words, Ironburg's own expert asserts that two of the three patents-in-suit—the ones that remain stayed—are worthless. Thus, even if the Burgess buyout analysis were reliable evidence to show the distribution of value, the way Dr. Serwin uses it is irrational and unreliable.

Ironburg also proposes introducing its 2018 settlement agreement with Collective Minds Gaming Company Ltd. ("CMG"), the defendant in another case that was co-pending in federal

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 19

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

district court in the Northern District of Georgia. (*See* Plaintiff's Motion in Limine [Dkt. # 328] at 2-3.) Agreements resulting from litigation settlements are generally not considered reliable evidence of a reasonable royalty rate. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). While the Federal Circuit has found an exception when a settlement agreement is "the most reliable license in the record," *see id.* (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010)), Ironburg has not shown the CMG settlement fits within this exception. Indeed, Ironburg has not disclosed any expert opinion explaining how the circumstances of the CMG settlement agreement should inform the jury's assessment of the hypothetical negotiation. *See id.* ("[W]e cautioned the district court to consider the license in its proper context within the hypothetical negotiation framework." (citing *ResQNet*, 594 F.3d at 872)). Accordingly, any theories or expert opinions based on the CMG agreement would be unreliable and untimely, and the CMG agreement should not be presented to the jury.

### 2. Incremental Benefits Over Old Solutions (Factor 9)

In addition, Dr. Serwin fails to take into consideration the prior art modes of adding back controls to a video game controller for a game console, which is relevant to *Georgia-Pacific* factor 9. The art of video game controller design is a mature field, crowded with prior art. The asserted claims of the '525 patent represent a very narrow contribution to this field. Ironburg admitted on the face of the '525 patent that "[t]he front of the game controller" in the figures used to illustrate the invention "is the same as the conventional controller." ('525 patent [Dkt. # 44-1] at 3:14-16.) Moreover, the limitations of independent claim 1 were all known in the art in the configuration claimed. (*See, e.g.*, Final Written Decision, IPR2016-00948 [Dkt. # 262-11] at 28-33.)

Collateral estoppel resulting from the now-final judgment of the PTAB, affirmed by the Federal Circuit, precludes Ironburg from relitigating the fact that the limitations of claim 1 were known in the prior art. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147-48 (2015) (holding a final judgment from the Trademark Trial and Appeal Board estopped party from relitigating fact issue in later trademark infringement suit); *McCoy v. Foss Maritime Co.*, 442 F.

Supp. 2d 1103, 1106-07 (W.D. Wash. 2006) (applying fact findings from prior case against defendant-employer regarding OSHA violations and negligence). Consistent with this estoppel, the jury's role is "to account for the relative value of the patentee's invention," as recited in the asserted dependent claims, "in comparison to the value of the conventional elements recited in the claim," which include all the elements of claim 1. *AstraZeneca*, 782 F.3d at 1338 (underline added). The jury should be appropriately instructed to ensure that it performs this role and properly limits any damages award to the "incremental benefit derived" from using the claimed invention relative to the prior art. *Ericsson*, 773 F.3d at 1233 (underline added).

### 3.   Valve's Development & Marketing (Factors 8, 10 & 13)

Similarly relevant to the measure of a reasonable royalty, Valve's own independent development process generated prototypes illustrating alternatives to the retail Steam Controller design. For example, as illustrated by one of its prototypes, Valve could have adopted a design in which each back grip control was replaced by two square buttons. (*See, e.g.*, Dkt. # 331-11.) A square is not "elongate"; the width and length of a square are equal by definition. The availability of inexpensive non-infringing alternative designs, such as Valve's other prototype controllers, further demonstrates the low value of the "incremental benefit" from using the asserted claims (relevant to at least *Georgia-Pacific* factor 10).

Furthermore, the value of Valve's own contributions, which included a marketing campaign, numerous innovations captured in design and utility patents, substantial investment in manufacturing capabilities, and the power of Valve's brand in the PC gaming market, were considerable. And yet, despite all those factors in its favor, Valve's foray into retail gaming hardware (including its sales of the Steam Controller) was not a success. These facts are relevant to *Georgia-Pacific* factors 8 and 13, which support lowering the royalty rate assessed.

For all these reasons, if the jury were to reach the question of damages, Ironburg's evidence fails to support the award it seeks. Any assessment of damages consistent with the evidence and the law would be much lower.

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 21

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

227942\90003\108217757.v1

Dated this 28th day of February, 2020.

By: */s/ Patrick A. Lujin*
B. Trent Webb (pro hac vice)
Patrick A. Lujin (pro hac vice)
Mark D. Schafer (pro hac vice)
Lydia C. Raw (pro hac vice)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone:     816.474.6550
Facsimile:     816.421.5547
E-mail:        bwebb@shb.com
               plujin@shb.com
               mschafer@shb.com

By: */s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766
FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
Telephone:     206.624.3600
Facsimile:     206.389.1708
Email: gskok@foxrothschild.com

Tanya L. Chaney (pro hac vice)
SHOOK, HARDY & BACON L.L.P.
600 Travis Street, Suite 3400
Houston, Texas 77002
Telephone:     713.227.8008
Facsimile:     713.227.9508
E-mail:        tchaney@shb.com

Reynaldo C. Barceló
Joshua C. Harrison
BARCELO HARRISON & WALKER LLP
2901 West Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone:     949.340.9736
Facsimile:     949.258.5752
Email:         rey@bhiplaw.com
               josh@bhiplaw.com

Attorneys for Defendant
VALVE CORPORATION

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 22

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle,

Washington.  I am a U.S. citizen over the age of eighteen years and not a party to the within

cause.  On the date shown below, I caused to be served a true and correct copy of the foregoing

on counsel of record for all other parties to this action as indicated below:

<table>
<tr><td colspan="2" align="center"><strong><u>Service List</u></strong></td></tr>
<tr>
<td>

**Robert D. Becker**
Manatt, Phelps & Phillips LLP-CA
1841 Page Mill Road
Palo Alto, CA 94304
Ph: 650-812-1300
Email: rbecker@manatt.com

**Christopher L. Wanger**
MANATT, PHELPS & PHILLIPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Ph: 415-291-7410
Email: cwanger@manatt.com

**Stephen C Willey**
SAVITT BRUCE & WILLEY LLP
1425 Fourth Ave, Ste 800
Seattle, WA 98101-2272
206-749-0500
Fax: 206-749-0600
Email: swilley@sbwllp.com

*Attorneys for Plaintiff*

</td>
<td>

☐ Via US Mail
☐ Via Messenger
☒ Via CM/ECF / Email
☐ Via over-night delivery

</td>
</tr>
</table>

I declare under penalty of perjury under the laws of the State of Washington that the

foregoing is true and correct.

EXECUTED this 28th day of February, 2020, in Seattle, Washington.


Courtney R. Brooks

DEFENDANT VALVE'S TRIAL BRIEF –
(2:17-CV-01182-TSZ) - 23

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

227942\90003\108217757.v1