The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IRONBURG INVENTIONS LTD., | No. 2:17-cv-01182-TSZ |
| Plaintiff, | **PLAINTIFF'S TRIAL BRIEF** |
| v. | |
| VALVE CORPORATION, | |
| Defendant. | |

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

1  I.  **INTRODUCTION**

2  This is an action by Plaintiff, Ironburg Inventions Ltd. ("Ironburg"), to recover for the

3  willful infringement by Defendant, Valve Corporation ("Valve"), of Ironburg's U.S. Patent No.

4  8,641,525 ("the '525 Patent"). The '525 Patent covers a novel hand-held video game controller

5  with back controls invented by Ironburg. The invention addressed the need for a high

6  performance controller that enables gamers to perform complex in-game functions with higher

7  speed and efficiency. Standard controllers typically provide controls on the front and top of the

8  controller that are operable only by the gamer's thumb and index fingers. Ironburg developed

9  novel elongated controls located on the back of the controller that are operable with a gamer's

10  middle fingers, regardless of hand size, that enabled the performance of complex in-game

11  functions more speedily and efficiently. The '525 Patent protects that invention.

12  From its first notice of the '525 Patent in March 2014 and Ironburg's infringement claims,

13  Valve demonstrated disdain for the patent.  Rather than respect it, Valve recklessly attacked it

14  both in this Court and twice through the *inter partes* review process at the PTO. Valve's attacks

15  on the patent, however, were repeatedly rejected. And after each failed invalidation attempt,

16  Valve never reconsidered its infringement of the '525 Patent. Instead, Valve plowed ahead with

17  its infringement in total disregard of its effect on Ironburg's business.

18  By this trial, Ironburg seeks to recover the substantial damages Valve has inflicted on

19  Ironburg. Ironburg is entitled to a reasonable royalty on Valve's sales of more than 1.6 million

20  infringing Steam Controller products, which damages total nearly $5 million. Because Valve's

21  infringement was willful, Ironburg seeks enhanced damages under 35 U.S.C. § 284 plus

22  Ironburg's reasonable attorneys' fees and costs for a total judgment in excess of $15 million.

23  II.  **FACTUAL AND PROCEDURAL BACKGROUND**

24  A.  **The Parties.**

25  Ironburg is the patent holding entity of sister operating company Scuf Gaming ("Scuf").

26  Scuf sells high-performance customized gaming controllers that employ Ironburg's patented

27  invention. Ironburg's invention protected by the '525 Patent has had substantial commercial

28  success. Ironburg licenses the invention to several leading players in the video game market for

1  use in their controllers, including Microsoft Corporation and Scuf.

2      Valve is a video gaming company that develops and sells video games and operates an on-

3  line gaming platform known as "Steam."  Valve describes its "Steam" platform as the largest

4  digital distribution platform for gaming in the world; and Valve generates very significant annual

5  revenues from sales of its own and others' high margin video games.  Public sources report that

6  Valve's annual revenues substantially exceed one billion dollars.

7      Valve entered the controller market specifically as a means to generate additional or

8  "convoyed" sales of its highly profitable video games. Consistent with this strategy, Valve sold

9  the infringing Steam Controller bundled with its and its partners' video game products.  Valve

10  later determined that customers who purchased the Steam Controller typically purchased

11  additional video game products resulting in increased revenues to Valve on top of the Steam

12  Controller revenues themselves.

13      **B.    Valve's Infringing Product and Its Disregard for the '525 Patent.**

14      In 2014, Valve publicized its decision to enter the game controller market with a product

15  known as the "Steam Controller", a controller that would compete with Scuf's controllers.  Valve

16  expected to profit from a its controller directly through sales of the product and through additional

17  sales of highly profitable video games. Valve was to sell the controller both as a standalone

18  product and bundled with its video game products.

