The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IRONBURG INVENTIONS LTD., <br><br> Plaintiff, <br><br> v. <br><br> VALVE CORPORATION, <br><br> Defendant. | Case No. 2:17-cv-01182-TSZ <br><br> **PLAINTIFF IRONBURG INVENTIONS LTD.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. §285 AND PREJUDGMENT INTEREST PURSUANT TO 35 U.S.C. §284** <br><br> NOTE ON MOTION CALENDAR: August 27, 2021 <br><br> ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. LEGAL STANDARD ....................................................................................................... 3

III. IRONBURG IS ENTITLED TO ITS REASONABLE ATTORNEYS' FEES ................. 3

    A. Ironburg Is The Prevailing Party ............................................................................... 3

    B. The Willfulness Verdict Is Compelling Evidence Of An Exceptional Case .......... 4

    C. Ironburg Also Won Several "Second Front" IPR Proceedings Filed By Valve ................................................................................................................... 4

    D. Valve Proceeded To Trial Despite Being Precluded From Contesting Validity .................................................................................................................. 5

    E. Valve Offered No Testimony That It Subjectively Believed It Did Not Infringe ................................................................................................................... 6

    F. Valve Copied The Entire Controller Described And Claimed By Ironburg ........... 7

    G. Valve Engaged In Excessive Litigation And Litigation Misconduct ...................... 7

    H. Valve Never Reconsidered Its Behavior And Showed Contempt For Patents ................................................................................................................... 9

    I. Valve Was Motivated To Harm Ironburg And Its Close Affiliate Scuf ............... 10

    J. A Fee Award Is Necessary To Advance Compensation And Deterrence ............ 11

IV. IRONBURG IS ENTITLED TO PREJUDGMENT INTEREST .................................... 12

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page

### CASES

*Beckson Marine, Inc. v. NFM, Inc.*,
  2007 WL 951706 (W.D. Wash. March 27, 2007) .................................................. 12

*Cybor Corp. v. FAS Techs, Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998) .............................................................................. 3

*Deep Sky Software, Inc. v. Southwest Airlines Co.*,
  2015 WL 10844231 (S.D. Cal. August 19, 2015) .................................................. 5

*General Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983) ............................................................................................. 12

*Georgetown Rail Equipment Co. v. Holland L.P.*,
  2016 WL 3346084 (E.D. Tex. June 16, 2016) ....................................................... 4

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004) .............................................................................. 4

*Jepson, Inc. v. Makits USA, Inc.*,
  1994 WL 543226 (C.D. Cal. May 27, 1994) ......................................................... 6

*MyHealth, Inc. v. ALR Technologies, Inc.*,
  2017 WL 6512221 (E.D. Tex. December 19, 2017) .............................................. 5

*nCUBE Corp. v. SeaChange International, Inc.*,
  313 F. Supp. 2d 361 (D. Del. 2004) ....................................................................... 6

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ............................................................................................... 3

*PPG Industries, Inc. v. Celanese Polymer Specialties Co.*,
  40 F.2d 1565 (Fed. Cir. 1988) ................................................................................ 5

*Raniere v. Microsoft Corp.*,
  887 F.3d 1298 (Fed. Cir. 2018) .............................................................................. 4

*SC Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
  781 F.2d 198 (Fed. Cir. 1986) ................................................................................ 4

*Shun v. Intel Corp.*,
  629 F.3d 1360 (Fed. Cir. 2011) .............................................................................. 4

*Spectralytics, Inc. v. Cordis Corp.*,
  649 F.3d 1336 (Fed. Cir. 2011) .............................................................................. 4

*SSL Services, LLC v. Citrix Systems, Inc.*,
  769 F.3d 1073 (Fed. Cir. 2014) .............................................................................. 4

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
  369 F. Supp. 3d. 704 (E.D. Tex. 2019) .................................................................. 3

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
  939 F.2d 1540 (Fed. Cir. 1991) ............................................................................ 12

# TABLE OF AUTHORITIES
(Continued)

**Page**

### STATUTES

35 U.S.C. § 282 ................................................................................................................5

35 U.S.C. § 284 ........................................................................................................12, 13

35 U.S.C. § 285 ....................................................................................................1, 3, 13

35 U.S.C. § 315(e)(1) ........................................................................................................5

35 U.S.C. § 315(e)(2) .....................................................................................................5, 6

### RULES

Fed.R.Civ.P. 54(d)(2)(C) ..................................................................................................1

Ironburg's Motion for Attorneys' Fees and Prejudgment Interest   -iii-
(Case No. 2:17-cv-01182-TSZ)

I.      INTRODUCTION

Section 285 authorizes the Court "in exceptional cases" to award "reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.[1] This case qualifies as "exceptional" for at least two independent reasons: (1) Valve's "no justification" willful infringement of multiple claims of the '525 patent, standing alone, is, without doubt, sufficient to justify award of increased damages and attorneys' fees; and (2) Valve's litigation tactics, calculated without due regard to merit to delay the ultimate payment of long overdue damages and drown Ironburg in overwhelming litigation expenses at every possible juncture, justifies awarding reasonable attorneys' fees.

