UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IRONBURG INVENTIONS LTD.,<br><br>  Plaintiff,<br><br>v.<br><br>VALVE CORPORATION,<br><br>  Defendant. | C17-1182 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion, docket no. 467, brought by plaintiff Ironburg Inventions Ltd. ("Ironburg") for attorney fees pursuant to 35 U.S.C. § 285 and prejudgment interest pursuant to 35 U.S.C. § 284. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

After a virtual trial in this matter, a jury rendered a verdict in favor of Ironburg and against defendant Valve Corporation ("Valve"), finding that Valve had willfully infringed Claims 2, 4, 7, 9, 10, 11, and 18 of United States Patent No. 8,641,525 (the "'525 Patent"), and awarding to Ironburg $4,029,533.93 in damages. *See* Verdict (docket nos. 416 & 417). Ironburg now seeks a ruling that it is entitled to attorney fees in

ORDER - 1

connection with this litigation, as well as two inter partes review ("IPR") proceedings before the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") involving the '525 Patent and a related appeal to the Federal Circuit.  The estimated amount of such attorney fees exceeds $6.5 million.  *See* Becker Decl. at ¶¶ 9 & 10 (docket no. 468).

Ironburg also requests prejudgment interest calculated **from June 1, 2015**, the date on which Valve first sold the infringing device known as a Steam Controller, *see* Instr. No. 5 at ¶¶ 7 & 11 (docket no. 413), **to July 19, 2021**, the date of the Partial Judgment, docket no. 464.  Ironburg asks the Court to apply the prime rate used by banks in the United States, which varied between 3.25 and 5.50 percent per annum during the more than six-year period at issue; Ironburg proposes an average rate of 4.08 percent, compounded *monthly*, resulting in a prejudgment interest amount of $1,133,011.  *See* Becker Decl. at ¶ 15 (docket no. 468).

Valve contends that Ironburg is not entitled to attorney fees because this case is not "exceptional" within the meaning of 35 U.S.C. § 285.  Valve further argues that, if prejudgment interest is awarded, it should be calculated on the basis of the rate specified in 28 U.S.C. § 1961(a) ("the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment").  According to Valve, during the timeframe in question, the rate set forth in § 1961(a) fluctuated between 0.04 and 2.74 percent, with an average of 1.12 percent, and if compounded *annually*, the average rate would yield prejudgment interest in the amount of $282,465.14.  Lujin Decl. at ¶ 7 (docket no. 476).

ORDER - 2

**Discussion**

**A.      Attorney Fees**

The Patent Act authorizes the Court "in exceptional cases" to award "reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  An "exceptional" case is one that "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545, 554 (2014).  The Court has discretion to determine on a case-by-case basis whether the "exceptional" threshold has been crossed; the Court need not apply any "precise rule or formula," but must consider the "totality of the circumstances." <u>Id.</u>  Having reviewed the procedural history of this case and being well-acquainted with the evidence presented at trial, the Court concludes that neither the strength of Ironburg's infringement claim nor the weaknesses in Valve's defenses "stand out" from the litigating positions of parties in other matters, and that Valve did not conduct itself in an unreasonable manner in battling against Ironburg in this action or related proceedings.

Ironburg suggests that this case is "exceptional" for eight reasons:  (i) the jury found that Valve's infringement of the '525 Patent was willful; (ii) Valve pursued partially unsuccessful IPR proceedings; (iii) Valve proceeded to trial without any invalidity defenses; (iv) at trial, Valve offered no direct evidence of a subjective belief that the Steam Controller did not infringe the '525 Patent; (v) Valve made no attempt to design around the '525 Patent; (vi) Valve engaged in a pattern of excessive litigation; (vii) Valve exhibited "contempt" for the '525 Patent; and (viii) Valve's conduct was

