HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IRONBURG INVENTIONS LTD.,

    Plaintiff,

vs.

VALVE CORPORATION,

    Defendant.

CIVIL ACTION No. 2:17-cv-01182-TSZ

**PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION FOR INTER PARTES REVIEW ESTOPPEL AND BRIEF REGARDING FAILURE OF THE NON-PETITIONED REFERENCES TO ANTICIPATE OR RENDER THE ASSERTED CLAIMS OBVIOUS**

**NOTE ON MOTION CALENDAR:**

**February 23, 2024 pursuant to Dkt. No. 525**

**ORAL ARGUMENT REQUESTED**

REPLY IN SUPPORT OF RENEWED MOTION FOR INTER PARTES REVIEW ESTOPPEL AND BRIEF
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF CONTENTS

I. IRONBURG HAS MET ITS BURDEN FOR SHOWING THAT IPR ESTOPPEL SHOULD BE APPLIED ...................................................................................................1

    A. Valve's Argument that the "Grounds" Were Not Identified Lacks Merit ...............1

    B. Valve Cannot Refute that Two Skilled Searchers Identified the References ..........2

    C. Cardinal IP Replicated 2016 Search Conditions and Confirmed That More Recent Data Did Not Impact that Search ................................................................4

        1. The Kotkin References Would Be Discovered Together ............................5

        2. The Supplemental Search Was Part of a Reasonably Diligent Search .................................................................................................................5

II. THE NON-PETITIONED GROUNDS FAIL TO INVALIDATE THE ASSERTED CLAIMS .................................................................................................5

    A. The Kotkin References Fail to Disclose Multiple Claim Elements ........................5

        1. All Asserted Claims ....................................................................................6

        2. Claim 4 ........................................................................................................7

        3. Claim 7 ........................................................................................................7

        4. Claims 9-11 .................................................................................................8

        5. Claim 18 ......................................................................................................8

    B. The Willner-Koji-Raymond Combination Fails to Invalidate the Asserted Claims ......................................................................................................................8

        1. Using Koji to Modify Willner Would Render Willner Inoperable ..............8

        2. Raymond Is Outside the Field of Endeavor and Is Non-Analogous Art ...............................................................................................................9

        3. Dezmelyk Fails to Show that Willner/Koji/Raymond Disclose Multiple Elements of the Asserted Claims .................................................9

            a. *Claim 1: Raymond discloses a lever with multiple components and is not "inherently resilient and flexible."* .............9

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - i
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

        b.    *Claim 2: Willner does not disclose and teaches away from "top edge control" and "the user's index finger is positioned to operate the top edge control."* ....................................................... 10

        c.    *Claim 7: Willner does not disclose a "recess located in the case," and combining Koji with Willner would place the control outside of the curve in the controller.* ................................ 10

        d.    *Claims 9-11: Dezmelyk admits that Raymond does not expressly disclose the specific thickness of the paddles, and the strip of metal disclosed by Raymond at the claimed thickness would not be "flexible."* ................................................... 11

        e.    *Claim 18: Willner does not disclose "wherein at least one of the back controls is formed as an integral part of the outer case."* ................................................................................................ 11

III.    VALVE'S MOTIONS TO STRIKE LACK MERIT AND SHOULD BE DENIED ........ 11

IV.    CONCLUSION ............................................................................................................... 12

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - ii
2:17-cv-01182-TSZ

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Airbus S.A.S. v. Firepass Corp.*,
 941 F.3d 1374 (Fed. Cir. 2019)..................................................................................................9

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
 637 F.3d 1324 (Fed. Cir. 2011)................................................................................................11

*Collective Minds Gaming Co. Ltd. v. Ironburg Inventions Ltd.*,
 IPR2018-00354, Paper 2 (PTAB Jan. 3, 2018)..........................................................................9

*Eis, Inc. v. Intihealth Ger GmbH*,
 No. 19-1227-GBW, 2023 U.S. Dist. LEXIS 188294 (D. Del. Aug. 30, 2023) .........................2