19      At the time the '525 Patent issued, Valve was still designing the "Steam Controller".

20  Valve initially publicized in 2014 a beta version and included pictures on its website that

21  demonstrated that the controller infringed at least claim 1 of the '525 Patent. In March 2014,

22  Ironburg notified Valve of the '525 Patent and demanded that it cease its infringement in

23  connection with the Steam Controller. Valve subsequently made changes to the Steam Controller

24  but none of those changes avoided infringement. Instead Valve brazenly copied additional

25  features from the '525 patent and made other changes to the released version of the Steam

26  Controller based on the feedback of users who, not surprisingly, wanted the benefits of Ironburg's

27  patented inventions. Valve has admitted that it made no attempt to design around the '525 Patent

28  even after being notified of its infringement. As a result, all copies of the Steam Controller that

PLAINTIFF'S TRIAL BRIEF - **3**
(No. 2:17-cv-01182-TSZ)

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

1    Valve sold from 2015 to the present infringe the '525 Patent.

2           After Valve ignored Ironburg's repeated demands to cease its infringement, Ironburg filed

3    this suit.  In response, Valve mounted a years-long campaign to invalidate the claims in the '525

4    Patent both in this Court and twice by *inter partes* proceedings ("IPR") before the Patent Trial

5    and Appeals Board ("PTAB"). Valve's efforts were unsuccessful. Both the PTAB and this Court

6    have rejected Valve's contentions that the '525 Patent is invalid.  This Court has further ruled,

7    based on the PTAB's decisions, that Valve is estopped to raise any of its invalidity defenses. As a

8    result, the sole issues to be tried in this action are whether the Steam Controller infringes the

9    asserted claims of the '525 Patent (claims 2, 4, 7, 9, 10, 11 and 18), whether Valve's infringement

10   was willful and the amount of damages to which Ironburg is entitled for such willful

11   infringement.

12   **III.    DISCUSSION**

13          **A.    The Steam Controller Infringes the '525 Patent**

14          In simple terms, the '525 Patent improves upon video game controllers by adding thin,

15   flexible, elongated controls to the back of the controller. In the asserted '525 Patent claims, the

16   controls are "inherently resilient and flexible" and extend "substantially the full distance" from

17   the top edge of the back of the controller to the bottom edge of the back of the controller to

18   enhance gameplay. Valve's Steam Controller incorporates all of the claimed limitations.

19          The infringement trial will naturally be focused on Claim 2 as Valve has no prior art

20   invalidity defenses to any of the claims and all of the other asserted claims depend from Claim 2.[1]

21   Claim 2, which depends from Claim 1, is set forth here with claim terms underlined:

22                  1. A hand held controller for a game console comprising:

23                  [a] an outer case comprising a front, a back, a top edge, and a bottom edge,
24          wherein the back of the controller is opposite the front of the controller and the top edge is
             opposite the bottom edge; and
25
                    [b] a front control located on the front of the controller;
26

27          _____

28   [1] Valve's Steam Controller infringes each of the asserted claims of the '525 Patent: Dependent Claims 2, 4, 7, 9, 10,
     11 and 18.

**MANATT, PHELPS & PHILLPS, LLP**
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

[c] wherein the controller is shaped to be held in the hand of a user such that the user's thumb is positioned to operate the front control; and

[d] a first back control and a second back control, each back control being located on the back of the controller and <u>each back control including an elongate member that extends substantially the full distance between the top edge and the bottom edge</u> and <u>is inherently resilient and flexible</u>.

[e] 2. The controller of claim 1, further having a <u>top edge control located on the top</u> edge of the controller and wherein the controller is shaped such that the user's index finger is positioned to operate the top edge control.

The accused Valve Steam controllers meet all of the limitations, including case elements (elements [a]-[c] and [e]) and the rear control items (element [d]) that are at the heart of the '525 Patent inventions.

The following images show the various rear controls on the accused Steam Controller. First, Valve's initial publicized prototype with two back controls is shown to the right of the controller depicted in the '525 Patent. As can be seen, the prototype has left and right back controls. These controls correspond to controls 11 in the patent Figure 2.  As also can be seen, the controls are comprised of elongate members that extend "substantially the full distance" from the top edge of the back of the controller to the bottom edge of the back of the controller as required by the claims of the '525 Patent. They are nearly identical to the controls shown in the preferred embodiment of the patent.