Valve admitted that this was a straightforward case that merely required a comparison of plaintiff Ironburg's U.S. Patent No. 8,641,525 ("the '525 patent") and Valve's Steam Controller. (Dkt. 458, pp. 2-3). A lay jury completed that analysis in a matter of hours. Yet, Valve ignored the obvious and inevitable conclusion that its controller infringed the '525 patent and engaged in an almost six-year "scorched earth" battle, during which it litigated virtually every issue possible, including invalidity even after failing to demonstrate invalidity at the USPTO under lesser burdens of proof and being statutorily precluded from contesting the validity of any of the claims asserted at trial as a result of the loss at the USPTO. Indeed, Ironburg prevailed at every substantive and dispositive phase of motion practice and still has two additional claims outstanding for infringement of the two patents in suit for which there is a stay. As to those patents, Valve also failed to prevail at the USPTO, and as with the '525 patent, has not provided an opinion of counsel to justify its actions. This was never a close case. It clearly stands out.

But there is much more. After failing to conduct a reasonable investigation into the merits and most likely receiving advice that Ironburg would be able to establish infringement, Valve refused to stop the sale of its Steam Controller. Instead it shifted from the rear button

---

[1] Ironburg is entitled to reasonable attorneys' fees given the July 19, 2021 Partial Judgment. (Dkt. 464). Those fees total $6,514,149.39: (1) $5,228,050.24 for this action; and (2) $1,286,099.15 for the two IPR's filed by Valve against the '525 patent (and the associated consolidated appeals). (Becker Decl., ¶¶ 9-14) (Willey Decl. ¶¶2-5)). Ironburg is further entitled to fees for this motion (estimated at $50,000-75,000). For the efficiency of the Court and the parties (given the large quantity of confidential material to be filed under seal), the underlying granular detail supporting the amount of fees (*e.g.*, billing descriptions) and additional support for the reasonableness of those fees will be submitted upon the Court's determination of Ironburg's entitlement in the first instance. *See* Fed.R.Civ.P. 54(d)(2)(C). Ironburg will provide that support earlier if requested by this Court.

configuration of a prototype on display at a trade show to a complete copy of the *entire controller* described and claimed in the '525 patent, including for example the dependent claims describing thin controls integral with the outer case of the controller (*see* claims 9-11, 18); sold the controllers at a loss (*e.g.*, costs always exceeded revenue), dumping more than 1.6 million low cost controllers into the market; and filed an *inter partes* review ("IPR") petition with the U.S. Patent Trial and Appeal Board ("PTAB") (*i.e.*, opening an expensive "second front"). When it failed to invalidate the infringed claims at the PTAB, Valve brazenly pursued additional IPR petitions against the patents-in-suit. Those additional proceedings were summarily terminated because Valve's original petitions estopped it from asserting invalidity claims which were or could have been brought in the original petitions. (Dkt. 192-4). Valve also proceeded to appeal the PTAB decisions, and that appeal was summarily denied under Rule 36. Nevertheless, Valve continued its infringement and pressed invalidity defenses in this Court (*e.g.*, in its expert reports) that were likewise <u>statutorily barred</u> by its IPR losses (defenses it raised or could have raised to the PTAB). Valve's expert reports also included a new non-infringement position, arguing for the first time that the "for a console" language in the preamble of claim 1 was substantively limiting, despite having never raised the issue during *Markman* proceedings.