ORDER - 3

motivated by an intent to harm Ironburg.  *See* Pl.'s Mot. at §§ III(B)-(I) (docket no. 467).  For the reasons set forth in the Order entered May 26, 2021, docket no. 458, in which the Court declined to award enhanced or treble damages to Ironburg, the Court rejects Ironburg's first, fourth, fifth, and seventh grounds for seeking attorney fees.  The Court previously concluded that any willfulness in this matter was "garden-variety" and did not warrant enhancing damages.  *See* Order at 7-9 (docket no. 458).  The uncontroverted testimony of Valve's lead designer was that he first saw the '525 Patent at his deposition in this litigation, which was after the development of several prototypes, as well as the commercial version, of the Steam Controller.  *See id.* at 8 (citing Tr. (Jan. 27, 2021) at 387:5-6, 451:17-19, 462:25-464:12, 481:23-24, & 492:22-493:6 (docket no. 424)).  The record does not support a theory that Valve copied, "pirated," or manifested "contempt" for Ironburg's invention, and the jury's finding of willfulness does not convert this case into an "exceptional" one.

      Ironburg's eighth assertion that Valve behaved with an ill motive is unsupported by any evidence.  Ironburg cites for support only a juror's statement during voir dire and the timing of Valve's sales of the Steam Controller.  *See* Pl.'s Mot. at 11 nn.14 & 15 (docket no. 467).  The former has no relevance to Valve's intent and the latter establishes only that Valve sought to purge its inventory of an unprofitable and discontinued product.  The Court is not persuaded that Valve acted with the type of malice imputed by Ironburg, particularly given that Valve and Ironburg (and/or its affiliates) no longer compete in the hand-held game-controller market.

Finally, Ironburg's second, third, and sixth contentions concerning Valve's tactics do not fairly characterize the course of this and related proceedings. This matter has been hard fought by **both** sides. The case began in the Northern District of Georgia on December 3, 2015, see Compl. (docket no. 1), before the United States Supreme Court decided TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514 (2017). When, a little over two weeks after TC Heartland was decided, Valve moved for merely *leave* to file a motion to transfer venue, see Def.'s Mot. (docket no. 107), Ironburg filed a 10-page objection, see Pl.'s Resp. (docket no. 108). When the Georgia Court gave Valve an opportunity to seek a new forum, see Order (docket no. 109), Ironburg attempted to persuade the then-presiding judge that TC Heartland did not constitute an intervening change in the law and that Valve had waived its right to challenge venue, see Pl.'s Resp. (docket no. 111). The Georgia Court rejected this view, ruling that TC Heartland "undoubtedly changed the venue landscape," and on August 3, 2017, after this matter had been pending for 20 months, the case was transferred to this district. Order at 8 & 11 (docket no. 116). Ironburg would not be entitled pursuant to § 285 to any attorney fees related to its failed efforts to remain in the Northern District of Georgia, and Valve's campaign to move the litigation to its place of residence was neither unreasonable nor exceptional.

Shortly after the action arrived in this district, the PTAB issued final written decisions in the IPR proceedings concerning two of the four patents-in-suit, namely the '525 Patent and U.S. Patent No. 9,089,770 (the "'770 Patent"), and as to the other two patents-in-suit, U.S. Patent Nos. 9,289,688 (the "'688 Patent") and 9,352,229 (the

ORDER - 5

"'229 Patent"), IPRs had been instituted.[1]  *See* Minute Order at ¶ 2 (docket no. 148). Contrary to Ironburg's apparent suggestion, Valve was the prevailing party in the IPRs involving the '525 and '770 Patents, having persuaded the PTAB to invalidate all independent claims and several dependent claims of both patents.  *See* Exs. K & L to Becker Decl. (docket nos. 262-11 & 262-12).  These rulings were later affirmed by the Federal Circuit.  *See* Ex. A to Joint Status Report (docket no. 302-1).  Moreover, as to the '770 Patent, Valve successfully sought a summary judgment of non-infringement with respect to the only two dependent claims of the patent that remained viable and were asserted in this action.  *See* Minute Order at ¶ 1(g) (docket no. 301).