*In re Gordon*,
 733 F.2d 900 (Fed. Cir. 1984)....................................................................................................8

*Ironburg Inventions Ltd. v. Valve Corp.*,
 64 F. 4th 1274 (Fed. Cir. 2023) .................................................................................................2

*Palomar Techs., Inc. v. MRSI Sys., LLC*,
 No. 18-10236-FDS, 2020 U.S. Dist. LEXIS 77929 (D. Mass. May 4, 2020) ...........................2

*Prolitec Inc. v. Scentair Techs., LLC*,
 No. 20-984-WCB, 2023 U.S. Dist. LEXIS 223508 (D. Del. Dec. 13, 2023) ............................1

*Valve Corp. v. Ironburg Inventions Ltd.*,
 IPR2016-00948, Paper 44 (PTAB Sep. 22, 2017) .....................................................................6

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - iii
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

## I.     IRONBURG HAS MET ITS BURDEN FOR SHOWING THAT IPR ESTOPPEL SHOULD BE APPLIED

In its opening brief, Ironburg established that a skilled searcher, in addition to the one employed by Collective Minds, found the references in question by conducting a search akin to the one that would have been conducted in 2016. Valve's criticisms are primarily that although the references may have been found, today's databases are not identical to the ones in 2016 and that the search was therefore tainted. Valve argues that a skilled searcher must find the "grounds" tying the references together and notes that its own prior search did not find the references. None of Valve's arguments refute the evidence presented that a skilled searcher would have found these references at the relevant time period.

### A.     Valve's Argument that the "Grounds" Were Not Identified Lacks Merit

Since two searches (by Collective Minds and the more recent search by Cardinal IP discussed in the opening brief) easily found the references, Valve tries to change the standard to argue that Ironburg must show that a skilled reference searcher must have identified the legal arguments regarding invalidity to apply IPR estoppel. This makes little sense. As an initial matter, as discussed in more detail in the opening brief and below, there is no motivation to combine these non-analogous references, so it is improper to require a patent holder to identify invalidity "grounds" that it is challenging are applicable at all. It is for that reason that the cases relied upon by Valve note that the focus is references. In *Prolitec Inc. v. Scentair Techs., LLC*, No. 20-984-WCB, 2023 U.S. Dist. LEXIS 223508 (D. Del. Dec. 13, 2023), the court acknowledges that "grounds" <u>could be</u> interpreted as legal argument which incorporates prior art, but it concluded (contradicting Valve) that "[t]he weight of authority favors the second theory, treating 'grounds' as the specific pieces of prior art that are the bases on which a petitioner challenges a claim." *Id.* at *70-71. Cardinal IP and Collective Minds indisputably found those references. The other two cases cited by Valve are distinguishable from the present case, because, in both cases, the prior art searchers had prior access to, and designed their search queries with terms taken from, the target

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 1
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

references rather than basing their searches on the terms in the patent-in-suit. *See Palomar Techs., Inc. v. MRSI Sys., LLC*, No. 18-10236-FDS, 2020 U.S. Dist. LEXIS 77929, at *36-39 (D. Mass. May 4, 2020); *Eis, Inc. v. Intihealth Ger GmbH*, No. 19-1227-GBW, 2023 U.S. Dist. LEXIS 188294, at *14-15 (D. Del. Aug. 30, 2023). By contrast, Cardinal IP designed their searches based solely on the context of the '525 and '770 patents-in-suit, and they discovered Kotkin, Koji, and Raymond without any prior knowledge of those references. Dkt. 515 ¶¶ 12-13.

**B.**     **Valve Cannot Refute that Two Skilled Searchers Identified the References**

To apply IPR estoppel, Ironburg must prove by a preponderance of the evidence that a skilled searcher conducting a diligent search would have been expected to discover the Willner-Koji-Raymond combination and Kotkin for to assert against the claims of the '525 patent. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F. 4th 1274, 1296, 1299 (Fed. Cir. 2023). The '525 patent cites Willner on its face, and Cardinal IP and Collective Minds found Kotkin, Koji, and Raymond. There is no evidence indicating that either search was anything other than reasonably diligent.