Figure 2



Next, the version of the Steam Controller that Valve released and offered for sale (the accused device at issue in this litigation) is shown to the right of the controller shown in the '525

PLAINTIFF'S TRIAL BRIEF - **5**
(No. 2:17-cv-01182-TSZ)

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

Patent.  As can be seen, the accused Steam Controller has two elongate members shaded in yellow for demonstrative purposes that extend "substantially the full distance" from the top edge of the back of the controller to the bottom edge of the back of the controller as required by the claims of the '525 Patent. Those elongate members are integrated into a thin, flexible plastic battery cover mounted in a recess on the back of the controller.

 

In the next image red vertical lines are added to the image of the Steam Controller to show a distance between the top and bottom edges of the back of the controller.  As can be plainly seen, the elongate members extend substantially the full distance between the top and bottom edges as required by the claims. Indeed, on the accused Steam Controller released by Valve after receiving notice of the patent, they were elongated further to extend beyond the bottom edge of the controller at the medial (middle) portion (shaded in blue here for demonstrative purposes) and also beyond (above) portions of the top edge (the top edge is also shaded in blue in various images). They are elongated more than the controls on the back of the controller in the preferred embodiment of the patent. There, the controls begin near the top edge of the controller and extend substantially down the back of the controller, but not beyond the bottom edge at the medial portion (10) of the controller.



These figures likewise show top edge controls located on the top edge of the controller as

**MANATT, PHELPS & PHILLPS, LLP**
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

called for by Claim 2. There can be no legitimate claim that the Steam Controller does not infringe the '525 Patent.

### C.     Ironburg is Entitled to Royalty Damages of Nearly $5 Million.

Under 35 U.S.C. § 284, Ironburg is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  Ironburg's damages expert, Kenneth Serwin, Ph.D., has opined that a reasonable royalty rate on sales of the infringing Steam Controller for the first two years of sales is between $2.68 and $3.75 per unit for stand-alone controller sales and between $2.45 and $3.43 per unit for bundled controller sales. For Steam Controller sales after the first two years, Dr. Serwin has opined that the reasonable royalty rate is between $2.39 and $3.35 per unit and between $2.05 and $2.87 per unit for stand-alone and bundled units respectively. Ironburg's controller expert, Garry Kitchen, will testify that based Ironburg's license of the '525 Patent to Microsoft and other factors, the higher of Dr. Serwin's royalty range should apply to Valve's Steam Controller sales. The foregoing per unit royalty will be applied to more than 1.6 million Steam Controller units sold by Valve through December 31, 2019 for total royalties owed of no less than $4.74 million.

### D.     Ironburg Is Entitled to Enhanced Damages for Valve's Willful Infringement and Egregious Conduct.

Ironburg is entitled to increased or enhanced damages under 35 U.S.C. § 284 because Valve's infringement has been willful and its conduct has been egregious. Ironburg first wrote to Valve and provided notice of the '525 Patent and Ironburg's infringement claims on March 7, 2014. Valve's General Counsel, Karl Quackenbush, admitted that he received Ironburg's letter in March 2014 and became aware of the '525 Patent at that time. Shortly after receiving the letter, Mr. Quackenbush had three calls with Ironburg and its counsel between March and April 2014, including an April 2014 call with Ironburg's principal, Duncan Ironmonger. In that April 2014 call, Mr. Ironmonger notified Mr. Quackenbush that Valve's Steam Controller product would harm the controller business of Ironburg's parent, Scuf Gaming. Mr. Quackenbush testified as follows regarding his April 2014 call with Mr. Ironmonger:

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

Q.      And what do you recall Duncan [Ironmonger] to be saying?

A.      He was pretty exercised.  He was really emotional.  He said something about "Your controller is going to really hurt my business."  And I responded that we had – it was sort of an apples and oranges thing or different platforms, different customers.   He said something about patents being the crown jewels of his company, or words to that effect. And I expressed my viewpoint about that.

Q.      What was the viewpoint you expressed?

A.      I said "I don't think patents are any operating company's crown jewels." I think I said "If you have good products and good customers that's your crown jewels," or words to that effect.

During the March 2014 timeframe, Messrs. Ironburg and Quackenbush also discussed Valve licensing Ironburg's patented technology.  Mr. Quackenbush made it clear that Valve was not prepared to pay Ironburg anything more than a "modest one-time payment," described as "an under six figure amount."  At the same time, Valve never provided a substantive response to the March 2014 letter.