      Valve's pattern of excessive litigation and misconduct was not limited to multiple IPRs and improper expert reports. Valve filed several motions to dismiss, demanded unwarranted supplemental infringement contentions, belatedly obtained transfer away from Plaintiff's home district to Valve's home district (followed by two unsuccessful motions to stay), sought amendment of its invalidity contentions well after the deadline, filed a meritless summary judgment motion directed to literal and willful infringement, asserted an inequitable conduct defense rejected by this Court on multiple grounds, and refused production of important financial information based on statements to the Court that were less than candid. Valve also showed distain for Ironburg and its patent rights: (1) rejecting a reasonable royalty license offer with threats of invalidation; (2) copying all aspects of Ironburg's claimed controller, not just the elongated members of claim 1; and (3) refusing to redesign its controller and/or stop its ongoing sales (which largely occurred <u>during</u> this action) despite having multiple opportunities to do so and

asserting at trial that an acceptable non-infringing alternative was always available at little additional cost.  Moreover, Valve's actions were designed to harm Ironburg and its close corporate affiliate, Scuf Gaming ("Scuf") – which sold a competing controller – as evidenced by (among other things) Valve's "dumping" of its controllers, especially after losing its IPRs.  Finally, a fee award is needed to advance considerations of compensation and deterrence.  Instead of taking a reasonable license, Valve spent millions in a futile attempt to invalidate the patent claims Ironburg asserted at trial (including at the PTAB) and adopted a litigation strategy designed to inflict maximum financial harm on Ironburg.  Ironburg was forced to spend almost seven million dollars in attorneys' fees in this case and the PTAB.  Unless Ironburg is awarded its fees, Valve's hardball tactics will ultimately win the day despite its resounding loss on the merits.  Further, such an outcome would deter other patent owners from asserting their rights in the future.

## II. LEGAL STANDARD

Pursuant to 35 U.S.C. §285, courts in exceptional circumstances may award reasonable attorneys' fees to the prevailing party.  An "exceptional" case is simply one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Id*.  Some factors that may be considered include objective unreasonableness (both in the factual and legal components of the case), frivolousness, the infringer's motivation, and the need in particular circumstances to advance considerations of compensation and deterrence.[2] *Id*., n. 6.  Ultimately, a party must demonstrate entitlement to attorneys' fees only by a preponderance of the evidence. *Id*. at 557.

## III. IRONBURG IS ENTITLED TO ITS REASONABLE ATTORNEYS' FEES

### A. Ironburg Is The Prevailing Party

---

[2] Neither subjective bad faith nor independently sanctionable conduct is required. *Octane*, 572 U.S. at 554-55; *Tinnus Enterprises, LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 744 (E.D. Tex. 2019).  After an exceptional case finding, the district court must also determine whether fees are appropriate. *Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998).  An award of fees is justified for the same reasons the present action is exceptional.

1  Ironburg is the prevailing party given the jury's willful infringement verdict (awarding
2  over $4 million in damages, Dkts. 416, 417) and entry of the partial judgment. *See Raniere v.*
3  *Microsoft Corp.*, 887 F.3d 1298, 1304-06 (Fed. Cir. 2018) (prevailing party status requires a
4  judicially sanctioned change in the legal relationship of the parties).  That Valve may have
5  obtained some limited success in defending against an additional patent-in-suit is irrelevant. *See*
6  *SSL Services, LLC v. Citrix Systems, Inc.*, 769 F.3d 1073, 1086-87 (Fed. Cir. 2014) (party need not
7  prevail on all claims; reversing refusal to find patentee who established infringement of one patent,
8  but not another, the prevailing party); *Shun v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2011)
9  (there can only be one prevailing party in a given case for purposes of costs and fees, even in a
10 mixed judgment case; "punting" is not an option).

11 **B.  The Willfulness Verdict Is Compelling Evidence Of An Exceptional Case**

12 The jury's finding of willful infringement is a compelling indication that this case is
13 exceptional and that Ironburg should be awarded its fees. *See Golight, Inc. v. Wal-Mart Stores,*
14 *Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) (willfulness alone sufficient to find case exceptional);
15 *SC Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 200 (Fed. Cir. 1986) ("[d]istrict
16 courts have tended to award attorney fees when willful infringement has been proven, and this
17 court has uniformly upheld such awards"); *Georgetown Rail Equipment Co. v. Holland L.P.*, 2016
18 WL 3346084 at **22-23 (E.D. Tex. June 16, 2016) (jury finding of willfulness a "compelling"
19 indication case is exceptional).  Indeed, a court must specifically explain why a case is not
20 exceptional after a finding of willful infringement (or why fees were not awarded if the case is
21 found exceptional).  *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011)*;*
22 *SC Johnson*, 781 F.2d at 2001; *Georgetown*, 2016 WL 3346084 at *21.