As a result of the IPRs, claim construction, and motion practice, *see* Order (docket no. 189) (rejecting Valve's indefiniteness challenges); Order (docket no. 320) (granting Ironburg's motion regarding IPR estoppel), no invalidity issues were presented to the jury.  Ironburg's reliance on this fact as a basis for deeming the case "exceptional" is misplaced.  Valve's victories before the PTAB and the Federal Circuit, which narrowed the matters for the jury's consideration, do not inure to Ironburg's benefit in its quest for

---

[1] Since December 6, 2017, Ironburg's infringement claims relating to the '688 and '229 Patents have been stayed.  *See* Minute Order at ¶ 2(b) (docket no. 148).  Ironburg's current motion for attorney fees does not involve Valve's litigation conduct with respect to those two patents-in-suit.  Nevertheless, the Court observes that the PTAB invalidated the two independent and several of the dependent claims of the '688 Patent and was affirmed on this ruling by the Federal Circuit.  *See* Ex. 1 to Lujin Decl. (docket no. 476-1).  In addition, the Federal Circuit vacated a portion of the PTAB's decision that was adverse to Valve, reversing the evidentiary basis for the PTAB's conclusion that other dependent claims of the '688 Patent and certain claims of the '229 were not shown to be unpatentable, and the matter has been remanded to the PTAB for further proceedings.  *See id.*  Thus, the Federal Circuit's opinion on appeal was generally favorable to Valve.

ORDER - 6

attorney fees. Moreover, although the Court's rulings also played a role in eliminating invalidity as an issue for trial, Valve's positions with respect to indefiniteness and IPR estoppel were not so lacking in merit that their assertion could be considered vexatious. And, to Valve's credit, almost a year before trial, it stipulated to withdraw any defenses asserted under 35 U.S.C. § 112 with respect to the '525 Patent. *See* Joint Stipulation (docket no. 323); Minute Order (docket no. 325).

With respect to discovery disputes, this case had remarkably few, and they were generally decided in Valve's, not Ironburg's, favor by the magistrate judge to whom they were referred. *See* Minutes (docket no. 184) (denying Ironburg's motion to compel responses to certain requests for production, but requiring the deposition of Jane Lo, who is the equivalent of a comptroller for Valve); Ex. 5 to Wanger Decl. (docket no. 443-5) (uncertified transcript of hearing); *see also* Order (docket no. 248) (granting Valve's motion to compel materials related to Ironburg's knowledge and non-disclosure of certain prior art). The magistrate judge who oversaw discovery did not award attorney fees to either side in connection with motion practice or have occasion to issue warnings about possible sanctions, which reflects the ordinariness of the discovery squabbles in this matter. The record simply does not support Ironburg's accusation that Valve engaged in "scorched earth" tactics during the discovery process.

Both parties expressed reluctance to proceed to trial via virtual means, but worked cooperatively to do so after the Court made clear that waiting until an unforeseeable end to the pandemic to hold the trial in person was not an option. Throughout the entire trial, the attorneys, party representatives, and witnesses conducted themselves professionally

ORDER - 7

and appeared to treat each other with due respect and cordiality. Valve's defenses to Ironburg's infringement contentions were far from frivolous, as evidenced by Ironburg's election not to seek partial summary judgment in advance of trial or judgment as a matter of law on liability before the jury rendered its verdict, and nothing about Valve's decision to fight Ironburg's claims at trial and in post-trial motions or its methods of doing so rose to the level of "exceptional" for purposes of § 285. Ironburg's request for attorney fees is DENIED.

**B.    Prejudgment Interest**

Prior to 1946, the Patent Act contained no reference to interest, and under common law standards, prejudgment interest was available in two circumstances: (i) when damages were liquidated; and (ii) when damages were unliquidated, only if "exceptional circumstances," like "bad faith" on the part of the infringer, existed. See Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 651-52 (1983). As a result of amendments adopted in 1946, the Patent Act now provides that