Valve argues that the Cardinal IP searcher's "review[] [of] every individual result is tantamount to a 'scorched earth' search" (Dkt. 530 ¶ 52; *see also id.* ¶ 19; Dkt. 528 at 1, 4, 11), and would take "almost 100 hours to finish the review of [a] single search query," Dkt. 530 ¶ 51. But Valve's expert patent lawyer, Christopher Cotropia, describes a scorched earth search as essentially a blank check from the client ("spend the time you need to spend, do what you need to do, to try to find art") (Declaration of Ryan Meyer ("Meyer Decl.") Ex. 1 ("Cotropia Depo. Tr.") at 22:9-15) as well as reading every single reference when there are hundreds of results or more. *Id.* at 29:17-30:24. As set forth in testimony, the Cardinal IP search was ordinary and involved standard procedures and parameters (*id.*¶ 3; Dkt. 516 ¶ 7). Cardinal IP offers two levels of premium tier searches that double and then quadruple the cost of the search and the number of hours, but Ironburg did not request or receive a premium search. Hameder Depo. Tr. at 22:4-18,

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 2
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

26:6-24. The search took approximately 52 hours (Dkt. 515 ¶ 10; Greenia Depo. Tr. 17:12-15) and cost $10,825, which is typical for a standard search in view of the number of patents and claims and the complexity of the subject matter. Dkt. 516 ¶¶ 8-10. Valve provides no evidence that the cost of, or the time spent on, the search were higher than expected for a reasonably diligent search.

Valve and its lawyer-expert claim that Cardinal IP's searcher's statement that he "viewed all of the[] references" admits that he went well beyond a diligent search (Dkt. 530 ¶¶ 48, 50). But that searcher, Seth Greenia, explained that while he might spend a few minutes reviewing a good reference, for a straightforward search like this, he could spend much less time, perhaps only a couple seconds, to understand the other references. Meyer. Decl., Ex. 2 ("Greenia Depo. Tr.") at 72:23-73:14. Mr. Cotropia confirms that flipping through a reference in a couple seconds would *not* be the level of review required for scorched earth. Cotropia Depo. Tr. at 30:1-18. In short, there is no evidence that Cardinal IP's search was more than reasonably diligent in this context.

Valve's expert, Mr. Cotropia, counters by noting that Valve's search performed by Landon IP did not find the references. But Valve omits any evidence, aside from conclusory attorney statements, showing that the search did not discover Kotkin, Koji, and Raymond. Valve and Mr. Cotropia, who is a lawyer and not a professional searcher, claim that Landon IP's invalidity search in 2014 did not reveal Kotkin, Koji, or Raymond (*e.g.*, Dkt. 528 at 11; Dkt. 530 ¶ 18) and cite to a declaration by Landon IP employee Jamila Williams. Neither Ms. Williams's declaration nor its exhibits list *any* results of the search. *See* Dkt. 530-1, Ex. C. Valve cites to a prior declaration of its attorney Reynaldo Barcelo, but that declaration, several years after the fact, cites no evidence showing the actual results of that search. Dkt. 277 ¶ 8. Mr. Barcelo's IPR declaration fails to mention Kotkin, Koji, or Raymond at all. Dkt. 277-1. Valve's complete omission of Landon IP's search results is odd since search companies commonly provide their clients with some type of report when it is complete. Cotropia Depo. Tr. at 30:25-31:4; Dkt. 515-2; Dkt. 515-3. Without the results, there is no basis for including that Landon IP's search did not discover the three

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 3
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

references or that Valve even knows what those results were. In short, the references were found in two searches and there is no evidence that those searches were unreasonable or that even the third search did not find the references.[1]