Despite Valve's knowledge of the '525 Patent in 2014 and Ironburg's infringement claims, Mr. Quackenbush admitted that Valve made no changes to the Steam Controller in response to the March 7, 2014 letter. Mr. Quackenbush also confirmed that Valve made no attempt to design around the '525 Patent in connection with the Steam Controller Product that it released. Although Valve contends that it consulted with counsel regarding Ironburg's pre-suit claims, Valve will not offer at trial any opinion of counsel to defend against Ironburg's claims of willful infringement.

Ironburg sent Valve a second cease and desist letter on December 3, 2015, after the first sale of the Steam Controller. Mr. Quackenbush admitted that Valve made no changes to the Steam Controller product in response to that letter. Mr. Quackenbush also admitted that he received Ironburg's December 2015 letter and had a follow up call with Ironburg's lawyer and Ironmonger. In that call, Mr. Quackenbush made clear his view that he had little respect for Ironburg's patents. Mr. Quackenbush warned Ironmonger "When you start a patent case, really any intellectual property case like this, you put your – if you're saying this is important IP to you, you're putting it at risk and it might end up being smaller than when you started."

Consistent with Mr. Quackenbush's threat, Valve's strategy from 2014 forward has been

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

1   to deny the validity of the '525 Patent and to attack it by any means possible, including through

2   the IPR process at the PTAB. But even the PTAB's Final Decision finding the claims asserted in

3   this action to be patentable failed to deter Valve's willful infringement. Rather than acknowledge

4   the validity of the patent, Valve was undeterred and plowed ahead with its sales of its infringing

5   product. Mr. Quackenbush confirmed that he was aware of the PTAB's decisions and as General

6   Counsel declined to reassess Valve's continued sales of the Steam Controller in light of the

7   PTAB's final decisions. Valve's strategy has now backfired.

8       Valve ultimately decided to stop manufacturing the Steam Controller product but even

9   that decision had nothing to do with its ongoing infringement of the '525 Patent. Mr.

10  Quackenbush admitted that Ironburg's infringement claims had no bearing on Valve's decision to

11  stop manufacturing the Steam Controller. Mr. Quackenbush further admitted that Valve never

12  considered stopping sales of the Steam Controller product in response to Ironburg's infringement

13  claims. Instead, Valve continued to sell off its inventory of Steam Controllers into December

14  2019.

15      In short, Valve had notice of the '525 Patent in March 2014 and was aware of Ironburg's

16  contentions that Valve's controller product infringed the '525 Patent. Nevertheless, with full

17  knowledge of the Patents-in-Suit, Valve copied many of the inventions disclosed in the '525

18  patent and deliberately released and sold its infringing controller product incorporating those

19  patented inventions without securing a license in 2014 or at any time thereafter.  Valve admits

20  that it made no changes to the Steam Controller in response to Ironburg's concerns and made zero

21  attempt to design around the '525 Patent. The fact that Valve made changes between the original

22  and released version of the Steam Controller but failed to design around the claimed inventions

23  only serves to highlight that Valve's infringement was deliberate. *See Milwaukee Electric Tool*

24  *Corp. v. SnapOn Inc.*, 288 F. Supp. 3d 872, 887 (E.D. Wis. 2017) (Defendant "declined to take a

25  license and made no changes to its product offerings to accommodate the possibility of

26  infringement" but instead "carried on years of lucrative infringing sales after failing to respond to

27  the ... licensing letter with a minimally adequate analysis of whether a license would be

28  necessary.")