23 **C.  Ironburg Also Won Several "Second Front" IPR Proceedings Filed By Valve**

24 Valve also twice pursued IPR proceedings against Ironburg's '525 patent in the PTAB (a
25 parallel "second front" to this federal litigation) – unsuccessfully seeking invalidation of the same
26 claims later found willfully infringed.  Valve's first attempt was so devoid of merit that it was
27 rejected by the PTAB despite its well-earned reputation as a patent "death squad."  *See* the
28 September 22, 2017 Final Written Decision in IPR2016-00948 (Dkt. 142-5), affirmed by the

Ironburg's Motion for Attorneys' Fees and Prejudgment Interest         4
(Case No. 2:17-cv-01182-TSZ)

Federal Circuit on July 15, 2019 (Dkt. 302-1). Valve's second IPR attempt was even more specious, and was summarily dismissed by the PTAB for violating the notorious statutory estoppel that accompanies any decision to request an IPR. That statute provides that, once a final written decision is rendered, the challenger may not file or maintain an IPR "on any ground that the petitioner raised or reasonably could have raised during that inter partes review" and that it may not assert in a civil action that a "claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." *See* 35 U.S.C. §315(e)(1) and (2) and the January 25, 2018 Decision Granting Motion to Terminate in IPR2017-00136 (Dkt. 192-4). Despite these losses, Valve also pursued several additional IPRs against other patents-in-suit, with most claims found patentable. *See* the February 7, 2019 Final Written Decision in IPR2017-01928 (rejecting challenges to all 24 claims of Ironburg's U.S. Patent No. 9,352,229) and the February 28, 2019 Final Written Decision in IPR2017-00858 (rejecting challenges to several claims of Ironburg's U.S. Patent No. 9,289,688).[3]

   **D.   Valve Proceeded To Trial Despite Being Precluded From Contesting Validity**

Patent claims are presumed valid. *See* 35 U.S.C. §282. Despite this presumption, Valve presented no evidence at trial that it ever investigated whether any of the claims of the '525 patent asserted at trial were invalid by clear and convincing evidence (let alone that it formed a good faith belief of invalidity supported by a competent opinion of counsel) – despite having written notice of the '525 patent and Ironburg's infringement contentions no later than March 7, 2014.[4] (Dkt. 282-3) (Trial at 301:2-302:4, 415:17-416:11). More importantly, even after the PTAB expressly confirmed the validity of these claims on September 22, 2017 (under a preponderance of the

---

[3] Ironburg is entitled to its fees associated with these two IPRs (and the associated Federal Circuit appeals) – in addition to its district court fees. Such relief is appropriate, as: (1) Valve sought and obtained a stay of this action pending resolution of the appeals (Dkts. 292, 301); (2) the IPRs eliminated most validity issues from this case; (3) Ironburg had no option but to defend the IPRs; and (4) the fees were all incurred after the filing of this action. *See*, *PPG Industries, Inc. v. Celanese Polymer Specialties Co.*, 40 F.2d 1565, 1568-69 (Fed. Cir. 1988) (attorneys' fee award for participation in reissue proceedings); *Deep Sky Software, Inc. v. Southwest Airlines Co.*, 2015 WL 10844231 (S.D. Cal. August 19, 2015) (allowing recovery of fees incurred in connection with reexamination proceedings); *MyHealth, Inc. v. ALR Technologies, Inc.*, 2017 WL 6512221 at *6 (E.D. Tex. December 19, 2017) (awarding fees associated with an IPR Petition).

[4] Ironburg also previously notified Valve at the January 2014 Consumer Electronics Show that the USPTO had issued a Notice of Allowance for the '525 patent. (Trial at 413:8-415:16, 297:13-299:19).

Ironburg's Motion for Attorneys' Fees and Prejudgment Interest      5
(Case No. 2:17-cv-01182-TSZ)

evidence standard, which was much more favorable to Valve than the clear and convincing standard applied by district courts), Valve continued to vigorously sell its Steam Controller through December 2019 (Dkt. 413, Stip. Fact Nos. 10-11) and steadfastly insisted on continuing this litigation for more than <u>three additional years</u>.  It also did so knowing it was thereafter <u>statutorily precluded from contesting validity</u>, including at trial.[5]  *See* 35 U.S.C. §315(e)(2).