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. The Supreme Court has held that this language did not adopt the common law requirements for prejudgment interest and that courts have discretion to award prejudgment interest as appropriate. Devex, 461 U.S. at 656-57. The Court is "afforded wide latitude in the selection of interest rates," and may consider a variety of factors, including any protracted nature of the litigation at issue and a patentee's need to

borrow money at the prime or higher rates to finance its operations while prosecuting its infringement case. <u>Uniroyal, Inc. v. Rudkin-Wiley Corp.</u>, 939 F.2d 1540, 1545 (Fed. Cir. 1991); <u>see</u> <u>Apple, Inc. v. Samsung Elecs. Co.</u>, 67 F. Supp. 3d 1100, 1121-22 (N.D. Cal. 2014). The Court also has discretion concerning whether prejudgment interest is simple or compound (and, if compounded, whether on a monthly, annual, or other basis). <u>See</u> <u>Gyromat Corp. v. Champion Spark Plug Co.</u>, 735 F.2d 549, 557 (Fed. Cir. 1984). The Court's decision on these matters must be guided by the goal of adequately compensating the patent owner for the infringement. 35 U.S.C. § 284; <u>Devex</u>, 461 U.S. at 655 ("In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement.").

Although Ironburg seeks prejudgment interest from June 1, 2015, Ironburg has also indicated, in the context of asking for attorney fees premised in part on Valve's "accelerated inventory purge," that a "significant percentage" of Steam Controllers were sold in November 2019. <u>See</u> Pl.'s Mot. at 11 & n.15 (docket no. 467). Given this sales pattern, the 20 months from December 2015 through August 2017 spent litigating in Ironburg's inappropriate choice of forum, and the stay of this matter in effect from November 15, 2018, through August 15, 2019, <u>see</u> Minute Orders (docket nos. 301 & 303), while awaiting the Federal Circuit's decision on the IPR proceedings involving the '525 and '770 Patents, the Court begins with the conclusion that prejudgment interest from June 1, 2015, would constitute a windfall to Ironburg. The more appropriate date from which prejudgment interest should be calculated is August 15, 2019, when the

ORDER - 9

aforementioned stay was lifted. The Court further concludes that, given the totality of the circumstances, prejudgment interest should be awarded at the average prime rate, as computed by Ironburg (4.08%), rather than the rate set forth in § 1961(a), but that compounding annually, rather than monthly, adequately compensates Ironburg for the loss of use of the royalties that the jury found should have been paid by Valve. *See Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 823, 829 (Fed. Cir. 1989) (affirming an award of prejudgment interest at the prime rate compounded annually).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Ironburg's motion, docket no. 467, for attorney fees pursuant to 35 U.S.C. § 285 and prejudgment interest pursuant to 35 U.S.C. § 284, is DENIED in part and GRANTED in part, as follows. The Court concludes that this case is not "exceptional" within the meaning of § 285, and that Ironburg is not entitled to attorney fees. Under § 284, the Court has discretion to and should award prejudgment interest absent some justification for withholding such relief. *See Devex*, 461 U.S. at 657. The Court concludes that prejudgment interest at the rate of four and eight-hundredths of one percent (4.08%) per annum, compounded annually, from August 15, 2019, to July 19, 2021, is warranted and sufficient, resulting in prejudgment interest in the amount of $322,859.38,[2] which shall bear interest at the rate specified by 28 U.S.C. § 1961, from

---

[2] The amount of prejudgment interest for the period from August 15, 2019, to August 15, 2020, is $164,404.98; the amount of prejudgment interest for the period from August 15, 2020, to July 19, 2021, is $158,454.40 (calculated as $468.80/day x 338 days).

the date of the partial judgment (July 19, 2021), until paid in full.  See Bio-Rad Labs., Inc. v. Nicolet Instrument Corp., No. 88-1066, 1988 WL 33364, at *1 (Fed. Cir. Apr. 15, 1988) (rejecting the argument that prejudgment interest should be paid between the date of the original judgment and the date on which the amount of prejudgment interest was "reduced to judgment," observing that post-judgment interest on the prejudgment interest had been awarded).

(2) For the reasons set forth in the Partial Judgment, docket no. 464, as to which the prejudgment interest herein awarded to Ironburg is related, the Court finds no just reason for delay, see Fed. R. Civ. P. 54(b).  The Clerk is therefore directed to enter a supplemental partial judgment consistent with this Order and to send a copy of this Order and the supplemental partial judgment to all counsel of record.

IT IS SO ORDERED.

Dated this 27th day of September, 2021.

*[signature]*

Thomas S. Zilly
United States District Judge