### C. Cardinal IP Replicated 2016 Search Conditions and Confirmed That More Recent Data Did Not Impact that Search

Valve argues that Ironburg's evidence is "tainted" as it relied on standard search tools that have been improved since 2016. But, Mr. Cotropia admits that he would have used the Google Patents database if he were to run a prior art search in 2016 (*id.* at 12:7-13) and he could only simulate a search performed in the past by constructing a database that would replicate Google's database. *Id.* at 42:14-43:2. He also admits that a prior art searcher today could not use the USPTO patent search tools available in 2016 or earlier, because they are no longer available. *Id.* at 43:3-10. Nevertheless, Valve argues that these searches are tainted by using today's tools. To conduct Valve's proposed search from 2016 or earlier using only the tools available at that time would require a time machine, which is not the burden the Federal Circuit imposed.

Valve cannot show that its concerns about today's tools actually *resulted* in finding the references whereas 2016 tools would not. That is, Mr. Cotropia admits that he has no idea whether discovering those references depended on improper information because he did not test that possibility. Cotropia Depo. Tr. at 58:1-7. However, Ironburg tried to account for this. After the original searches were done, Cardinal IP re-ran the searches that had previously discovered the references but excluded any information from later than 2015 to ensure that any results would not suffer from accidental hindsight. Second Declaration of Brian Hameder ("Hameder Decl.") ¶ 3. Cardinal IP determined that searches excluding post-2015 information still discovered the three references. *Id*. ¶¶ 4-6. In other words, the results of this additional work confirm that the alleged

---

[1] The fact that Landon IP did not call out the references is not unusual. As set forth below, as there is no motivation to combine the references, including one that is non-analogous, a skilled searcher would not highlight all the references as part of the search results.

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 4
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

taint had no effect and is irrelevant. Using all available date limitation restrictions and using tools that best replicate searching available in 2016, Cardinal IP still found the references. *Id.* ¶ 7.

### 1. The Kotkin References Would Be Discovered Together

Valve wrongly argues that a skilled searcher could not reasonably be expected to discover the Kotkin provisionals even if they discovered the Kotkin publication. *See, e.g.*, Dkt. 528 at 6. The Kotkin publication lists both provisionals at the top of the cover page as "Related U.S. Application Data" (Dkt. 530-1, Ex. I) and notes that both provisionals are "incorporated herein, by reference, in their entireties." *Id.* ¶ [0001]. Valve's technical expert, Robert Dezmelyk understands that the publication incorporates by reference all disclosure of the provisionals and refers to the Kotkin publication and its '551 Provisional as "Kotkin." Dkt. 531 ¶ 112; Meyer Decl., Ex. 3 ("Dezmelyk Depo. Tr.") at 56:23-58:12. Even Mr. Cotropia admits that a searcher finding the Kotkin publication would see its provisionals cited on its face. Cotropia Depo. Tr. at 55:5-10.

### 2. The Supplemental Search Was Part of a Reasonably Diligent Search

Valve claims that "Ironburg…does not identify any evidence that a reasonably diligent search would include a supplemental search" (Dkt. 528 at 11) but ignores testimony from Cardinal IP that it is common practice to perform a supplemental search focused on particular claim element(s). (Dkt. 515 ¶¶ 5-8; Dkt. 516 ¶ 7). Valve provides no evidence, not even testimony from Mr. Cotropia, that a supplemental search is not common practice and would not be part of a diligent search in this context. Thus, the unrebutted evidence in the record indicates that the supplemental search was common practice and part of Cardinal IP's reasonably diligent search.

## II. THE NON-PETITIONED GROUNDS FAIL TO INVALIDATE THE ASSERTED CLAIMS

### A. The Kotkin References Fail to Disclose Multiple Claim Elements

Valve does not actually provide legal argument in its brief in response to Ironburg's statement that the references do not invalidate the claims, as requested by the Court. Rather, it provides a 115-page expert declaration, essentially refusing to provide a response in the pages

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 5
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

provided. Certainly an expert declaration is appropriate, but only in support of actual legal arguments. Valve's efforts to convince the Court of invalidity by providing mountains of irrelevant text should be unavailing, especially as that text fails to show invalidity.