PLAINTIFF'S TRIAL BRIEF - **9**
(No. 2:17-cv-01182-TSZ)

1    Valve also never provided a substantive response to Ironburg's March 2014 letter which is

2    further evidence of willfulness.  *See Golden Blount v. Robert H. Peterson Co.*, 438 F.3d 1354,

3    1370 (Fed. Cir. 2006) (Defendant "demonstrated a cavalier attitude toward Golden Blount's

4    patent rights from the facts that Peterson did not respond substantively to Golden Blount's notice

5    letters"); *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 198 F.Supp.3d 1343, 1352

6    (S.D. Fla. 2016), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017) ("[D]efendant had been selling potentially

7    infringing products across its entire product line for half a decade"; defendant "did not voluntarily

8    cease making or selling the infringing products at any point or take steps to implement a non-

9    infringing alternative"; and instead "resorted to hoping that [patentee] didn't care about these

10   patents anymore."). In short, Valve "acted despite a risk of infringement that was either known or

11   so obvious that it should have been known to the accused infringer." *See American Technical*

12   *Ceramics*, 2018 WL 1525686, *14 ("Viewing this evidence in the light most favorable to

13   plaintiffs [e.g., defendant's pre-suit knowledge of the patent] and drawing all inferences in their

14   favor, the court cannot conclude at the summary judgment stage that ... defendant did not act with

15   sufficient culpability to warrant enhanced damages under 35 U.S.C. § 284.")

16   Because Valve's infringement was willful, Ironburg is entitled under 35 U.S.C. 284 to an

17   amount up to three times the amount of the reasonable royalty damages.

18   **D.     Ironburg Is Entitled to Its Attorneys' Fees in This Exceptional Case.**

19   Under 35 U.S.C. Section 285, the court may award reasonable attorneys' fees to the

20   prevailing party in exceptional cases.  An "exceptional case" is simply one that "stands out from

21   others with respect to the substantive strength of a party's litigating position (considering both the

22   governing law and the facts of the case) or the unreasonable manner in which the case was

23   litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). A district

24   court has broad discretion in determining exceptionality, and such determinations are made on a

25   case-by-case basis, considering the totality of circumstances.

26   Factors considered in the "exceptional case" analysis include frivolousness, motivation,

27   objective unreasonableness with respect to the factual and legal components of the case, and the

28   need for compensation and deterrence. A party's unreasonable conduct, which may not be

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

1   independently sanctionable, may still create an exceptional case if the movant establishes that the

2   nonmovant subjectively acted in bad faith or pursued exceptionally meritless claims. The court

3   may find a case to be exceptional even in the absence of bad faith.  An award of attorneys' fees

4   under Section 285 is often appropriate where the jury has found willful infringement.

5       Here, for many of the same reasons, that Ironburg is entitled to a finding of willful

6   infringement, Ironburg also is entitled to an award of attorneys' fees.  For years, Valve has

7   pursued meritless challenges to the validity of the '525 Patent.  Even after the PTAB and Federal

8   Circuit rejected those challenges, Valve continued its infringing sales of the Steam Controller

9   product. Because this is an exceptional case, Ironburg should be entitled to an award of fees in

10  addition to the damages above.

11  DATED:  February 28, 2020

12                                          **MANATT, PHELPS & PHILLIPS, LLP**

13                                          By:   */s/ Robert D. Becker*
14                                              Robert D. Becker, *pro hac vice*
                                                Christopher L. Wanger, *pro hac vice*
15                                              One Embarcadero Center, 30th Floor
                                                San Francisco, CA  94111
16                                              Tel: (415) 291-7617; Fax (415) 291-7474
                                                Email: rbecker@manatt.com
17                                              Email: cwanger@manatt.com

18                                          **SAVITT BRUCE & WILLEY LLP**
19                                              Stephen C. Willey, WSBA #24499
                                                1425 Fourth Avenue, Suite 800
20                                              Seattle, WA  98101-2272
                                                Tel: (206) 749-0500; Fax (206) 749-0600
21                                              Email: swilley@sbwllp.com

22                                          *Attorneys for Ironburg Inventions Ltd.*

23

24

25

26

27

28

PLAINTIFF'S TRIAL BRIEF - **11**
(No. 2:17-cv-01182-TSZ)

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on February 28, 2020, I served the foregoing with the Clerk of Court

4   using the CM/ECF system which will automatically send email notification of such filing to the

5   attorneys of record.

6                                   */s/ Robert D. Becker*
                                    Robert D. Becker
7   325817519.1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S TRIAL BRIEF - **12**
(No. 2:17-cv-01182-TSZ)

MANATT, PHELPS & PHILLPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
(415) 291-7400