### E.   Valve Offered No Testimony That It Subjectively Believed It Did Not Infringe

Valve similarly failed to provide any evidence that it ever investigated whether its Steam Controller infringed any of the claims of the '525 patent asserted at trial (let alone formed a good faith belief of non-infringement supported by a competent opinion of counsel): (1) after being notified of its infringement in March 2014; (2) before it first started selling its Steam Controller in June 2015 (Trial at 424:7-9); (3) before it first commercially released/shipped its controller in November 2015 (*id.* at 424:10-12); and/or (4) after Ironburg provided a second notice of infringement on December 3, 2015 (Dkt. 282-4) (Trial 426:20-427:3).  *See*, *e.g.*, *nCUBE Corp. v. SeaChange International, Inc.*, 313 F. Supp. 2d 361, 391 (D. Del. 2004) (failure to investigate and/or rely on informed opinions of competent counsel before engaging in and/or continuing infringing activity "highly relevant" to attorneys' fees).  In fact, not only did Valve purport to withhold the '525 patent from its engineers, it refused to disclose any opinions of counsel to Ironburg and repeatedly blocked any related discovery – confirming that any such opinions were decidedly negative.[6]  And, while Valve eventually served a Rule 26(a)(2) report on August 27, 2018[7] (*i.e.*, over three years after commencing sales), Valve did not present any testimony at trial

---

[5] Valve's remaining indefiniteness arguments were rejected by this Court on June 7, 2018.  (Dkt. 189).

[6] *See also, Jepson, Inc. v. Makits USA, Inc.*, 1994 WL 543226 at * 7 (C.D. Cal. May 27, 1994) (competent opinions are unlikely to come from non-patent counsel or lay persons).

[7] Valve's expert (Mr. Dezmelyk) also never testified at trial that the Steam Controller failed to meet the dependent limitations of the asserted claims.  (Trial at 811:24-812:23).  Instead, Valve presented three weak arguments concerning independent claim 1: (1) that the Steam Controller allegedly lacked two back controls including an elongate member (Trial at 757:1-5); (2) that its elongate members allegedly failed to extend substantially the full distance between the top and bottom edge of the controller (*id*. at 757:11-15); and (3) that its elongate members allegedly were not inherently resilient and flexible (*id*. at 757:22-25).  That these arguments lacked substantive merit was confirmed when the jury returned its willful infringement verdict after only a few hours of deliberation.  *See*, *e.g.*, *nCUBE Corp*, 313 F. Supp. 2d at 390 ("The Court finds that the case for literal infringement was not a close one where the jury found literal infringement on each of the asserted claims…").

Ironburg's Motion for Attorneys' Fees and Prejudgment Interest       6
(Case No. 2:17-cv-01182-TSZ)

that it actually believed that it did not infringe Ironburg's '525 patent.[8]

### F. Valve Copied The Entire Controller Described And Claimed By Ironburg

Valve never attempted to design around the '525 patent. (Dkt. 413, Stip. Fact No. 8) (Trial at 426:5-16). Instead, it deliberately copied the entire controller described and claimed therein. This copying was not restricted to the limitations of claim 1, but also included: (1) the top edge control of claim 2; (2) the additional functions for the back controls, as detailed in claim 4; (3) the mounting of the back controls within a recess located in the case, as detailed in claim 7; (4) the specific elongate member thicknesses ranges of claims 9-11; and (5) the formation of an elongate member as an integral part of the outer case, as detailed in claim 18. The controller Valve promoted in early 2014 ("Chell") plainly did <u>not</u> have thin elongate members formed as an integral part of the outer case. But, almost immediately after receiving Ironburg's March 7, 2014 notice letter, Valve (not coincidentally) designed a new version of the Steam Controller that read even more closely on the '525 patent claims (*e.g.*, a controller that exhibited the exact configuration of, e.g., claims 2, 4, 9-11 and 18).[9] (Becker Del., Ex. 2). Valve also needed to copy the entirety of all asserted claims – as it willfully infringed the '525 patent <u>for over four years</u> despite representing to the jury that it had "very acceptable" non-infringing alternatives available that could have been easily implemented at the time of infringement for "minimal" cost. (Trial at 717:12-719:6).

### G. Valve Engaged In Excessive Litigation And Litigation Misconduct

Valve also engaged in a pattern of excessive litigation (even beyond its multiple IPRs) and litigation misconduct – which repeatedly caused delay, undue burden, and significant expense. (Becker Decl., Ex. 1). From the very outset, Valve filed three unsuccessful motions to dismiss Ironburg's Complaint (including its allegations of willful infringement). (Dkts. 13, 20, 48, 62). It also pursued an meritless crusade to compel the service of unwarranted supplemental contentions on infringement. (Dkts. 71, 148). And, almost two years after Ironburg filed its Complaint (and after the parties had already fully briefed the construction of disputed claim terms and conducted a

---

[8] The Court properly barred Valve from offering the subjective beliefs of its general counsel (Quackenbush) formed after consultation with counsel given its assertion of the attorney-client privilege. (Dkt. 406) (Trial at 260:12-16).