### 1. All Asserted Claims

While Valve and Mr. Dezmelyk argue that the housing bottom of the Kotkin accessory includes "inherently resilient and flexible" elongate members as required by all asserted claims, Dr. Stevick showed that the disclosed squeezing effect of Kotkin is "due to biasing by springs 334a, 334b, and not because the housing bottom 320 is itself inherently resilient and flexible." Dkt. 514 ¶ 27. In response, Mr. Dezmelyk argues that the springs are merely adjustable and serve to assist in a trigger pull. Dkt. 531 ¶ 141. But the adjustability of the springs 334a and 334b does not show that the *housing bottom* is inherently flexible. In fact, in this particular embodiment, the housing bottom can be made from "rigid molded plastic" (Kotkin ¶ [0038]), which would not be inherently resilient and flexible and thus undercuts Mr. Dezmelyk's argument.

Mr. Dezmelyk argues that biasing the housing bottom with springs fulfills the PTAB's construction of "inherently resilient and flexible," but he is mistaken. While the PTAB states that "[i]t is possible the elongate member is biased by a spring to the unloaded position" (IPR2016-00948, Final Written Decision, p. 37, n. 19), this discussion is in the context of "mode switches" that "*are or include* some flexible elements such as a spring…." *Id*. at 37. By contrast, the springs are "*separate components from the housing bottom*" and, therefore, the housing bottom is not inherently resilient and flexible. Dkt. 514 ¶ 29.

In another embodiment, Kotkin discloses lines (*see* Kotkin, FIG. 3, ¶ [0033]) that Valve argues are inherently resilient and flexible elongate members, but this ignores that the lines are resilient only when biased between a separate adjustable lever to actuate the trigger. *See* Dkt. 514 ¶ 32. Indeed, Mr. Dezmelyk admits the lines must be attached between the lever and trigger to function (Dezmelyk Depo Tr. at 31:1-32:4), which is because the lines are not themselves

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 6
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

inherently resilient. And, biasing of the alleged elongate member by a *separate component* (*e.g.*, a spring or a lever) does not fulfill the claim construction of "inherently resilient and flexible."

### 2. Claim 4

Kotkin also fails to disclose the additional feature of claim 4, "wherein at least one of the back controls has functions in addition to the top edge control and the front control," because the alleged back controls of Kotkin merely replicate functionality and "only provide alternative means for using the functions of the top controls." Dkt. 513 at 15; Dkt. 514 ¶ 40; Kotkin, ¶ [0008]. Claim 4 depends on claim 2, which recites "wherein the controller is shaped such that the user's index finger is positioned to operate the top edge control," which Kotkin also fails to disclose. Valve's expert incorrectly argues that Kotkin meets this element of claim 2 because the triggers actuated by the alleged elongate members are not "top edge control[s]" (and, therefore, the alleged elongate members/back controls have "functions in addition to" the top edge and front controls), even though the triggers are located on the top edge of the controller, because a user's index finger is "optimally positioned" to operate the "bumper" buttons just above the triggers, and "not the triggers." *See* Dkt. 531 ¶¶ 156-157. But Mr. Dezmelyk admits that the claims do not require a user's index finger to be "*optimally* positioned" to operate the top edge control, and he provides no evidence that the user's index fingers would not be "positioned" to operate both the triggers and the bumpers at the top edge of the controller.

### 3. Claim 7

Kotkin fails to teach or disclose "wherein each elongate member is mounted within a recess located in the case of the controller," as required by claim 7. Mr. Dezmelyk does not argue that the lines of Kotkin are "mounted within a recess located in the case of the controller." *See* Dezmelyk Decl., ¶¶ 161-164. Regarding the housing bottom, figures identified by Mr. Dezmelyk as allegedly illustrating an elongate member mounted within a recess (Dkt. 531 ¶ 162) depict the skin, which is an accessory separate from the case of the controller itself. *See* Kotkin, ¶ [0038].