[9] The design process was largely driven by customer feedback. (Trial at 401:19-402:3, 409:14-16, 466:7-14, 485:4-8). The integration of the paddles into the case of the controller was thus popular, and important to demand.

*Markman* hearing on March 2, 2017), Valve belatedly sought (and obtained) a transfer of this action from Georgia to its home forum.  (Dkts. 69, 76, 77, 92, 150-1, 110, 116).

This continued unabated after transfer, with Valve twice seeking (unsuccessfully) to stay this action based on failed IPR actions (Dkts. 136, 148, 190, 233) and attempting (again without success) to add new invalidity contentions long after the established deadline (Dkts. 201, 239). This Court also denied Valve's motion for summary judgment directed to literal and willful infringement of the '525 patent (Dkts. 255, 301), and granted Ironburg's motion to strike/dismiss (with prejudice) Valve's inequitable conduct allegations (on multiple grounds) (Dkts. 258, 320) – but only after (in both instances) Ironburg was forced to submit extensive and expensive briefing.

Valve also continued to litigate issues already decided and to pursue arguments that were not timely raised.  For example, Valve served an expert invalidity report on July 6, 2018 (Dkt. 262-20), despite being barred from raising the art cited therein (Valve was precluded by statute from raising defenses it raised or could have raised during its failed IPRs), requiring Ironburg to file a successful motion for IPR estoppel.  (Dkt. 260, 320).  As another example, Valve never asserted that the phrase "for a game console" in the preamble of claim 1 was substantively limiting in any Georgia claim construction brief (Dkts. 64, 64-1, 64-5, 69, 76), at the *Markman* hearing (Dkts. 92, 150-1), or in this Court (Dkts. 149, 150, 161, 164, 167, 153, 189).  Nor did it raise such a construction in its motion for summary judgment (Dkts. 255, 286) or in its initial jury instructions (served on February 7, 2020).  (Becker Decl., Ex. 3).  Yet, based on its inclusion in its expert report, Valve (on the eve of trial, until postponed) suddenly demanded that construction as part of the jury instructions (Dkts. 330, 346, 355) – and repeatedly raised the same construction argument for almost a year (Dkts. 367, 374, 380, 390), and at great expense to Ironburg, despite this Court indicating that Valve's position lacked merit on four different occasions.  (Dkts. 384, 413) (Becker Decl., Exs. 4-6).  Incredibly, Valve simultaneously objected to evidence that its Steam Controller was designed for its own Steam Machine consoles.  (Becker Decl., ¶8) (Dkt. 373).  Even thereafter, Valve continued to make the "for a game console" preamble language an issue (despite its substantive irrelevance) by repeatedly eliciting trial testimony concerning alleged differences between PCs and game consoles.  (Trial at 396:1-14, 434:11-17, 501:6-502:1).

Valve further opposed routine discovery of financial information, including information underlying sales of its Steam Controller. Despite being one of the largest sellers of video games in the world, Valve opposed Ironburg's discovery motion by representing to the Court that it "is a relatively small privately-held company" and "does not possess many of the routine financial records that larger, publicly-audited corporations might ordinarily have." (Dkt. 172 at p. 1:3-6). Jane Lo, Valve's comptroller, also submitted a declaration stating that "Valve does not prepare financial reporting on a regular cadence in the ordinary course of its business…. Rather, Valve prepares financial reporting from time to time on an ad hoc basis for a specific purpose, such as an upcoming valuation, an upcoming board of directors meeting, or as required for tax purposes." (Dkt. 173 at ¶13). Valve and Lo's representations were misleading (at best), as Magistrate Judge Donohue exposed during the hearing. Specifically, after expressing his "gross disbelief" that a Washington corporation like Valve could operate as Lo had suggested, he ordered Lo to testify regarding Valve's finances. (Dkts. 443-5, 184). In her deposition, Lo conceded (not surprisingly) that Valve routinely prepares financial statements on a quarterly basis exactly as Judge Donohue had expected. (Dkt. 443-6 at 29:20-30:16). [10] Valve soon thereafter produced a large quantity of highly-relevant materials, including documents explaining why Valve was very willing to sell its controller at low prices for a loss (given effects on other aspects of its large and very profitable video game business).[11] (Dkt. 440, ¶6) (Tr. Ex. 85, p. 11) (Dkt. 439, p. 9:21-26) (Dkt. 172, p. 1).