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 7
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

The portion of the housing bottom that Mr. Dezmelyk identifies as disclosing this element protrudes from the back of the skin and is not mounted within a recess located in the case of the controller. *See* Kotkin at FIG. 6E.

### 4. Claims 9-11

Mr. Dezmelyk does not dispute that Kotkin fails to expressly disclose the claimed thicknesses but argues that a person skilled in the art would derive them based on known dimensions of existing controllers and material characteristics. *See* Dkt. 531 ¶¶ 166-170. But Mr. Dezmelyk fails to provide support for his theory, essentially arguing invalidity based on his say so. And the material characteristics of the Kotkin invention provide no guidance as to material thickness because Kotkin discloses that the invention can be made from "rigid molded plastic" or "a flexible material and/or a film," which would have different characteristics. Kotkin, ¶ [0038].

### 5. Claim 18

Mr. Dezmelyk argues that Kotkin discloses back controls "formed as an integral part of the outer case," as in claim 18, but Kotkin refutes this argument: "It is important to note that the 'skin' of the present invention ***is not the outer housing or shell of the game controller***, itself, but rather, the skin of the instant invention sits over the outer housing or shell of the game controller." Kotkin ¶ [0038]. Kotkin's invention *is expressly not* part of the game controllers outer housing or shell.

### B. The Willner-Koji-Raymond Combination Fails to Invalidate the Asserted Claims

#### 1. Using Koji to Modify Willner Would Render Willner Inoperable

The Federal Circuit has held there is no motivation to modify a reference in an obviousness analysis when the proposed modification would render the reference inoperable for an "intended purpose." *In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984). One of Willner's intended purposes is "to provide a two-handed keyboard . . . to provide high speed data entry, ergonomically." Willner at 2:39–42. Another is to provide "a handheld gaming and data entry system." *Id.* at 2:49–52. The combined system proposed by Mr. Dezmelyk (shown at Dkt. 531-2, Ex. R) would cripple

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 8
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

that very functionality. *See* Dkt. 531 ¶ 188 (referencing *Collective Minds Gaming Co. Ltd. v. Ironburg Inventions, Ltd.* IPR2018-00354, Paper 2 at 48–49 (PTAB Jan. 3, 2018). Mr. Dezmelyk's alleged combination would add a paddle from Koji across certain buttons of Willner's device to allow those buttons to be pressed in specific combinations. Applying this restriction to the finger operated controls of Willner would disable multiple button functions and render Willner inoperable for its intended purpose of providing an ergonomic two-handed keyboard. Similarly, in gaming mode, applying Koji's paddle would destroy the purpose of finger operated controls to "be used for . . . individual switch closures." Willner at 10:12–13. Koji destroys the individuality of those switch closures by adding a single actuator to operate them all simultaneously. Since combining Koji with Willner destroys an intended purpose of Willner, there is no suggestion or motivation to make the proposed modification.

### 2. Raymond Is Outside the Field of Endeavor and Is Non-Analogous Art

Mr. Dezmelyk broadly claims that both Raymond and the claimed invention are "directed to controls." Dkt. 531 ¶ 198. This interpretation unreasonably subsumes into the same field nearly the entirety of human innovation involving human control of all mechanical and electronic devices, thereby rendering "analogous art" jurisprudence meaningless. The claimed invention is from the field of handheld game controllers, but Raymond is from the vastly different field of amateur radio. Raymond at Abstract. Raymond is not reasonably pertinent because its teachings are limited to a simple dash-dot operator with horizontal paddles, that are off topic to the challenges faced. An inventor is not expected to have been aware of all prior art outside of the field of endeavor. *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1380–82 (Fed. Cir. 2019). Mr. Dezmelyk's argument is outside the bounds of that jurisprudence.