### H.    Valve Never Reconsidered Its Behavior And Showed Contempt For Patents

Valve's general counsel, Karl Quackenbush, admitted at trial that Valve never considered stopping the sale of the Steam Controller in response to Ironburg's infringement claims (Trial at 427:15-20), and those claims had no impact on Valve's much later decision to stop manufacture (*id.* at 427:7-14). Valve thus not only ignored the opportunity (provided by Ironburg's March

---

[10] Lo was also unable to provide basic information about Valve's business at trial – such as an estimate of the average margin Valve realized on video game sales. (Trial at 612:11-615:10). Valve's lack of candor associated with producing its financial records has also been exposed in Northern District of California Case No. 11-cv-06714-YGR, Dkt. 356 (February 24, 2021).

[11] Valve shows no sign of stopping, having moved unsuccessfully for judgment as a matter of law under Rule 50(b) (after denial of its Rule 50(a) motion) (Dkts. 411, 418, 436, 458), and having requested Rule 54(b) certification to pursue an immediate appeal (Dkts. 440/443, ¶7 & 443-7). An fees award is an appropriate/necessary deterrent to Valve's "scorched earth" approach.

2014 notice letter) to re-design its Steam Controller to avoid infringement before its release,[12] it repeatedly declined to stop its ongoing infringement (or to take other remedial action) after sales commenced, including: (1) in December 2015 (shortly after the first commercial release of the Steam Controller, in response to Ironburg's second notice letter); (2) in September 2017 (after losing its first IPR); (3) in January 2018 (after losing its second IPR, and after this Court adopted claim constructions from the first IPR); (4) in June 2018 (after its indefiniteness arguments were rejected by this Court); (5) in November 2018 (after this Court denied its request for summary judgment on infringement and willfulness); (6) in July 2019 (after its first IPR loss was affirmed by the Federal Circuit); and (7) in November 2019 (after this Court dismissed its inequitable conduct allegations and confirmed it was precluded from asserting invalidity). In fact, Valve sold 1,612,136 units of its Steam Controller between June 2015 and December 2019 (*i.e.*, Valve willfully infringed <u>for more than four and a half years</u>) – most of which occurred during the pendency of this action. (Dkt. 413, Stip. Fact No. 11) (Trial Exs. 65, 112, 113). These multiple refusals to reconsider its willful behavior and the resulting harmful effects were driven (in part) by Valve's utter contempt for both Ironburg and patent rights in general. For example, after Ironburg's CEO/founder Duncan Ironmonger informed Quackenbush in early 2014 that, as a patent holding company, its patents were its "crown jewels" (Trial at 421:22-24), Quackenbush dismissed Ironmonger's concerns, telling him that patents are not the "main asset of any company" if the company is "providing good products to happy customers" (*id*. at 422:2-9). Quackenbush also issued a threat after Ironburg insisted that Valve should take a license (*id.* at 420:9-25): by suing Valve, Ironburg was putting its 525 patent "at risk" and that its intellectual property "might end up being smaller at the end of the case than when the case was started" (*id.* at 426:5-16). Valve also never provided a written response to either of Ironburg's notice letters.[13]

### I. Valve Was Motivated To Harm Ironburg And Its Close Affiliate Scuf

Valve's behavior was also driven by a clear desire to harm Ironburg and its close corporate

---

[12] As mentioned above, Valve instead chose to deliberately copy multiple additional features despite asserting at trial the availability of an easy non-infringing alternative for minimal cost.

[13] Quackenbush also deliberately mislead Ironburg, stating Valve was "not in the business of selling hardware products" and that the controller was an "experiment." (Trial at 418:10-23, 419:3-9).

affiliate, Scuf – which at all relevant times sold controllers in direct competition with Valve and that prominently touted the design, positioning, and capabilities of its controls as a primary competitive advantage.[14] Indeed, in early 2014, Ironmonger expressed his concern to Quackenbush that Valve's Steam Controller would negatively affect Scuf's business. (Trial at 421:12-15). That already significant harm to Ironburg and Scuf's market was exacerbated when Valve intentionally flooded the market with its remaining inventory of Steam Controllers, at even more steeply discounted prices, rather than simply halting their sale. This accelerated inventory purge – which occurred soon after Valve lost its IPR appeal – not only caused significant and immediate economic harm to both Ironburg and Scuf, it was designed to weaken Ironburg's damages case (*e.g.*, Valve's expert asserted the hypothetical negotiation would yield a low royalty rate given the alleged loss it suffered on the sale of each controller).[15] (Dkt. 375-2 at p. 32).