### 3. Dezmelyk Fails to Show that Willner/Koji/Raymond Disclose Multiple Elements of the Asserted Claims

**a.**   *Claim 1: Raymond discloses a lever with multiple components and is not "inherently resilient and flexible."*

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 9
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

1  Mr. Dezmelyk states that Raymond's metal strip is part of the lever and thus the lever of
2  Raymond is "inherently resilient and flexible." Dkt. 531 ¶ 194.  Yet, he admits that Raymond does
3  not disclose what material the finger pads are made of, and that the pads and flexible strip are
4  separate components of the device.  Dezmelyk Depo. Tr. at 77:20-24, 79:4–6.  If the pad material
5  is unknown, there can be no finding that they are "inherently resilient and flexible." If they were,
6  there would be no need for separate flexible metal strips.

        **b.**     ***Claim 2:  Willner does not disclose and teaches away from "top edge control" and "the user's index finger is positioned to operate the top edge control."***

9  Mr. Dezmelyk alleges Willner discloses "a top edge control located on the top edge of the
10 controller and wherein the controller is shaped such that the user's index finger is positioned to
11 operate the top."  Dkt. 531-2, Ex. R ("Ex. R").  Willner expressly states, and Mr. Dezmelyk
12 admitted, the controls 104 are actually "thumb-operated." Dezmelyk Depo. Tr. at 64:1-5, 66:13–
13 15; Willner 3:53-61.  Willner further discloses that the controls on the bottom of the controller are
14 operated by the index fingers such that those fingers would be unavailable to operate controls 104.
15 Willner 9:14-17.  Therefore, Willner does not disclose "a top edge control located on the top edge
16 of the controller and wherein the controller is shaped such that the user's index finger is positioned
17 to operate the top," as required by claim 2.  While Mr. Dezmelyk alleges, that combining the Koji
18 accessory with the Willner controller would allow a user's index fingers to operate the top controls
19 (Ex. R at 11–12), doing so puts the user's wrists in an unnatural position anathema to the goal of
20 Willner, "to provide high speed data entry, ergonomically." Willner 2:39–42.  Thus, Willner
21 teaches away from that combination.  In any event, a POSITA would not be motivated to combine
22 the disclosures of Willner and Koji to arrive at the claimed invention.

        **c.**     ***Claim 7:  Willner does not disclose a "recess located in the case," and combining Koji with Willner would place the control outside of the curve in the controller.***

25 Mr. Dezmelyk argues the shaded area in Fig. 2 of Willner is a recess located in the case.

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 10
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Dkt. 531 ¶ 208. The finger buttons of Willner protrude from the lower surface of the controller. Willner, Fig. 2. Further, stacking the paddle of Koji on the already-protruding buttons of Willner would place the resulting control well out of the alleged recess. Therefore, neither Willner nor Koji, alone or in combination, disclose "a recess located in the case of the controller."

      **d.**    *Claims 9-11: Dezmelyk admits that Raymond does not expressly disclose the specific thickness of the paddles, and the strip of metal disclosed by Raymond at the claimed thickness would not be "flexible."*

Regarding the thicknesses recited in claims 9–11 (i.e., 1-10 mm), Mr. Dezmelyk admits that "Raymond does not expressly disclose the specific thickness of these paddles." Ex. R at 15. Mr. Dezmelyk subsequently admitted that the flexible steel strip of Raymond would need to be "[p]robably half a millimeter or less," which clearly falls outside the ranges required by claims 9-11. Dezmelyk Depo. Tr. at 79:19-80:3.

      **e.**    *Claim 18: Willner does not disclose "wherein at least one of the back controls is formed as an integral part of the outer case."*

Mr. Dezmelyk alleges that Willner discloses "at least one of the back controls is formed as an integral part of the outer case." Dkt. 531 ¶ 218. The Federal Circuit has construed "integral" to mean "formed or cast of one piece." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.,* 637 F.3d 1324, 1336 (Fed. Cir. 2011) (internal quoted omitted). The disclosure of Willner is silent on any aspect of his controller being "an integral part" of anything, let alone the specific element of claim 18.