### J.     A Fee Award Is Necessary To Advance Compensation And Deterrence

A fee award is also needed to advance considerations of compensation and deterrence. Ironburg has a reasonable 5% royalty "baseline" for its license agreements. (Trial at 328:3-6). But, instead of taking a license, Valve poured millions into futile attempts to invalidate the patent claims asserted at trial (both in this Court and the PTAB). Ironburg was therefore forced to spend over five million dollars in attorneys' fees in this case alone, and millions more in the two PTAB proceedings filed by Valve against the '525 patent, for what turned out to be a four million dollar dispute. Thus, in the absence of a fee award, Ironburg would receive (given the lack of enhanced damages) absolutely no net compensation for Valve's willful violation of its patent rights (and would actually suffer a significant loss). As Valve continues its efforts to burden both Ironburg and the courts through its intended appeal, which will almost certainly reflect the same "scorched earth" tactics it has employed to date, that net loss will only continue to grow. Such a result would also: (1) have a negative "chilling effect" on similarly situated patent owners (especially when facing large and well-funded infringers like Valve); and (2) encourage highly profitable companies

---

[14] Even a juror during *voir dire* recognized that the back paddles of Scuf's controllers make it "unique" and "rare." (Trial at 104:22-105:3).

[15] Valve sold a significant percentage of its 1,612,136 total Steam Controllers in November 2019 alone (a month before stopping sales). (Trial Exs. 65, 112, 113).

such as Valve to willfully infringe the patent rights of others in the future (knowing liability will likely be limited to be a reasonable royalty, assuming the patent owner does not give up earlier due to cost).[16] In short, Ironburg was forced to incur extraordinary effort and expense to persuade Valve to do the right thing – to cease its sales of the infringing Steam Controller – and it repeatedly refused. That behavior should not be countenanced, let alone excused.

## IV. IRONBURG IS ENTITLED TO PREJUDGMENT INTEREST

Ironburg also moves this Court for an Order awarding it prejudgment interest pursuant to 35 U.S.C. §284. Ironburg is entitled to prejudgment interest from the date of Valve's first infringement (June 2015) to the date of final judgment (July 19, 2021) at the prime rate, compounded monthly.[17] *See* 35 U.S.C. §284; *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983) (prejudgment interest should ordinarily be awarded; an award is necessary to ensure the patent owner is placed in as good a position as it would have been in had the infringer entered into a reasonable royalty agreement); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (court may award interest at or above the prime rate); *Beckson Marine, Inc. v. NFM, Inc.*, 2007 WL 951706 at * 3 (W.D. Wash. March 27, 2007) (prejudgment interest runs from the date of infringement to the date of judgment; the statutory rate or prime rate is an appropriate prejudgment interest rate). That amount would be $1,133,011. (*See* Becker Decl., ¶15).

## V. CONCLUSION

For the reasons stated above and those that may be subsequently presented, including at oral argument, Ironburg's present Motion for Attorneys' Fees Pursuant to 35 U.S.C. §285 and Prejudgment Interest Pursuant to 35 U.S.C. §284 should be GRANTED in its entirety.

---

[16] Nor would a fee award unduly prejudice Valve, as it would be dwarfed by Valve's monthly profit. (Trial Ex. 16) (Dkt. 439, pp. 9:5-7, 10:21-22).

[17] Valve cannot assert Ironburg delayed in filing suit, let alone that Valve was prejudiced, as the present action was filed on December 3, 2015 – just months after Valve first offered its infringing Steam Controller for sale and within days of its first commercial release to the public. (Trial at 424:7-12). Quackenbush also admitted that he would want to inspect an accused device before bringing a lawsuit and "be aware of what was happening." (*Id.* at 438:7-11).

Dated:  August 2, 2021

**MANATT, PHELPS & PHILLIPS, LLP**

By:   */s/ Robert D. Becker*
   Robert D. Becker, *pro hac vice*
   Christopher L. Wanger, *pro hac vice*
   One Embarcadero Center, 30th Floor
   San Francisco, CA  94111
   Tel: (415) 291-7617; Fax (415) 291-7474
   Email: rbecker@manatt.com
   Email: cwanger@manatt.com

**SAVITT BRUCE & WILLEY LLP**
   Stephen C. Willey, WSBA #24499
   1425 Fourth Avenue, Suite 800
   Seattle, WA  98101-2272
   Tel: (206) 749-0500; Fax (206) 749-0600
   Email: swilley@sbwllp.com

*Attorneys for Plaintiff Ironburg Inventions Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 2, 2021, I served the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

*/s/ Robert D. Becker*
Robert D. Becker