### III.  VALVE'S MOTIONS TO STRIKE LACK MERIT AND SHOULD BE DENIED

Valve seeks to strike the declarations of Mr. Greenia and Mr. Hameder. As to the former, Valve argues that Mr. Greenia's methodology is "tainted" and has so argued in its brief. Dkt. 528 at 4, 7-10. As set forth above, there was no impact of the alleged taint, and it is certainly not a basis to exclude as opposed to a basis for cross-examination or counter argument, which has been done. *See, e.g.,* Dkt. 530-1, Ex. F. Mr. Hameder is the project manager with knowledge of costs

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 11
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

and types of searches, information that Mr. Greenia would not be aware of in his role. *See* Dkt. 516 ¶¶ 4-5, 7-10. Valve elicited his testimony via deposition. *See, e.g.*, Dkt. 530-1, Ex. G.

Valve's motion to strike declaration of Dr. Stevick's declaration should be denied for the reasons set forth in Ironburg's Response to Defendant's Motion for Status Conference. Dkt. 518. In addition, Dr. Stevick qualifies as a person of at least ordinary skill in the field of electronic controllers and consumer products due to his education (e.g., Ph.D. in Mechanical Engineering) and professional background. Dkt. 514 ¶¶ 3-14. Dr. Stevick's field of technology necessarily encompasses the relevant field of the '525 patent since video game controllers are both electronic controllers and consumer products. *Id.* ¶ 15. Dr. Stevick has significantly more skill than the year of experience or other training in video game controller assembly or tooling required for the invention of the '525 patent. *Id.*

Finally, including Dr. Stevick's 22-page declaration would not prejudice Valve because Valve has already thoroughly responded to that declaration in the *115-page* declaration of its own expert, Robert Dezmelyk. *See, e.g.*, Dkt. 531 ¶¶ 4, 80-81, 138-142, 144-149, 155-156, 159, 161, 165, 171-172, 174, 180-185, 187, 189, 191-202, 205, 207-208, 212, 217). Ironburg also offered Dr. Stevick for deposition, but Valve refused. Dkt. 518 at 4. Accordingly, excluding Dr. Stevick's declaration is unwarranted and would serve no purpose.

### IV.   CONCLUSION

Accordingly, Ironburg respectfully requests that the Court apply IPR estoppel with respect to Kotkin and Willner-Koji-Raymond and/or find that those references do not anticipate or render obvious the asserted claims of the '525 patent. As the Court's briefing schedule did not provide for a cross-motion, Ironburg does not respond to Valve's cross-motion unless requested by the Court.

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 12
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

DATED this 23rd day of February, 2024

DORSEY & WHITNEY LLP

/s/ Ryan Meyer
RYAN MEYER WSBA # 37832
**Dorsey & Whitney LLP**
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone: (206) 903-8800
Email: meyer.ryan@dorsey.com

GREGORY S. TAMKIN, CBA # 27105
(Admitted *Pro Hac Vice*)
**Dorsey & Whitney LLP**
370 Seventeenth Street, Suite 4700
Denver, CO 80202
Telephone: (303) 629-3400
Email: tamkin.greg@dorsey.com

*Attorneys for Plaintiff Ironburg Inventions Ltd.*

REPLY IN SUPPORT OF RENEWED
MOTION FOR INTER PARTES REVIEW
ESTOPPEL AND BRIEF - 13
2:17-cv-01182-TSZ

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused to be served the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

Dated this 23rd day of February, 2024.

/s/ Troy Wambold
Troy Wambold, legal assistant

REPLY IN SUPPORT OF RENEWED MOTION FOR INTER PARTES REVIEW ESTOPPEL AND BRIEF - 14
2:17-cv-01182-TSZ

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820